**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| Jonathan Corrente, et al., | Case No. 4:22-cv-470-ALM |
| *Plaintiffs*, | Hon. Amos L. Mazzant, III |
| v. | |
| The Charles Schwab Corporation, | |
| *Defendant*. | |

**PLAINTIFFS' UNOPPOSED MOTION FOR**
**<u>PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT</u>**

# TABLE OF CONTENTS

INTRODUCTION ......................................................................................................... 1

BACKGROUND ........................................................................................................... 2

I.      HISTORY OF THE LITIGATION ................................................................... 2

II.     THE PROPOSED SETTLEMENT ................................................................... 3

     A.     The Settlement Class.................................................................................4

     B.     The Settlement Relief ...............................................................................4

     C.     Scope of the Release ................................................................................6

     D.     Notice to the Class ....................................................................................6

     E.     Attorney's Fees, Costs, and Expenses and Representative Plaintiff Service Awards .......................................................................................................6

ARGUMENT ................................................................................................................. 7

I.      PLAINTIFFS HAVE ARTICLE III STANDING.................................................... 7

II.     THE PROPOSED CLASS SHOULD BE PRELIMINARILY CERTIFIED .................... 8

     A.     The Settlement Class Is Ascertainable.....................................................9

     B.     The Rule 23(a) Requirements Are Met.....................................................9

          1.       Numerosity................................................................................ 10

          2.       Commonality............................................................................. 10

          3.       Typicality.................................................................................. 10

          4.       Adequacy of Representation ..................................................... 11

     C.     The Rule 23(b)(2) Requirements Are Met...............................................12

III.    THE SETTLEMENT MERITS PRELIMINARY APPROVAL...................................... 13

     A.     Plaintiffs and Counsel Have Adequately Represented the Class...........................14

     B.     The Settlement Was Negotiated at Arm's Length .................................14

     C.     The Relief Provided for the Class Is Adequate.....................................15

          1.       The costs, risks, and delay of trial and appeal ............................. 16

          2.       Proposed method of distributing relief to the class....................... 20

          3.       Proposed award of attorney's fees ................................................ 20

          4.       Agreements required to be identified under Rule 23(e)(3).......... 22

     D.     The Settlement Treats Class Members Equitably Relative to Each Other ...........22

     E.     The Opinions of Class Counsel and the Class Representatives Weigh in Favor of Approval...................................................................................23

IV.    THE CLASS NOTICE PLAN SHOULD BE APPROVED............................................ 24

CONCLUSION................................................................................................................... 27

# TABLE OF AUTHORITIES

## Cases

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)................................................................................................ 8

*Angell v. GEICO Advantage Ins. Co.*,
    67 F.4th 727 (5th Cir. 2023) ............................................................................ 10, 11

*Athale v. Sinotech Energy Ltd.*,
    2013 WL 11310686 (S.D.N.Y. Sept. 4, 2013)................................................... 17

*Braidwood Mgmt., Inc. v. Equal Emp. Opportunity Comm'n*,
    70 F.4th 914 (5th Cir. 2023) ............................................................................... 9

*C.C. & L.C. v. Baylor Scott & White Health*,
    2022 WL 4477316 (E.D. Tex. Sept. 26, 2022)................................................... 18

*Campbell v. Facebook, Inc.*,
    951 F.3d 1106 (9th Cir. 2020) ............................................................................ 15

*Cargill, Inc. v. Monfort of Colo., Inc.*,
    479 U.S. 104 (1986).............................................................................................. 16

*Chicago Bridge & Iron Co. N.V. v. F.T.C.*,
    534 F.3d 410 (5th Cir. 2008) .............................................................................. 19

*Combs v. City of Huntington, Tex.*,
    829 F.3d 388 (5th Cir. 2016) .............................................................................. 21

*Cotton v. Hinton*,
    559 F.2d 1326 (5th Cir. 1977) ................................................................. 13, 17, 23

*DeBremaecker v. Short*,
    433 F.2d 733 (5th Cir. 1970) ............................................................................... 9

*DeHoyos v. Allstate Corp.*,
    240 F.R.D. 269 (W.D. Tex. 2007) ............................................................... *passim*

*Duncan v. JPMorgan Chase Bank, N.A.*,
    2015 WL 11623393 (W.D. Tex. Oct. 21, 2015).................................................. 8

*Duncan v. JPMorgan Chase Bank, N.A.*,
    2016 WL 4419472 (W.D. Tex. May 24, 2016) ................................................... 22

*Earl v. Boeing Co.*,
    339 F.R.D. 391 (E.D. Tex. 2021) ........................................................................ 8

*Frank v. Gaos*,
586 U.S. 485 (2019) ................................................................................................... 7

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) .................................................................................. 21

*Illumina, Inc. v. Fed. Trade Comm'n*,
88 F.4th 1036 (5th Cir. 2023) .................................................................................. 16

*In re Katrina Canal Breaches Litig.*,
628 F.3d 185 (5th Cir. 2010) .................................................................................. 24

*In re N.J. Tax Sales Certificates Antitrust Litig.*,
750 F. App'x 73, 79 (3d Cir. 2018) .................................................................. 16, 18

*John v. Nat'l Sec. Fire & Cas. Co.*,
501 F.3d 443 (5th Cir. 2007) .................................................................................... 9

*Johnson v. Ga. Highway Exp., Inc.*,
488 F.2d 714 (5th Cir. 1974) .................................................................................. 20

*Johnson v. Kansas City S. Ry. Co.*,
208 F. App'x 292 (5th Cir. 2006) ........................................................................... 24

*Jones v. Singing River Health Servs. Found.*,
865 F.3d 285 (5th Cir. 2017) ....................................................................... 14, 15, 23

*Kostka v. Dickey's Barbecue Restaurants, Inc.*,
2022 WL 16821685 (N.D. Tex. Oct. 14, 2022) .............................................. *passim*

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ................................................................................................... 8

*Mullen v. Treasure Chest Casino, LLC*,
186 F.3d 620 (5th Cir. 1999) .................................................................................. 10

*Nelson v. Constant*,
2020 WL 5258454 (E.D. La. Sept. 3, 2020) ................................................. 20, 21, 24

*ODonnell v. Harris Cnty., Tex.*,
2019 WL 4224040 (S.D. Tex. Sept. 5, 2019) ................................................. *passim*

*Perez v. McCreary, Veselka, Bragg & Allen, P.C.*,
45 F.4th 816 (5th Cir. 2022) ..................................................................................... 8

*Reed v. Gen. Motors Corp.*,
703 F.2d 170 (5th Cir. 1983) ....................................................................... 14, 16, 23

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ................................................................. 17, 19

*Scott v. Dart*,
    99 F.4th 1076 (7th Cir. 2024) ..................................................................... 22

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021)....................................................................................... 8

*Utah Ret. Sys. v. Healthcare Servs. Grp., Inc.*,
    2022 WL 118104 (E.D. Pa. Jan. 12, 2022) ................................................ 17

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011).............................................................................. 10, 24

*Yates v. Collier*,
    868 F.3d 354 (5th Cir. 2017) ................................................................ 10, 12

*Zaragoza v. Union Pac. R.R. Co.*,
    112 F.4th 313 (5th Cir. 2024) ...................................................................... 4

## Statutes and Rules

15 U.S.C. § 18 ............................................................................................. 10, 16

15 U.S.C. § 26 ............................................................................................. 10, 21

28 U.S.C. § 1715(b) ........................................................................................... 24

Fed. R. Civ. P. 23 .................................................................................... *passim*

Fed. R. Civ. P. 30(b)(6) ....................................................................................... 2

## Other Authorities

3 *Newberg and Rubenstein on Class Actions* § 8:15 (6th ed. 2024) ............................................. 24

4 *Newberg and Rubenstein on Class Actions* § 13:54 (6th ed. 2024) ........................................... 20

American Law Institute, Principles of the Law of Aggregate Litigation § 3.04(a) (2010) .......... 24

## INTRODUCTION

Plaintiffs Jonathan Corrente, Charles Shaw, and Leo Williams respectfully request preliminary approval of the proposed class settlement ("Settlement") they have reached with Defendant The Charles Schwab Corporation ("Schwab").

After arm's-length negotiations facilitated by an experienced mediator, the Hon. Nancy F. Atlas (Ret.), the parties entered into the Stipulation and Agreement of Settlement ("Settlement Agreement") attached as Exhibit 1. The Settlement provides meaningful injunctive relief to Plaintiffs and settlement class members consisting of current U.S. brokerage customers of Schwab and its affiliates (the "Settlement Class") based on Plaintiffs' claims, under Section 7 of the Clayton Act, that the 2020 merger between Schwab and TD Ameritrade Holding Corporation substantially lessened competition in an asserted  market for retail order flow, thereby allegedly affecting the price improvement on trades by Schwab brokerage customers and reducing transparency regarding how those trades are routed to market makers.

As shown below, the Settlement readily satisfies the standard for preliminary approval—namely, that at the final-approval stage, the Court will likely find the Settlement fair, reasonable, and adequate under Rule 23(e)(2) and will likely certify the Settlement Class. *See* Fed. R. Civ. P. 23(e)(1)(B). Plaintiffs therefore respectfully request that the Court enter the proposed order: 1) certifying the proposed class for settlement purposes; 2) preliminarily approving the Settlement; 3) provisionally appointing Yavar Bathaee of Bathaee Dunne LLP and Christopher M. Burke of Burke LLP as co-lead class counsel; 4) provisionally appointing Plaintiffs as class representatives; 5) approving the proposed notice plan; and 6) setting a fairness hearing for final approval of the Settlement and to consider the application for attorney's fees, service awards, and reimbursement of litigation costs and expenses.

## BACKGROUND

### I.    HISTORY OF THE LITIGATION

On June 2, 2022, Plaintiffs filed a class action complaint challenging the merger between Schwab and TD Ameritrade Holding Corporation ("Ameritrade") (the "Merger") under Section 7 of the Clayton Act, seeking damages and injunctive relief. *See* Compl., ECF No. 1; Joint Decl. of Christopher Burke and Yavar Bathaee ("Burke/Bathaee Decl.") ¶ 5. Plaintiffs allege the Merger substantially lessened competition in an asserted Retail Order Flow Market ("ROFM"), harming Schwab brokerage customers in the form of reduced price improvement on trades through their brokerage accounts and reduced transparency regarding how their trade orders are routed to market makers. Burke/Bathaee Decl. ¶ 6.

On August 29, 2022, Schwab filed a motion to dismiss, which the Court denied on February 24, 2023. ECF Nos. 18, 40. Discovery opened following the parties' Rule 26(f) conference on October 12, 2022. On December 1, 2022, Plaintiffs served their First Set of Interrogatories and Requests for Admission on Schwab. Burke/Bathaee Decl. ¶ 9.

On March 15, 2023, Plaintiffs deposed Schwab through its Rule 30(b)(6) designee, a Senior Vice President. Burke/Bathaee Decl. ¶ 9. Plaintiffs also deposed four key Schwab and Ameritrade executives prior to settlement discussions: Schwab's Managing Director of Market and Execution Services; Managing Director of Corporate Development; Managing Director of Trading Order Management and Risk; and Managing Director of Trading Operation, Equity, Options and Futures Trading Operations. *Id.* In addition, Schwab produced approximately 218,319 documents comprising 950,021 pages, of which Plaintiffs have conducted a thorough review for merits and expert purposes. *Id.*

Plaintiffs' experts conducted extensive statistical analysis to investigate and test the hypothesis that the Merger reduced price improvement on trades below the levels that would have

prevailed absent the Merger. This analysis involved processing voluminous data on more than 6 billion trades. Burke/Bathaee Decl. ¶ 10.

During discovery, Plaintiffs filed two motions to compel against Schwab. ECF Nos. 80, 109; Burke/Bathaee Decl. ¶ 11. Discovery proceeded until July 2024, when the parties jointly moved for the appointment of a mediator and a stay of most case deadlines to facilitate settlement discussions. ECF No. 140.

## II.    THE PROPOSED SETTLEMENT

By mutual agreement, the Hon. Nancy F. Atlas (Ret.), held a full-day, in-person mediation session on July 9, 2024, with the parties. Burke/Bathaee Decl. ¶ 12. Although the parties did not reach a resolution at the mediation, they conceived of a conceptual framework for a potential resolution and resolved to continue further negotiations thereafter with Judge Atlas's assistance. On July 24, 2024, the parties jointly requested that the Court formally appoint Judge Atlas to serve as a mediator. *Id.* ¶ 13. The Court granted this request on July 29, 2024, mooting the pending discovery motions and staying all other case deadlines except for Plaintiffs' deadline to file a motion for class certification and associated expert reports, which it reset to October 7, 2024. ECF No. 141; Burke/Bathaee Decl. ¶ 13. After providing a status report on August 23, 2024, indicating that the negotiations had made significant progress, the parties jointly reported on September 27, 2024, to the Court that they had reached an agreement in principle with respect to settlement that had been reduced to a signed term sheet. ECF Nos. 142, 145; Burke/Bathaee Decl. ¶¶ 15-16. On October 1, 2024, the Court stayed all remaining case deadlines, and since then, the parties have provided further status reports on the process of finalizing the settlement. ECF No. 146; Burke/Bathaee Decl. ¶ 16. After months of further negotiation, the parties executed the Stipulation and Agreement of Settlement on December 12, 2024. Burke/Bathaee Decl. ¶ 18.

### A.    The Settlement Class

The proposed Settlement Class is defined as:

> persons, entities, and corporations who are current U.S. brokerage customers of Schwab or any of its affiliates, including customers who previously held accounts at TD Ameritrade.

Excluded from the Settlement Class are: (a) the Defendant; (b) its employees, officers, directors, legal representatives, heirs, successors, and wholly or partly owned subsidiaries or affiliates; and (c) the judicial officers and their immediate family members and associated court staff assigned to this case. Because the Settlement provides prospective relief that will benefit current and future Schwab customers only, the proposed Settlement Class is narrower than the class defined in the Complaint, which also encompassed past customers seeking damages for past conduct, *see* Compl. ¶¶ 464-65. *See Zaragoza v. Union Pac. R.R. Co.*, 112 F.4th 313, 318-19 (5th Cir. 2024) (court may "redefine" pleaded class definition "as appropriate in response to the progression of the case from assertion to facts").

### B.    The Settlement Relief

The parties agreed to jointly retain an independent consultant at Schwab's expense to design an antitrust compliance program that Schwab will implement. The parties interviewed several candidates before submitting the Settlement for preliminary approval and have agreed to retain a team of attorneys from Fried, Frank, Harris Shriver & Jacobson LLP, including Bernard A. Nigro, Jr., Aleksandr Livshits, and Nihal Patel, to serve as the consultant. Mr. Nigro is Global Chair of Fried Frank's Antitrust and Competition Department. Mr. Nigro previously served as the Department of Justice's Principal Deputy Assistant Attorney General for Antitrust and the Federal Trade Commission's Deputy Director for the Bureau of Competition. While in government, Mr. Nigro worked on revisions to the merger guidelines and remedies polices. In private practice, Mr. Nigro has advised numerous companies on antitrust compliance issues. Mr. Livshits represents

clients in connection with antitrust merger reviews, including governmental investigations of complex cross-border transactions, as well as antitrust compliance issues. Mr. Patel represents financial institutions and buy-side market participants on regulatory and compliance issues relating to securities and derivatives training. Mr. Patel regularly advises broker-dealers on regulatory issues. Burke/Bathaee Decl. ¶ 21. Messrs. Nigro, Livshits, and Patel's combined experience, covering antitrust and financial institutions, makes them an ideal fit for this matter.

In designing the antitrust compliance program, the consultant will consider (without limitation) the following areas of Schwab's business:

- Policies, practices, and procedures related to Schwab's communications with and among market makers and other broker-dealers;

- Policies, practices, and procedures related to Schwab's order routing and execution, including those pertaining to Schwab's order routing allocations and price improvement as provided by market makers to Schwab's retail customers who trade equities and options;

- Policies, practices, and procedures applicable to Schwab's order routing committees and decisionmakers, including as to communications and coordination with market makers and other broker-dealers; and

- Schwab's post-merger disclosures, reporting, statements, and other communications with retail clients regarding transaction-related price improvement and order routing that may promote inter-brand competition among broker-dealers.

Settlement Agmt. (Ex. 1) ¶ 2.2. These areas are directly implicated in Plaintiffs' allegations that the Merger has led to a substantial lessening of competition in an asserted Retail Order Flow Market, leading to decreased price improvement and reduced transparency regarding order routing for Schwab customers.

Plaintiffs believe the antitrust compliance program will provide tangible benefits to members of the Settlement Class and future Schwab customers by further ensuring price improvement on trades (which would provide direct monetary benefits) and transparency

regarding order routing (which would provide information that could be used to select broker dealers).

### C.      Scope of the Release

The Settlement releases the claims of the members of the Settlement Class as to all injunctive and other equitable or non-monetary claims or remedies asserted or that could have been asserted in the action, including any claim for divestiture. Settlement Agmt. (Ex. 1) ¶¶ 1.33, 3.3, 3.6. Schwab also has agreed to pay each of the three Plaintiffs $50 in return for releasing their individual damages claims. *Id.* ¶ 2.1. The Settlement does not release any right of absent class members to bring damages claims, either individually or on behalf of a class.

### D.      Notice to the Class

Notice to the Settlement Class will be administered by a notice administrator, which shall send the Summary Notice via email or postcard notice, substantially in the form of Exhibits B and C to the Declaration of Michael T. Northeim ("Northeim Decl.") (Summary Notice), directly to all potential Settlement Class members for which contact information is available. The notice administrator shall also make the Long Form Notice substantially in the form of Exhibit D to the Northeim Declaration available to the Settlement Class on the settlement website. The costs of notice to the Settlement Class shall be paid by Schwab. Settlement Agmt. (Ex.1) ¶ 6.7.

### E.      Attorney's Fees, Costs, and Expenses and Representative Plaintiff Service Awards

Counsel for Plaintiffs' ("Plaintiffs' Counsel") will apply to the Court for an award of attorney's fees and reimbursement of litigation costs and expenses to be paid by Schwab. Settlement Agmt. (Ex. 1) ¶ 7.1. The parties did not discuss the amounts of attorney's fees, costs, and expenses Plaintiffs' Counsel will seek prior to agreeing on relief for the Settlement Class. Instead, they mediated the issue before Judge Atlas on January 24, 2025. The notice given to the

class and the proposed settlement website will disclose that Plaintiffs' Counsel will seek an award of attorney's fees in an amount not exceeding $8,250,000 and reimbursement of litigation expenses and costs in an amount not exceeding $700,000. Plaintiffs' Counsel also intend to apply for service awards of up to $5,000 for each Plaintiff for service undertaken on behalf of the Settlement Class in connection with the litigation of this action. Burke/Bathaee Decl. ¶ 19.

## ARGUMENT

A class action "may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). Where the parties have reached a proposed settlement, Rule 23(e)(1)(B) requires a court to "direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B).

"To approve the settlement, a court must first determine whether the class should be preliminarily certified for settlement purposes." *Kostka v. Dickey's Barbecue Restaurants, Inc.*, 2022 WL 16821685, at *2 (N.D. Tex. Oct. 14, 2022) (citations omitted), *report and recommendation adopted*, 2022 WL 16821665 (N.D. Tex. Nov. 8, 2022). "If a court preliminarily certifies the class, it then moves to the preliminary fairness evaluation" under Rule 23(e)(2). *Id.* "[I]f the Court determines that the settlement is fair, the Court directs that notice pursuant to Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement." *Id.* (citation omitted).

## I.    PLAINTIFFS HAVE ARTICLE III STANDING

For a court to approve a proposed class action settlement, at least one named plaintiff must have Article III standing. *Frank v. Gaos*, 586 U.S. 485, 492 (2019). As current Schwab brokerage customers, Corrente Decl. ¶ 5; Shaw Decl. ¶ 5; Williams Decl. ¶ 5, all three Plaintiffs maintain

that they have Article III standing to seek the injunctive relief provided for in the Settlement. They allege an "imminent" (in fact, ongoing) injury—underpayment for their order flow, in the form of reduced price improvement on their trades, and reduced transparency regarding order routing, *see, e.g.*, Compl. ¶¶ 3, 35, 448-59.[1] *See Perez v. McCreary, Veselka, Bragg & Allen, P.C.*, 45 F.4th 816, 827 (5th Cir. 2022) (where injunctive relief is sought, plaintiff may show standing based on "a material risk of future harm . . . , at least so long as the risk of harm is sufficiently imminent and substantial" (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 435, 141 S. Ct. 2190, 2210 (2021)). And Plaintiffs' threatened injury (and that of other members of the Settlement Class) would be redressed by the injunctive relief provided for in the Settlement. *See TransUnion*, 594 U.S. at 423 (standing requires "that the injury would likely be redressed by judicial relief"). As discussed, the antitrust compliance program to be implemented by Schwab would target the very areas of Schwab's business where Plaintiffs allege the competitive forces affecting price improvement have been suppressed by the Merger. *See supra* Background Part I; *see, e.g.*, *Kostka*, 2022 WL 16821685, at *5 (finding redressability where plaintiffs alleged their injuries "may be redressed by . . . potential equitable relief to prevent future harm").

## II.    THE PROPOSED CLASS SHOULD BE PRELIMINARILY CERTIFIED

In considering whether to certify a settlement class, a court must consider whether the requirements of Rule 23 have been satisfied. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). "Specifically, all Rule 23(a) factors and at least one subsection of Rule 23(b) must be satisfied, except that the Court need not consider the manageability of a potential trial, since the

---

[1] Because the parties are settling at the class-certification stage, "the Court only considers whether the [s]ettling [p]laintiffs have 'plausibly alleged' the minimum requirements for Article III standing." *Kostka*, 2022 WL 16821685, at *4 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992), and citing *Earl v. Boeing Co.*, 339 F.R.D. 391, 412 (E.D. Tex. 2021) (Mazzant, J.)).

settlement, if approved, would obviate the need for one." *Duncan v. JPMorgan Chase Bank, N.A.*, 2015 WL 11623393, at *2 (W.D. Tex. Oct. 21, 2015) (citing *Amchem*, 521 U.S. at 620). Plaintiffs here seek to certify an injunctive-relief class under Rule 23(b)(2). In addition, an "implied prerequisite" of Rule 23 is that the proposed class be "ascertainable." *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007). Each of these elements is satisfied such that the Court "will likely be able to certify the class" at the final approval stage, Fed. R. Civ. P. 23(e)(1)(B), and accordingly the Settlement Class should be preliminarily certified.

### A.    The Settlement Class Is Ascertainable

To satisfy the ascertainability requirement, the class must be "adequately defined and clearly ascertainable." *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970). The Settlement Class fits the bill. The class is defined (with narrow exceptions) to include: persons, entities, and corporations who are current U.S. brokerage customers of Schwab or any of its affiliates, including customers who previously held accounts at Ameritrade. Whether someone is in the class is objectively determinable by reference to their status as a current brokerage customer of Schwab or its affiliated entities. And as current customers, these class members will be identifiable through Schwab's customer records and reachable by email, mail, or whatever other means Schwab uses to contact its customers. This is not the sort of "amorphous" or "imprecise" class definition that might defeat ascertainability. *See Braidwood Mgmt., Inc. v. Equal Emp. Opportunity Comm'n*, 70 F.4th 914, 933 n.36 (5th Cir. 2023). The ascertainability requirement is satisfied.

### B.    The Rule 23(a) Requirements Are Met

The Rule 23(a) factors are: numerosity, commonality, typicality, and adequacy of representation. *Braidwood Mgmt.*, 70 F.4th at 933. Each is met here.

9

### 1.    Numerosity

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." Schwab's records establish that the Settlement Class consists of approximately 36 million members. This is far more than sufficient to satisfy the numerosity requirement. *See Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999) (holding that a class of 100 to 150 members "is within the range that generally satisfies the numerosity requirement").

### 2.    Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Commonality is satisfied where the putative class members' claims "depend upon a common contention" that "must be of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Yates v. Collier*, 868 F.3d 354, 361 (5th Cir. 2017) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). "[E]ven a single common question will do." *Id.* at 365 n.6 (quoting *Wal-Mart*, 564 U.S. at 359).

There are several questions of law and fact that are capable of classwide resolution here, including: (1) whether the U.S. Retail Order Flow Market is a relevant antitrust market; (2) whether the effect of the Merger "may be substantially to lessen competition" in the ROFM, per Section 7 of the Clayton Act, 15 U.S.C. § 18; and (3) whether there is "threatened" loss or damage from the Merger entitling Plaintiffs and the class members to injunctive relief under Section 16 of the Clayton Act, 15 U.S.C. § 26. The commonality requirement is satisfied.

### 3.    Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Typicality "focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent.

. . . If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality." *Angell v. GEICO Advantage Ins. Co.*, 67 F.4th 727, 736 (5th Cir. 2023) (citations omitted).

Plaintiffs' claims and those of the other members of the Settlement Class all arise from the same course of conduct and are based on the same alleged legal theory—that the Merger will substantially lessen competition in the ROFM (as it already has done), resulting in reduced price improvement on future trades for all or most Schwab brokerage customers. Typicality is satisfied.

### 4.    Adequacy of Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Adequacy involves the following factors: "(1) the zeal and competence of the representatives' counsel; (2) the willingness and ability of the representatives to take an active role in and control the litigation and to protect the interests of absentees; and (3) the risk of conflicts of interest between the named plaintiffs and the class they seek to represent." *Angell v. GEICO Advantage Ins. Co.*, 67 F.4th 727, 737 (5th Cir. 2023) (cleaned up).

Plaintiffs have demonstrated that they are well suited to represent the Settlement Class. They have taken an active role in this litigation since before the filing of the Complaint, including by cooperating in discovery and approving the terms of the Settlement. Corrente Decl. ¶ 10; Shaw Decl. ¶ 10; Williams Decl. ¶ 10. There are no conflicts of interest between Plaintiffs and the Settlement Class. As current Schwab brokerage customers, Plaintiffs have the same interest as the rest of the class in establishing Schwab's liability and will benefit from the proposed injunctive relief in the same way as other class members. And while Plaintiffs will each receive $50 from Schwab in return for releasing their individual damages claims, any damages claims of absent class members are not being released under the Settlement, so there is no concern that Plaintiffs have sacrificed the rights of absent class members for their own benefit. Finally, Plaintiffs' Counsel are

well qualified to represent the Settlement Class, as they each possess significant experience prosecuting complex class actions, including antitrust class actions. *See* Burke/Bathaee Decl. ¶¶ 24-34.

### C.    The Rule 23(b)(2) Requirements Are Met

Plaintiffs seek certification of an injunctive-relief class under Rule 23(b)(2), which applies when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Certification under Rule 23(b)(2) is available if three requirements are met: "(1) class members must have been harmed in essentially the same way; (2) injunctive relief must predominate over monetary damage claims; and (3) the injunctive relief sought must be specific. The specificity element requires plaintiffs to give content to the injunctive relief they seek so that final injunctive relief may be crafted to describe in reasonable detail the acts required." *Yates v. Collier*, 868 F.3d 354, 366-67 (5th Cir. 2017) (cleaned up).

These elements are met here. First, Plaintiffs allege that as a result of the Merger, all members of the Settlement Class will be harmed in "essentially the same way," by underpayment for their retail order flow, in the form of reduced price improvement on trades through their Schwab brokerage accounts. Second, injunctive relief more than "predominates"—it is the only relief sought. Finally, the injunctive relief sought is specific. The Settlement not only requires the engagement of a consultant (whom the parties have already selected) to design an antitrust compliance program to be implemented by Schwab, but it also directs the consultant to examine specific areas of Schwab's business where Plaintiffs allege competitive forces have been diminished due to the Merger and where Plaintiffs allege remedial measures are most likely to benefit class members. *See supra* Background Part II.B. This provides more than enough detail as

to the "acts required" under the requested injunctive relief to support certification under Rule 23(b)(2). *See Yates*, 868 F.3d at 368.

*    *    *

Because the Settlement Class is ascertainable and the Rule 23(a) and Rule 23(b)(2) factors are satisfied, the Court "will likely be able to certify the class" at the final approval stage, Fed. R. Civ. P. 23(e)(1)(B). The Settlement Class should be preliminarily certified.

## III.    THE SETTLEMENT MERITS PRELIMINARY APPROVAL

To be approved, a proposed settlement must be "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Under Rule 23(e)(2), courts making this determination look to whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). In evaluating a proposed settlement, courts should consider the "overriding public interest in favor of settlement" in class action suits, *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977). *See ODonnell v. Harris Cnty., Tex.*, 2019 WL 4224040, at *8 (S.D. Tex. Sept. 5, 2019).

Before the amendment of Rule 23(e)(2) in 2018, the Fifth Circuit had set forth a six-factor test (the "*Reed* Test") to determine the appropriateness of a proposed settlement: "(1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members." *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983); *accord Jones v. Singing River Health Servs. Found.*, 865 F.3d 285, 293 (5th Cir. 2017). The 2018 amendment of Rule 23(e)(2) does not displace the largely overlapping *Reed* Test; rather, the *Reed* factors inform courts' application of the Rule 23(e)(2) requirements. *See Kostka*, 2022 WL 16821685, at *10 (citing Fed. R. Civ. P. 23(e) advisory committee's note to 2018 amendment).

The proposed settlement here meets the Rule 23(e)(2) requirements and should be preliminarily approved.

### A.    Plaintiffs and Counsel Have Adequately Represented the Class

As discussed above with respect to Rule 23(a)(4), Plaintiffs and Plaintiffs' Counsel have adequately represented the Settlement Class, *see* Fed. R. Civ. P. 23(e)(2)(A). *See supra* Argument Part II.B.4. Plaintiffs have been actively involved in the litigation and in approving the terms of the Settlement and their interests are aligned with those of the absent class members. Plaintiffs' Counsel have extensive experience in complex class actions, including antitrust class actions, have zealously prosecuted the class's claims, and have negotiated for injunctive relief that will meaningfully benefit class members. This factor favors preliminary approval of the settlement.

### B.    The Settlement Was Negotiated at Arm's Length

The Settlement was negotiated at arm's length under the auspices of an experienced and esteemed mediator, the Hon. Nancy F. Atlas (Ret.), satisfying both Rule 23(e)(2)(B) and the first

*Reed* factor (concerning the existence of fraud or collusion behind the settlement). "The involvement of an experienced and well-known mediator is . . . a strong indicator of procedural fairness." *Jones*, 865 F.3d at 295 (internal quotation marks omitted). In her attached declaration, Judge Atlas affirms that the negotiations were conducted at arm's length. Atlas Decl. ¶¶ 6-9; *see, e.g.*, *Jones*, 865 F.3d at 295 (crediting mediator's affidavit affirming that "[a]t all times, the participating parties' negotiations were civil, professional, but hard fought. The negotiations were conducted at arm's length without collusion."). A court may "presume that no fraud or collusion occurred between opposing counsel in the absence of any evidence to the contrary," *Kostka*, 2022 WL 16821685, at *10 (citation omitted), and such a presumption is warranted here. This factor favors preliminary approval.

### C. The Relief Provided for the Class Is Adequate

Rule 23(e)(2)(C) asks whether the proposed relief is adequate, taking into account: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Considering these factors, the antitrust compliance program provided for in the Settlement—which would focus on the areas of Schwab's business that Plaintiffs allege were affected by the Merger—provides exceptional value to the Settlement Class. Indeed, the mediator, Judge Atlas, has expressed her view that "the settlement provides meaningful relief to the members of the settlement class." Atlas Decl. ¶ 10.

Enhancing this value is the fact that the Settlement preserves any right that absent class members have to bring damages claims (including on behalf of a class). "[T]he relief provided to the class cannot be assessed in a vacuum. Rather, the settlement's benefits must be considered by comparison to what the class actually gave up by settling." *Campbell v. Facebook, Inc.*, 951 F.3d

15

1106, 1123 (9th Cir. 2020). As in *Campbell*, a leading case on injunctive-relief-only class settlements, the Settlement Class "gave up very little" to obtain the injunctive relief provided for in the Settlement, which weighs heavily in favor of a finding that the relief is adequate. *See id.* ("Here, the class did not need to receive much for the settlement to be fair because the class gave up very little."); *see also id.* at 1124 (noting that "the settlement here expressly excludes any release of absent class members' claims for damages").

### 1.  The costs, risks, and delay of trial and appeal

The first Rule 23(e)(2)(C) consideration—"the costs, risks, and delay of trial and appeal"—implicates four of the *Reed* factors: "(2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; [and] (5) the range of possible recovery." *Kostka*, 2022 WL 16821685, at *11 (quoting *Reed*, 703 F.2d at 172). Examining these factors supports a finding that the proposed injunctive relief is adequate.

***Complexity, expense, and likely duration of litigation.*** This litigation involves complex legal and factual issues and—in the absence of a settlement—is virtually certain to continue for years, at significant expense to both sides. To establish a claim under Section 7 of the Clayton Act, Plaintiffs will have to show that the effect of the Merger "may be substantially to lessen competition." 15 U.S.C. § 18. This requires defining a relevant market (*i.e.*, the ROFM), "establish[ing] a prima facie case that the merger is likely to substantially lessen competition in the relevant market," and, if Schwab were to rebut that prima facie case, "producing additional evidence of anticompetitive effects." *Illumina, Inc. v. Fed. Trade Comm'n*, 88 F.4th 1036, 1047–48 (5th Cir. 2023). To obtain injunctive relief, Plaintiffs would also need to show "a threat of antitrust injury." *Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104, 122 (1986). And Plaintiffs would need to establish the requirements for proceeding on a classwide basis under Rule 23. While

16

Plaintiffs are confident they would prevail, many of these issues would be vigorously contested by Schwab. *Cf. In re N.J. Tax Sales Certificates Antitrust Litig.*, 750 F. App'x 73, 79 (3d Cir. 2018) (affirming district court finding that antitrust case was "complex" to prosecute "in light of the elements Plaintiffs must demonstrate to establish their claim under § 1 of the Sherman Act"). Moreover, this action involves "complex factual questions involving the . . . securities industry, which would likely require expert testimony, complex models, and analysis of financial data." *Athale v. Sinotech Energy Ltd.*, 2013 WL 11310686, at *4 (S.D.N.Y. Sept. 4, 2013); *see also Utah Ret. Sys. v. Healthcare Servs. Grp., Inc.*, 2022 WL 118104, at *8 (E.D. Pa. Jan. 12, 2022) ("Lead Plaintiff's theory of liability, and the defenses proffered by Defendants, require sophisticated analysis of complex financial data and accounting rules before the case could proceed to trial.").

Finally, though this litigation has been pending for two-and-a-half years, it has yet to reach the class-certification stage and would likely go on for years absent a settlement. Given the hard-fought nature of this case to date, "[a]dditional litigation would likely include: (1) contested class certification proceedings; (2) an appeal under Federal Rule of Procedure 23(f); (3) dispositive motions; (4) expert depositions leading to *Daubert* challenges; (5) extensive pretrial filings; (6) a lengthy trial; (7) post-trial proceedings in this District Court; and (8) further appeals." *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 291-92 (W.D. Tex. 2007); *see also Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009) (same, antitrust action).

***Stage of the proceedings and amount of discovery completed.*** Courts consider the stage of the proceedings and the amount of discovery completed to determine "whether the parties have sufficient information to evaluate the terms of the settlement." *DeHoyos*, 240 F.R.D. at 292; *see also Cotton*, 559 F.2d at 1332–33. Here, the parties have engaged in an extensive discovery process, with Plaintiffs having deposed several of Schwab's executives most knowledgeable about

PFOF and Schwab having produced nearly one million pages of documents and 6.5 terabytes of financial data comprising approximately 6.4 billion individual trades placed by Schwab and Ameritrade customers from 2019–2023. Plaintiffs have retained a renowned finance professor who has more than 30 years of academic experience researching, writing, and speaking in the area of securities trading, the structure of the securities market, securities trading by retail customers, and payment for order flow. Plaintiffs' expert conducted an extensive study of market microstructure relevant to this case, including how the structure, design, and operation of the relevant market affect price formation and transaction costs of investors. Plaintiffs have also retained expert economists who have engaged in both qualitative and quantitative analysis of this information to determine the Merger's effect on competition in the asserted ROFM. Having analyzed this discovery in consultation with their experts, Plaintiffs are sufficiently informed to assess the parties' positions and determine that the Settlement is in the best interests of the putative class. *Cf. DeHoyos*, 240 F.R.D. at 292 (finding this factor satisfied where defendant produced "tens of thousands of documents" and "voluminous electronic data" and plaintiffs' experts conducted statistical data analysis).

**_Probability of Plaintiffs' success on the merits._** Absent fraud or collusion, "the most important factor in determining the fairness, adequacy, and reasonableness of the settlement is the likelihood of plaintiffs' success on the merits if the case were to proceed to trial." *DeHoyos*, 240 F.R.D. at 287 (citations omitted). Plaintiffs are confident they would ultimately prevail at trial but also recognize the substantial risks of proceeding with litigation, particularly given that many of "the key legal issues in the case ha[ve] not been adjudicated," *C.C. & L.C. v. Baylor Scott & White Health*, 2022 WL 4477316, at *3 (E.D. Tex. Sept. 26, 2022). As noted above, Plaintiffs face substantial legal and factual hurdles in establishing a claim under Section 7 of the Clayton Act and

an entitlement to classwide relief. Schwab can be expected to push back at every turn, likely opposing class certification, seeking to exclude Plaintiffs' experts, and moving for summary judgment. *Cf. In re N.J. Tax Sales Certificates Antitrust Litig.*, 750 F. App'x at 81 (evaluating plaintiffs' probability of success in light of "[d]efendants' intent to oppose class certification and move for summary judgment, and the complexities inherent in prosecuting a case that sounds in antitrust and that involves a settlement class of thousands"); *see also Rodriguez*, 563 F.3d at 964 (noting "the difficulty of proving an antitrust case," particularly where there are "no government coattails for the class to ride").

Against the nonnegligible risk that Plaintiffs might not prevail at trial, the Settlement secures meaningful relief that can be expected to provide concrete benefits to the Settlement Class. Given the risks inherent in proceeding with the litigation, this factor weighs in favor of approving the Settlement.

**Range of possible recovery.** In considering the range of possible recovery, the question is "whether the settlement's terms fall within *a reasonable range of recovery*, given the likelihood of the plaintiffs' success on the merits." *ODonnell*, 2019 WL 4224040, at *12 (citation omitted). Because the Settlement would bind only an injunctive-relief class under Rule 23(b)(2) and does not release damages claims, the relevant inquiry is the range of possible recovery were this case to proceed to trial as a Rule 23(b)(2) class action. In that scenario, the lowest end of the range would be no recovery at all. On the high end would be divestiture of Ameritrade from Schwab or segregation of the legacy Schwab and Ameritrade lines of business within the merged entity, to protect against future injury due to the Merger. *See* Compl. ¶ 487; *Chicago Bridge & Iron Co. N.V. v. F.T.C.*, 534 F.3d 410, 440-42 (5th Cir. 2008) (approving divestiture remedy in Clayton Act § 7 suit). While not as drastic a remedy as divestiture or segregation, the antitrust compliance program

provided for in the Settlement will ensure Schwab's order-routing practices (among others) promote price improvement and provide transparency regarding order routing for members of the Settlement Class and future Schwab brokerage customers. Given the risks inherent in proceeding with the litigation, this is doubtlessly within "a reasonable range of recovery" for the class.

### 2.    Proposed method of distributing relief to the class

The second Rule 23(e)(2)(C) consideration—"the effectiveness of any proposed method of distributing relief to the class,  including the method of processing class-member claims"—does not apply here, since only injunctive relief is proposed and such relief will not need to be distributed to individual class members. *Cf. Nelson v. Constant*, 2020 WL 5258454, at *8 (E.D. La. Sept. 3, 2020) (applying this factor to refunds distributed to class members but not to injunctive relief); *see also* Fed. R. Civ. P. 23(b)(2) (Rule 23(b)(2) class action requires that injunctive relief be appropriate respecting the class "as a whole").

### 3.    Proposed award of attorney's fees

The third Rule 23(e)(2)(C) consideration—"the terms of any proposed award of attorney's fees, including timing of payment"—supports a finding that the proposed injunctive relief is adequate. Provided the amount is reasonable, "[a]n agreed upon award of attorneys' fees and expenses is proper in a class action settlement." *DeHoyos*, 240 F.R.D. at 322 (citing Fed. R. Civ. P. 23(h) and collecting cases). Indeed, the Fifth Circuit has encouraged counsel in class actions to resolve fee issues by agreement. *See Johnson v. Ga. Highway Exp., Inc.*, 488 F.2d 714, 720 (5th Cir. 1974). By the same token, courts evaluating a proposed settlement must consider the terms of a proposed fee award, as "an inordinate fee may be the sign that counsel sold out the class's claims at a low value in return for the high fee." 4 *Newberg and Rubenstein on Class Actions* § 13:54 (6th ed. 2024). That concern is not present here.

The parties did not discuss the amount of attorney's fees Plaintiffs' Counsel would seek in their fee petition until after the substantive provisions of the Settlement, including the proposed injunctive relief, were agreed on. Burke/Bathaee Decl. ¶ 19. Instead, the parties mediated the maximum amounts of attorney's fees, costs, and expenses to be sought before the court-appointed mediator (Judge Atlas) over a month after execution of the Settlement Agreement. Plaintiffs' Counsel agreed to cap their attorney's fee application at $8,250,000 and expense reimbursement application at $700,000, and Schwab agreed not to object to these applications. *See DeHoyos*, 240 F.R.D. at 323 (noting with approval that "attorneys' fees were not negotiated or discussed until after the agreement was reached between the parties on all other terms of the settlement," and citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998)). In addition, these amounts will be disclosed in the notice of settlement, providing class members notice and the opportunity to object prior to final approval. *See Kostka*, 2022 WL 16821685, at *12 (noting that "the Objecting Plaintiffs, and any other concerned class member, may object to the award of attorneys' fees after the application has been filed").

Moreover, regardless of the fee cap negotiated by the parties, any award would ultimately be determined by the Court using the lodestar method, as required where attorney's fees are sought under a federal fee-shifting statute such as Section 16 of the Clayton Act, 15 U.S.C. § 26, *see Combs v. City of Huntington, Tex.*, 829 F.3d 388, 391-95 (5th Cir. 2016) (describing two-step lodestar method applicable in statutory fee-shifting cases). *See Nelson*, 2020 WL 5258454, at *8 n.3 (noting that counsel's request for attorney's fees "will be at the discretion of the court"). Here, Plaintiffs' Counsel will seek an amount not to exceed their lodestar and will forgo any multiplier or supplemental fee request. And because there is no damages award (and no corresponding release

of damages claims), there is no settlement fund that might be drawn down by an attorney's fee award. Accordingly, any fee award "will not affect [class members'] recovery." *Id.*

### 4.    Agreements required to be identified under Rule 23(e)(3)

There are no agreements between the parties beyond the terms set forth in the Settlement Agreement. Accordingly, this consideration under Rule 23(e)(2)(C)(iv) is not applicable here. *See Kostka*, 2022 WL 16821685, at *13.

*    *    *

Taking into account the Rule 23(e)(2)(C) considerations and applicable *Reed* factors, the injunctive relief provided for in the Settlement—which, as discussed above, is designed to provide meaningful benefits to class members and future Schwab brokerage customers—is clearly adequate. This supports preliminary approval.

### D.    The Settlement Treats Class Members Equitably Relative to Each Other

Rule 23(e)(2)(D) asks whether the proposed settlement "treats class members equitably relative to each other." The Settlement satisfies this factor. The antitrust compliance program to be implemented under the Settlement will redound to the benefit of all class members. Any measures related to price improvement or trading transparency will be shared broadly by Schwab brokerage customers. *See, e.g.*, *ODonnell*, 2019 WL 4224040, at *13 (noting in injunctive-relief settlement that "[a]ll class members are entitled to the same relief").

The only potential differential recovery among class members is that Schwab has agreed that it will not object to Plaintiffs' motion to receive a service award of up to $5,000 each, subject to court approval. Service awards (also called "incentive awards") are entirely consistent with Rule 23(e)(2)(D)'s equitable-treatment mandate because "the named plaintiffs invest in the case more heavily than their unnamed counterparts." *Scott v. Dart*, 99 F.4th 1076, 1086 (7th Cir. 2024). The Plaintiffs here have certainly done so, having spent considerable time and effort on such tasks as

assisting in counsel's initial investigation of the theory of the case, reviewing the Complaint, keeping abreast of case developments, collecting voluminous electronic documents and years of account statements for production, responding to two rounds of interrogatories, and consulting on and reviewing the terms of the Settlement. Corrente Decl. ¶¶ 9-13; Shaw Decl. ¶¶ 9-13; Williams Decl. ¶¶ 9-13. Moreover, the $5,000 maximum provided for in the Settlement is in line with what courts in the Fifth Circuit typically award. *See Duncan v. JPMorgan Chase Bank, N.A.*, 2016 WL 4419472, at *16 (W.D. Tex. May 24, 2016) ("District courts in the Fifth Circuit routinely award $5,000-$10,000 per named plaintiff."), *report and recommendation adopted*, 2016 WL 4411551 (W.D. Tex. June 17, 2016); *see, e.g.*, *DeHoyos*, 240 F.R.D. at 339-40 (approving incentive award of $5,000 to each named plaintiff in Rule 23(b)(2) class action). This factor supports preliminary approval.

### E.   The Opinions of Class Counsel and the Class Representatives Weigh in Favor of Approval

The final *Reed* factor—"the opinions of the class counsel, class representatives, and absent class members," 703 F.2d at 172—also supports preliminary approval. In determining whether to approve a proposed settlement, "[t]he trial court is entitled to rely upon the judgment of experienced counsel for the parties." *Jones*, 865 F.3d at 300 (quoting *Cotton*, 559 F.2d at 1330); *see also id.* ("[I]f experienced counsel reached this settlement, the court may trust that the terms are reasonable in ways that it might not had the settlement been reached by lawyers with less experience in class action litigation." (citation omitted)). Indeed, absent fraud or collusion, the trial court "should be hesitant to substitute its own judgment for that of counsel." *Cotton*, 559 F.2d at 1330. Plaintiffs' Counsel have many years of experience litigating class actions, and specifically antitrust class actions. *See* Burke/Bathaee Decl. ¶¶ 24-33. This experience informs counsel's

conclusion that the proposed settlement is fair, reasonable, and adequate. *See, e.g.*, *Kostka*, 2022 WL 16821685, at *13-14 (crediting opinion of experienced class counsel).

In addition, Plaintiffs have reviewed the Settlement and consider it to be fair, reasonable, and adequate, and each of them endorses court approval of the Settlement. Corrente Decl. ¶¶ 12-13; Shaw Decl. ¶¶ 12-13; Williams Decl. ¶¶ 12-13. This factor supports preliminary approval.

\*    \*    \*

Because the Settlement meets the Rule 23(e)(2) requirements, the Court "will likely be able to approve" it at the final approval stage, Fed. R. Civ. P. 23(e)(2). The Settlement should be preliminarily approved.

## IV.    THE CLASS NOTICE PLAN SHOULD BE APPROVED

Rule 23 requires that a court approving a class action settlement "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). "There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements." *ODonnell*, 2019 WL 4224040, at *26 (quoting *Wal-Mart*, 396 F.3d at 114). Instead, "a settlement notice need only satisfy the broad reasonableness standards imposed by due process." *In re Katrina Canal Breaches Litig.*, 628 F.3d 185, 197 (5th Cir. 2010) (internal quotation marks omitted). In a mandatory class action, such as one under Rule 23(b)(2),[2] due process requires that "class members be given information reasonably necessary for them to make a decision whether to object to the settlement." *Id.*; *see also ODonnell*, 2019 WL 4224040, at *26 ("The purpose of a notice of a proposed class settlement is to set forth the major contours of the proposal and to inform class members of their right to attend the fairness hearing

---

[2] *See Johnson v. Kansas City S. Ry. Co.*, 208 F. App'x 292, 296 (5th Cir. 2006) ("There are essentially two separate types of class action suits, mandatory non-opt-out classes under 23(b)(1) or 23(b)(2) and discretionary opt-out classes under 23(b)(3)."); *accord Wal-Mart*, 564 U.S. at 362.

and to lodge written objections by a prescribed date should they so desire." (quoting American Law Institute, Principles of the Law of Aggregate Litigation § 3.04(a) (2010))). Further, "[i]n the case of Rule 23(b)(2) class settlement, individualized notice is not required, but may be ordered by the court" in its discretion. *Nelson*, 2020 WL 5258454, at *9; *accord* 3 *Newberg and Rubenstein on Class Actions* § 8:15 (6th ed. 2024).[3]

The notice plan agreed to by the parties satisfies Rule 23(e)(1)(B). To provide reasonable notice to the Settlement Class, the parties selected Ankura Consulting Group LLC ("Ankura") to develop a notice program. Ankura has over 15 years of experience in designing notice and claims administration programs for class actions and mass torts. Plaintiffs have attached to this motion a declaration from Michael T. Northeim, Managing Director at Ankura, that proposes a comprehensive notice program and includes proposed class notices and Ankura's resume. The proposed notice program provides individual direct notice to all reasonably identifiable members of the Settlement Class via email or postcard notice, along with a dedicated website, class helpline, and helpdesk support where Settlement Class Members can learn more about their legal rights, the notices, and implications of the litigation, among other topics. Northeim Decl. ¶¶ 6-18. The costs of notice shall be paid by Schwab. Settlement Agmt. (Ex. 1) ¶ 6.7.

For direct notice, Ankura, under the supervision of Plaintiffs' Counsel, will begin immediately by obtaining basic contact information from Schwab for class members. Ankura will then send direct notices to all potential class members for which contact information is available. Based on its experience and the available Schwab data, Ankura estimates that about 95% (34.2

---

[3] In addition, the Class Action Fairness Act (CAFA) "requires that defendants provide notice of a proposed class action settlement to the appropriate state and federal officials no later than 10 days after the proposed settlement is filed in court." *Nelson*, 2020 WL 5258454, at *7 (citing 28 U.S.C. § 1715(b)). Under the Settlement, Schwab has agreed to serve the notice required under CAFA. Settlement Agmt. (Ex. 1) ¶ 6.8.

million) of these direct notices will go out via email. Ankura further estimates that the remainder of the direct notices (1.8 million) will go out via physical postcard notices. Northeim Decl. ¶ 7.

Ankura will employ methods to maximize the number of Settlement Class Members who receive notice via email or postcard notices. For example, prior to distributing email notice, Ankura will engage in an email cleansing and validation process to help ensure the quality of recipient email addresses. Northeim Decl. ¶ 8. Before mailing physical postcard notices, Ankura will process the addresses through the U.S. Postal Service's National Change of Address (NCOA) program and the Coding Accuracy Support System (CASS) certification to minimize undeliverable mail. *Id.* ¶ 12. Ankura will endeavor to disseminate the direct notices within 21 days after the Court approves the notice plan. To aid class members, Ankura will set up and maintain a settlement website that provides an overview of the litigation, issued notices, frequently asked questions, associated program documents, and any relevant contact information. Ankura will also set up a class helpline and a helpdesk to aid class members with any questions. *Id.* ¶¶ 17-18.

Notice will be provided in plain terms and easy-to-understand language. Direct email and postcard notices will be in a short-form version (Summary Notice) of the long-form notice, which will be accessible on the settlement website. All forms of notice will include information about the nature of the action, the definition of the Settlement Class, the settlement itself, the rights of Settlement Class Members under the Settlement (including their right to object), and the date and location of the Fairness Hearing. Exemplars of the long-form and summary notices are attached as Exhibits B and D to the Northeim Declaration.

Plaintiffs' notice plan will provide the "reasonable" notice required by Rule 23(e)(1)(B) and should be approved.

## CONCLUSION

The Settlement readily meets the standard for preliminary approval. Plaintiffs therefore respectfully request that this Court enter the proposed order submitted herewith, 1) certifying the proposed class for settlement purposes, 2) preliminarily approving the Settlement, 3) provisionally appointing Yavar Bathaee of Bathaee Dunne LLP and Christopher M. Burke of Burke LLP as co-lead class counsel, 4) provisionally appointing Plaintiffs as class representatives, 5) approving the proposed notice plan, and 6) setting a fairness hearing for final approval of the Settlement and to consider the application for attorney's fees, service awards, and reimbursement of litigation costs and expenses.

Dated:  February 4, 2025

Christopher M. Burke (*pro hac vice*)
cburke@burke.law
**BURKE LLP**
402 West Broadway, Suite 1890
San Diego, CA 92101
Tel: (619) 571-2253

Chad E. Bell (*pro hac vice*)
cbell@koreintillery.com
**KOREIN TILLERY P.C.**
205 North Michigan Avenue, Suite 1950
Chicago, IL 60601
Tel: (312) 641-9750

Respectfully submitted,

*/s/ Yavar Bathaee*
Yavar Bathaee (NY 4703443)*
yavar@bathaeedunne.com
Andrew Wolinsky (NY 4892196)
awolinsky@bathaeedunne.com
**BATHAEE DUNNE LLP**
445 Park Avenue, 9th Floor
New York, NY 10022
Tel: (332) 322-8835

Brian J. Dunne (CA 275689)
bdunne@bathaeedunne.com
Edward M. Grauman (TX 24081931)
egrauman@bathaeedunne.com
**BATHAEE DUNNE LLP**
901 South MoPac Expressway
Barton Oaks Plaza I, Suite 300
Austin, TX 78746
Tel: (213) 462-2772

Elizabeth L. DeRieux (TX 05770585)
ederieux@capshawlaw.com
S. Calvin Capshaw (TX 03783900)
ccapshaw@capshawlaw.com
**CAPSHAW DERIEUX LLP**

114 E. Commerce
Gladewater, TX 75647
Tel: (903) 236-9800
Fax: (903) 236-8787

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that on February 4, 2025, the above document was served on counsel of record for all parties via the CM/ECF system.

*/s/ Yavar Bathaee*

## CERTIFICATE OF CONFERENCE

I certify that the meet and confer requirement in Local Rule CV-7(h) has been complied with and that the motion is unopposed.

*/s/ Yavar Bathaee*