UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| Jonathan Corrente, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> The Charles Schwab Corporation, <br><br> Defendant. | Case No. 4:22-cv-470-ALM <br><br> Hon. Amos L. Mazzant, III |

**JOINT DECLARATION OF CHRISTOPHER BURKE AND YAVAR BATHAEE
IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR
<u>PRELIMINARY APPROVAL OF CLASS SETTLEMENT</u>**

<u>Pursuant to 28 U.S.C. § 1746, I, Christopher Burke, declare</u>:

1. I am currently a partner in the law firm of Burke LLP. Before January 1, 2025, I was a partner in the law firm of Korein Tillery PC.[1] I am an attorney admitted to practice in the United States District Court for the Eastern District of Texas as well as the highest courts of New York, Wisconsin, and California, among other jurisdictions. I am over the age of 18 and am personally familiar with and have personal knowledge of the facts contained herein, which I could and would testify competently thereto. I have personally spent considerable time on this case and have been involved in nearly every aspect of the case.

<u>Pursuant to 28 U.S.C. § 1746, I, Yavar Bathaee, declare</u>:

2. I am an attorney admitted to practice in the United States District Court for the Eastern District of Texas as well as the highest courts of New York and California, among other jurisdictions. I am a partner at Bathaee Dunne LLP. I am over the age of 18 and am personally

---

[1] I was a partner at Korein Tillery PC from November 2022 to December 2024, during which I actively represented plaintiffs in this case. On January 1, 2025, I left Korein Tillery PC to establish my own firm, Burke LLP. My current firm, Burke LLP, continues to represent plaintiffs in this case alongside attorneys from Korein Tillery PC and Bathaee Dunne LLP.

1

familiar with and have personal knowledge of the facts contained herein, which I could and would testify competently thereto. I have personally spent considerable time on this case and have been involved in nearly every aspect of the case.

Pursuant to 28 U.S.C. § 1746, we, Christopher Burke and Yavar Bathaee, jointly declare:

3. We are two of the attorneys of record for the Plaintiffs in the above-captioned matter, and our respective firms—Korein Tillery PC, Burke LLP, and Bathaee Dunne LLP—are co-counsel for Plaintiffs. We submit this declaration in support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Settlement ("Motion").

4. As Plaintiffs also move to certify a class for purposes of settlement, we ask to be appointed class counsel on behalf of the Settlement Class for this action.

## I.    THE LITIGATION

5. On June 2, 2022, Plaintiffs Jonathan Corrente, Charles Shaw, and Leo William filed a class action complaint in this Court challenging the merger between The Charles Schwab Corporation ("Schwab") and TD Ameritrade Holding Corporation ("Ameritrade") (the "Merger") under Section 7 of the Sherman Act, seeking damages and injunctive relief. *See* Compl. (ECF No. 1). Plaintiffs brought their claim on behalf of a putative class of "[a]ll persons, entities, and/or corporations in the United States who purchased or sold equities or equity options through TD Ameritrade, Schwab, or any of their affiliates from October 26, 2020, through the present." *Id.* ¶ 464.

6. Plaintiffs allege that the Merger, which was completed on October 26, 2020, consolidated more than half of the Retail Order Flow Market ("ROFM") in the United States into one entity, resulting in a significantly higher market concentration in the ROFM. Compl. ¶¶ 284-86. This higher market concentration has reduced competition among brokerages to maximize

price improvement to retail clients. *Id.* ¶¶ 372-73. The Merger also has the effect of allowing market makers to contract with fewer firms to obtain a substantial portion of all retail order flow. *Id.* ¶¶ 381-85. For these reasons, Plaintiffs allege the Merger did and will cause retail investors like Plaintiffs and putative class members to experience antitrust injury in the form of less payment for order flow remitted to retail customers, higher information costs resulting from the lack of price transparency, higher transactions costs in the form of wider bid-ask spreads from market makers, and diminished choice on how their trades are executed. *Id*. ¶¶ 385, 449-55, 485.

7. Both before and after commencing this lawsuit, our respective law firms, Bathaee Dunne LLP and Korein Tillery PC, investigated the underlying facts and thoroughly researched the relevant law. This included reviewing consumer complaints related to the selling of equities or equity options both before and after the Merger, reviewing public information and disclosures about the Merger, analyzing the highly specialized trade data Schwab produced to Plaintiffs in the course of discovery, and reviewing industry publications and relevant case law concerning the Merger in general. We also retained experts in the fields of antitrust economics, securities, and corporate finance and investigated the claims, consequences, and viable legal theories to be pursued against Schwab.

8. After Plaintiffs filed their Complaint on June 2, 2022, Schwab filed a motion to dismiss on August 29, 2022 (ECF No. 18), which the Court denied in its entirety on February 24, 2023 (ECF No. 40).

9. Discovery opened following the parties' Rule 26(f) conference on October 12, 2022. On December 1, 2022, Plaintiffs served their First Set of Interrogatories and Requests for Admission on Schwab. On March 15, 2023, Plaintiffs deposed Schwab through its Rule 30(b)(6) designee, a Senior Vice President. Plaintiffs also noticed and scheduled the depositions of seven

key Schwab and Ameritrade executives. Before settlement discussions began, Plaintiffs deposed four of these executives: Schwab's Managing Director of Market and Execution Services; Managing Director of Corporate Development; Managing Director of Trading Order Management and Risk; and Managing Director of Trading Operation, Equity, Options and Futures Trading Operations. In addition, Schwab has produced approximately 218,319 documents comprising 950,021 pages, of which Plaintiffs have conducted a thorough review.

10. In addition to documents, Schwab also produced 6.5 terabytes of financial data, comprising approximately 6.4 billion individual trades placed by Schwab and Ameritrade customers between 2019 and 2023. Plaintiffs retained expert econometricians and industrial organization economists who were in the process of using this financial data to construct a multivariate regression model that would estimate the impact of the Merger on the prices that Plaintiff class members paid for their trades. This model would also permit Plaintiffs' experts to estimate the trade prices "but for" the Merger, allowing for the calculation of both aggregated and individual-specific damages during the class period. Plaintiffs have also retained a renowned finance professor specializing in securities trading and the structure of securities market, who conducted an extensive study of market microstructure relevant to this case, including how the structure, design, and operation of the relevant market affect price formation and transaction costs of investors.

11. During discovery, Plaintiffs filed two motions to compel against Schwab. On September 8, 2023, Plaintiffs moved to compel Schwab to produce documents it had withheld under a purported privilege for "confidential supervisory information" based on regulations promulgated by the Federal Reserve Board and other banking regulators. (ECF No. 80). Plaintiffs argued that this purported privilege is without statutory authority and therefore invalid. *Id.* On

December 20, 2023, Plaintiffs moved to compel Schwab to produce the entire file from the U.S. Department of Justice's review of the Schwab-Ameritrade merger under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, including the approximately 15 million pages of documents produced to the DOJ by Schwab and TD Ameritrade. ECF No. 109.

## II.    THE SETTLEMENT NEGOTIATIONS

12. On July 9, 2024, the parties engaged in a full-day, in-person mediation with Judge Atlas. We were both present at this mediation.

13. On July 24, 2024, the parties jointly requested the appointment of the Hon. Nancy F. Atlas (Ret.) to serve as a mediator. (ECF No. 140). The Court granted this request on July 29, 2024, and stayed all other case deadlines except for Plaintiffs' deadline to file a motion for class certification and associated expert reports, which it reset to October 7, 2024. (ECF No. 141). The Court also rendered the Plaintiffs' two discovery motions moot. *Id.*

14. Since the in-person mediation, the parties have engaged in numerous telephone and Zoom calls, including with the assistance of Judge Atlas, to further discuss settlement.

15. On August 23, 2024, the parties provided the Court with a status report indicating that the mediation had made significant progress (ECF No. 142).

16. The parties reached an agreement in principle with respect to settlement, which was reduced to a signed term sheet on September 20, 2024. The parties jointly reported this development to the Court on September 27, 2024 (ECF No. 145). On October 1, 2024, the Court stayed all remaining case deadlines (ECF No. 146).

17. Since then, the parties have provided further status reports on the process of finalizing the settlement (ECF Nos. 147-48).

18. The parties executed the Stipulation and Agreement of Settlement on December 12, 2024.

19. The parties did not discuss the amounts of attorney's fees, costs, and expenses Plaintiffs' counsel will seek prior to agreeing on relief for the Settlement Class or executing the Stipulation and Agreement of Settlement. Instead, they mediated the issue before Judge Atlas on January 24, 2025. The notice given to the class and the proposed settlement website will disclose the maximum amount of fees and expense reimbursement Plaintiffs' counsel intend to seek. Plaintiffs' counsel also intend to apply for service awards of up to $5,000 for each Plaintiff for service undertaken on behalf of the Settlement Class in connection with the litigation of this action.

### III. THE PROPOSED SETTLEMENT

20. The proposed Settlement Class is defined as: persons, entities, and corporations who are current U.S. brokerage customers of Schwab or any of its affiliates, including customers who previously held accounts at Ameritrade. Excluded from the Settlement Class are: (a) the Defendant; (b) its employees, officers, directors, legal representatives, heirs, successors, and wholly or partly owned subsidiaries or affiliates; and (c) the judicial officers and their immediate family members and associated court staff assigned to this case.

21. The Settlement provides injunctive relief via retainer of an independent consultant ("Consultant") to design an antitrust compliance program, which Schwab will implement. The parties interviewed several candidates and have agreed to retain a team of attorneys from Fried, Frank, Harris Shriver & Jacobson LLP, including Bernard A. Nigro, Jr., Aleksandr Livshits, and Nihal Patel ("Fried Frank") to serve as the Consultant. Mr. Nigro is Global Chair of Fried Frank's Antitrust and Competition Department. Mr. Nigro previously served as the Department of Justice's Principal Deputy Assistant Attorney General for Antitrust and the Federal Trade Commission's

Deputy Director for the Bureau of Competition. While in government, Mr. Nigro worked on revisions to the merger guidelines and remedies polices. In private practice, Mr. Nigro has advised numerous companies on antitrust compliance issues. Mr. Livshits represents clients in connection with antitrust merger reviews, including governmental investigations of complex cross-border transactions, as well as antitrust compliance issues. Mr. Patel represents financial institutions and buy-side market participants on regulatory and compliance issues relating to securities and derivatives training. Mr. Patel regularly advises broker-dealers on regulatory issues. In designing the antitrust compliance program, the Consultant will consider (without limitation) the policies, practices, and procedures related to Schwab's communications with and among market makers and other broker-dealers; Schwab's order routing and execution; Schwab's order routing committees and decisionmakers, including as to communications and coordination with market makers and other broker-dealers; and Schwab's post-merger disclosures, reporting, statements, and other communications with retail clients. We believe that improvements to Schwab's business practices in these areas will result in tangible benefits to members of the Settlement Class and future Schwab customers, including through better price improvement on trades (providing direct monetary benefits) and more transparency regarding order routing (providing greater control and choice over how their trades are executed).

22. The Settlement releases the claims of the members of the Settlement Class as to all injunctive and other equitable or non-monetary claims or remedies asserted or that could have been asserted in the action, including any claim for divestiture. Schwab also has agreed to pay each of the three named Plaintiffs $50 in consideration for releasing their individual damages claims. The Settlement does not release the right of absent class members to bring damages claims, either individually or on behalf of a class.

23. We believe the Settlement Agreement is fair, reasonable, and adequate, and is in the best interests of Plaintiffs and putative Settlement Class Members. Despite our strong belief in the merits of this litigation and likelihood of success as trial, we nonetheless believe that the benefits to Plaintiffs and the putative Settlement Class pursuant to the agreed upon terms substantially outweigh the risks of continuing to litigate the claims—namely, the delay that would result before Plaintiffs and putative Settlement Class Members receive any benefits should the action proceed to trial; the possibility of a negative outcome at trial; and the possibility of a negative outcome post-trial should Schwab appeal a judgment in favor of the putative Settlement Class. This Settlement provides significant benefits now and is in the best interests of all putative Settlement Class Members.

## IV.    QUALIFICATIONS

24. At all times, Bathaee Dunne LLP, Korein Tillery PC, and Burke LLP had the experience, expertise, and resources to effectively litigate any and all issues related to this litigation.

25. I, Yavar Bathaee, have been in private practice since 2008. In 2020, I co-founded Bathaee Dunne LLP, where my practice has focused on complex plaintiff-side cases in federal and state courts across the country. Prior to co-founding Bathaee Dunne LLP, I spent more than a decade in Sullivan & Cromwell's litigation group, where I represented a wide breadth of clients, including financial institutions, automotive manufacturers, technology companies, and central banks.

26. I, Yavar Bathaee, have been lead or co-lead counsel in numerous complex class actions, including:

- *Klein v. Meta Platforms, Inc.*, No. 3:20-cv-08570-JD (N.D. Cal.). Co-lead counsel in a consolidated antitrust class action challenging Meta (formerly Facebook's) monopolization of the social advertising market. After surviving two motions to dismiss, the advertiser claims in *Klein* are presently pending class certification, with a trial scheduled in June 2024.

- *Biddle v. The Walt Disney Company*, No. 5:22-cv-07317 (N.D. Cal.). Co-lead counsel in consolidated case for consumer class actions challenging Disney's anticompetitive licensing practices in connection with ESPN and other properties in the streaming live pay TV market. Case is presently in discovery after surviving two motions to dismiss, with classes pursuing Sherman Act and multistate indirect purchaser class claims.

- *Crowder v. LinkedIn Corp.*, No. 4:22-cv-00237 (N.D. Cal.). Co-lead counsel in consumer class action challenging LinkedIn's monopolization of the Professional Social Networking Market. Currently in discovery after surviving motions to dismiss.

- *Pietosi v. HP, Inc.*, No. 3:22-cv-04237 (N.D. Cal.), and *Day v. Advanced Micro Devices, Inc.*, No. 3:22-cv-04305 (N.D. Cal). Co-lead counsel in related consumer class actions arising out of product defect in AMD's firmware TPM modules. Currently in discovery after surviving motions to dismiss.

27. I, Yavar Bathaee, graduated *magna cum laude*, Order of the Coif from Fordham Law School, where I also earned the Class of 1911 Prize.

28. A copy of Bathaee Dunne LLP's resume is submitted herewith as Exhibit A to this Declaration.

29. I, Christopher Burke, have been in private practice since 1994. My principal practice is complex antitrust litigation, particularly in the financial services industry.

30. I, Christopher Burke, have been a principal, trial, lead, and/or co-lead counsel in numerous complex class actions, including:

- *Alaska Elec. Pension Fund v. Bank of Am. Corp.*, No. 14-cv-7126 (S.D.N.Y) (ISDAfix litigation) ($504.5 million settlement);

- *Axiom Inv. Advisors, LLC, by & through its Trustee, Gildor Mgmt. LLC v. Barclays Bank PLC*, No. 15-cv-09323 (S.D.N.Y.) ($50 million settlement);

- *Dahl v. Bain Cap. Partners*, No. 07-cv-12388 (D. Mass.) ($590.5 million settlement);

- *In re Currency Conversion Antitrust Litig.*, MDL No. 1409 (S.D.N.Y.) ($336 million settlement);

- *In re Disposable Contact Lens Antitrust Litig.*, MDL No. 1030 (M.D. Fla.) ($90 million settlement with final settlements occurring during trial);

- *In re Foreign Exch. Benchmark Rates Antitrust Litig.*, No. 13- cv-7789 (S.D.N.Y.) (FX litigation) ($2.3 billion settlement);

- *In re GSE Bonds Antitrust Litig.*, No. 19-cv-01704 (S.D.N.Y.) ($386.5 million settlement);

- *In re Korean Air Lines Co., Ltd. Antitrust Litig.*, MDL No. 1891 (C.D. Cal.) ($86 million settlement);

- *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, MDL No. 1720 (E.D.N.Y.) ($5.6 billion settlement);

- *In re Prudential Ins. Co. of Am. SGLI/VGLI Contract Litig.*, No. 11-md-2208 (D. Mass.) ($40 million settlement);

- *LiPuma v. Am. Express Co.*, No. 1:04-cv-20314 (S.D. Fla.) ($90 million settlement);

- *Ross v. Am. Express Co.*, No. 04-cv-5723, MDL No. 1409 (S.D.N.Y.); and

- *Schwartz v. Visa*, No. 822505-4 (Alameda Cty. Super. Ct.) ($780 million plaintiff's judgment after six months of trial).

31. I, Christopher Burke, am currently serving as co-lead counsel in the following antitrust cases:

- *In re Fragrance Direct Purchaser Antitrust Litig.*, No. 2:23-cv-02174, a lawsuit against main fragrance manufactures for a price fixing conspiracy;

- *In re Passenger Vehicle Replacement Tires Antitrust Litig.*, No. 5:24-md-3107 (N.D. Ohio) pursuing price fixing claims against main manufacturers in the tire industries.

32. I, Christopher Burke, have been recognized three times (2014, 2018, and 2020) by the American Antitrust Institute for exemplary work in private enforcement of the antitrust law.

33. A copy of Christopher Burke's resume is submitted herewith as Exhibit B to this Declaration.

34. Based on our experience and our knowledge regarding the factual and legal issues in this matter, and given the substantial benefits provided by the Settlement, we believe the proposed settlement is fair, reasonable, and adequate within the meaning of Fed. R. Civ. P. 23(e) and should be preliminarily approved by the Court.

I certify under penalty of perjury that the foregoing is true and correct. Executed this 4th day of February, 2025 at New York, New York.

/s/ Yavar Bathaee
Yavar Bathaee

11

                                                         Bathaee Dunne LLP
                                                        445 Park Avenue, 9th Floor
                                                        New York, NY 10022
                                                        yavar@bathaeedunne.com

      I certify under penalty of perjury that the foregoing is true and correct. Executed this 4th day of February, 2025, at San Diego, California.

                                                        <u>/s/ Christopher Burke</u>
                                                        Christopher Burke
                                                        Burke LLP
                                                        402 West Broadway, Suite 1890
                                                        San Diego, CA 92101
                                                        cburke@burke.law

# EXHIBIT A

# Bathaee :: Dunne :: LLP

## Firm Overview

Bathaee Dunne was founded in 2020 with a dedicated focus on pursuing novel, complex, and significant cases—particularly in the spaces of antitrust, consumer protection, finance, and technology. Since its founding, the firm has served as lead counsel, co-lead counsel, or interim co-lead counsel in over a dozen nationwide class action suits. Our lawyers come from diverse backgrounds—we are engineers, physicists, actors, and musicians; antitrust, patent, securities, and products-liability lawyers; and were trained by preeminent law firms and some of the most highly respected judges in the country. We can litigate and win the cases we bring, and can quickly learn about any industry, product, business, or scheme.

## Current and Noteworthy Leadership Roles

- *Klein v. Meta Platforms, Inc.*, No. 3:20-cv-8570 (N.D. Cal.): Interim co-lead counsel in this putative antitrust class action brought by Facebook advertisers alleging that Facebook (now Meta) unlawfully monopolized the social advertising market.

- *Biddle et al. v. The Walt Disney Co.*, No. 5:22-cv-07317 (N.D. Cal.): Co-lead counsel in this putative antitrust class action brought by YouTube TV and DirecTV subscribers alleging that Disney entered into agreements in restraint of trade that raised prices in the streaming live paid television market.

- *Corrente et al. v. The Charles Schwab Corp.*, 4:22-cv-00470 (E.D. Tex.). Co-lead counsel in this putative antitrust class action brought by Charles Schwab customers alleging that the merger between Schwab and TD Ameritrade resulted in a substantial lessening of competition in the retail order flow market.

- *Crowder et al. v. LinkedIn Corp.*, No. 4:22-cv-00237 (N.D. Cal.). Co-lead counsel in this putative antitrust class action filed on behalf of Premium LinkedIn subscribers alleging that LinkedIn has prevented entry to would-be competitors in the professional social networking market.

- *Bakay et al. v. Apple Inc.*, 3:24-cv-476 (N.D. Cal.). Lead counsel in this putative antitrust class action filed on behalf of purchasers of Apple iPhones alleging that Apple's agreements with horizontal competitors violate Sections 1 and 2 of the Sherman Act.

- *Baker et al. v. Discover Financial Corp., et al.*, No. 1:24-cv-1265 (E.D. Va.). Lead counsel in this putative antitrust class action, brought under Section 7 of the Clayton Act, which seeks to enjoin the merger of Capital One and Discover on the grounds that the merger will lead to a substantial lessening of competition in the general credit card market and the credit card payment processing market.

- *In re Passenger Vehicle Replacement Tires Antitrust Litigation*, MDL No. 3107, 5:24-cv-3107 (N.D. Ohio). Appointed to the Plaintiffs' Steering Committee in this antitrust MDL representing indirect purchasers in this multidistrict litigation related to alleged price fixing in the market for new passenger vehicle replacement tires.

- *Pietosi et al. v. HP, Inc.*, No. 3:22-cv-4273 (N.D. Cal.). Co-lead counsel in this putative class action lawsuit filed on behalf of purchasers of HP computers with defective central processing units.

- *Day et al. v. Advanced Micro Devices, Inc.*, No. 3:22-cv-4305 (N.D. Cal.). Co-lead counsel in this putative class action lawsuit filed on behalf of purchasers of defective AMD central processing units.

- *Smith et al. v. Intel Corp.*, No. 5:23-cv-5761 (N.D. Cal.). Lead counsel in this putative class action lawsuit filed on behalf of purchasers of defective Intel central processing units (as well as purchasers of computers that incorporate those defective central processing units).

- *Harper v. Sievert et al.*, No. 2022-819 (Del. Ch.). Lead counsel in this shareholder derivative suit, which seeks to hold T-Mobile and certain of its corporate officers and directors responsible for adopting a reckless plan to adopt a data-mining architecture using T-Mobile customer data at the behest of T-Mobile's largest shareholder, Deutsche Telekom.

## Attorney Profiles

**Yavar Bathaee** (Partner) currently is lead, co-lead, or interim co-lead counsel in several class actions, including *Klein v. Meta Platforms, Inc.*, No. 3:20-cv-8570 (N.D. Cal.), *Biddle, et al. v. The Walt Disney Co.*, No. 5:22-cv-07317 (N.D. Cal.), *Crowder, et al. v. LinkedIn Corp.*, No. 4:22-cv-00237 (N.D. Cal.), and *Corrente, et al. v. The Charles Schwab Corp.*, 4:22-cv-00470 (E.D. Tex.). Mr. Bathaee has also represented clients in some of the largest class actions, multidistrict litigations, and trials in last decade, including in antitrust, RICO, securities, and bankruptcy cases. Mr. Bathaee holds a bachelor's degree in Computer Science and Engineering from the University of California, Davis, and is a *magna cum laude*, Order of the Coif graduate of Fordham Law School.

**Brian J. Dunne** (Partner) has represented clients in consumer class actions, antitrust cases, and patent cases for more than a decade. He is currently lead counsel in several class actions, including *Pietosi, et al., v. HP Inc.*, No. 3:22-cv-04273 (N.D. Cal), and *Day, et al., v. Advanced Micro Devices, Inc.*, No. 3:22-cv-04305 (N.D. Cal.), and was recently appointed to the Plaintiffs' Steering Committee representing indirect purchasers in MDL No. 3107, *In re Passenger Vehicle Replacement Tires Antitrust Litigation*, No. 5:24-md-03107 (N.D. Ohio). Mr. Dunne holds a bachelor's degree in Physics from Stanford University and graduated with Honors, Order of the Coif, from the University of Chicago Law School, where he was a member of the University of Chicago Law Review. Before private practice, Mr. Dunne clerked for the Hon. Jay S. Bybee of the United States Court of Appeals for the Ninth Circuit and the Hon. Susan P. Read of the New York Court of Appeals.

**Edward M. Grauman** (Partner) is an experienced litigator who has represented plaintiffs and defendants in high-stakes, complex disputes across a wide range of industries and areas of law, from antitrust, securities, and RICO to insurance coverage, environmental, and general commercial matters. Mr. Grauman has successfully represented clients in federal and state

15

courts, government investigations, and arbitral proceedings. His experience across sectors and subject-matter areas gives him a deep understanding of the business considerations involved in large-scale disputes and enables him to provide sound strategic and tactical advice. Mr. Grauman served as managing principal of the Austin office of Beveridge & Diamond. Earlier in his career, he was an associate at Sullivan & Cromwell LLP and Boies, Schiller & Flexner LLP.

**Andrew Chan Wolinsky** (Partner) represents clients in class actions throughout the country. He has represented clients as both plaintiffs and defendants in complex and class cases, including in the areas of consumer protection, antitrust, bankruptcy, commodities, and shareholder rights. He holds an undergraduate degree from Tufts University, graduating *magna cum laude*, and is a *cum laude* graduate of Fordham Law School. Mr. Wolinsky previously served in the Office of the Governor of New York working on matters related to public integrity, and also worked as an associate attorney at Davis Polk & Wardwell LLP and Sullivan & Cromwell LLP. Mr. Wolinsky clerked for the Honorable Loretta A. Preska, then-Chief Judge of the United States District Court for the Southern District of New York and the Honorable Jane R. Roth of the United States Court of Appeals for the Third Circuit.

**Andrew M. Williamson** (Of Counsel) has represented plaintiffs and defendants in complex class action, multidistrict litigation, and other high stakes litigation throughout the country for the past decade. This includes RICO class actions, antitrust class actions, and data breach litigation. Andrew is an experienced litigator, who has tried several cases in state and federal court and has litigated and argued motions in discovery disputes in complex nationwide class actions. He is a former federal prosecutor.  He is a graduate of the American University Washington College of Law and obtained his bachelor's degree in broadcast journalism from the University of Maryland Phillip Merrill College of Journalism. Prior to law school, he won multiple awards for his reporting and served as head coach for a collegiate baseball team, leading it to a national semifinal.

**Priscilla Ghita** (Associate) is a 2020 graduate of Wayne State University Law School, graduating *magna cum laude*, Order of the Coif, and . After graduating law school, she worked at Dickinson Wright, PLLC and clerked for The Hon. Diane D'Agostini, 48th District Court of Michigan. Ms. Ghita has represented both plaintiffs and defendants in complex commercial and class action matters in state and federal courts throughout the country, and taken leading roles at all steps of the litigation. Prior to law school, Ms. Ghita attended Oakland University, from which she graduated *magna cum laude*.

**Allison Cross** (Associate) graduated from UC Davis School of Law in 2019, Order of the Coif. There, she earned a Public Service Law Certificate along with her Juris Doctorate in part for her work with people incarcerated in California State Prisons. She is also a graduate of the University of Nevada, Reno, where she earned a Bachelor of Science degree, magna cum laude, in 2016. Following law school, Ms. Cross clerked for the Honorable Sul Ozerden of the United States District Court for the Southern District of Mississippi. Ms. Cross has experience with class action, consumer protection, and antitrust litigation, and has gained experience litigating technology and consumer class actions with Bathaee Dunne. Ms. Cross is admitted to practice in California and Florida.

16

**Felipa Quiroz** (Staff Attorney) has experience in commercial litigation across a range of industries, including oil and gas, pharmaceuticals, technology, and healthcare. Ms. Quiroz has worked on complex transnational litigation matters, civil and criminal government investigations, compliance, and other regulatory matters. She has worked with clients in the United States and Mexico regarding large-scale government investigations under the Foreign Corrupt Practices Act. Earlier in her career, Ms. Quiroz worked at the Brooklyn Defender Services Immigration Unit, advising clients and public defenders on the consequences of criminal charges. Ms. Quiroz earned her Juris Doctor from the University of California Berkeley School of Law, where she was on the Berkeley La Raza Law Journal and participated in the International Human Rights Law Clinic. Ms. Quiroz has an M.A. in education from the University of Pennsylvania and a B.A. in Romance Languages from Mount Holyoke College, where she graduated *cum laude*.

# EXHIBIT B

## **CHRISTOPHER M. BURKE**

Christopher M. Burke's principal practice is complex antitrust litigation, particularly in the financial services industry. Mr. Burke received his B.A. from The Ohio State University (1984), his Master's degree from William & Mary (1988), and his M.A. (1989) and Ph.D. (1996) in Political Science from the University of Wisconsin. He received his law degree from University of Wisconsin (1993).

Mr. Burke recovered over $10 billion on behalf of class members. *See*, *e.g.*, *In re Foreign Exchange Benchmark Rates Antitrust Litigation*, No. 13-cv-7789 (S.D.N.Y.) ("FX litigation") ($2.3 billion settlement); *In re GSE Bonds Antitrust Litigation*, No. 19-cv-01704 (S.D.N.Y.) ("GSE litigation") ($386.5 million settlement); *Alaska Electrical Pension Fund v. Bankcr of America Corp.*, No. 14-cv-7126 (S.D.N.Y) ("ISDAfix litigation") ($504.5 million settlement); *Dahl v. Bain Capital Partners, LLC*, No. 07-cv-12388 (D. Mass.) ($590.5 million settlement); *In re Currency Conversion Antitrust Litigation*, MDL No. 1409 (S.D.N.Y.) ($336 million settlement); and *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litigation*, MDL No. 1720 (E.D.N.Y.) ($5.6 billion settlement).

Mr. Burke has been lead counsel in some of the world's largest financial services antitrust matters. He is currently co-lead counsel in FX litigation. He previously served as co-lead counsel in GSE litigation and ISDAfix litigation. Mr. Burke is currently serving as co-lead counsel in *In re Fragrance Direct Purchaser Antitrust Litigation*, No. 2:23-cv-02174 (D.N.J.) and *In re Passenger Vehicle Replacement Tires Antitrust Litigation*, No. 5:24-md-3107 (N.D. Ohio) pursuing price fixing claims against main manufacturers in the fragrance and tire industries.

Mr. Burke has served as co-lead counsel in *Dahl v. Bain Capital Partners, LLC*, No. 07-cv-12388 (D. Mass.) ($590.5 million settlement); *Axiom Investment Advisors, LLC, by and through its Trustee, Gildor Management LLC v. Barclays Bank PLC*, No. 15-cv-09323 (S.D.N.Y.) ($50 million settlement); *In re Currency Conversion Antitrust Litigation*, MDL No. 1409 (S.D.N.Y.) ($336 million settlement); *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litigation*, MDL No. 1720 (E.D.N.Y.) ($5.6 billion settlement); and *LiPuma v. American Express Co.*, No. 1:04-cv-20314 (S.D. Fla.) ($90 million settlement).

Mr. Burke was also co-lead counsel for indirect purchasers in *In re Korean Air Lines Co., Ltd. Antitrust Litigation*, MDL No. 1891 (C.D. Cal.) ($86 million settlement), and *In re Prudential Insurance Company of America SGLI/VGLI Contract Litigation*, No. 11-md-2208 (D. Mass.) ($40 million settlement). He was one of the original lawyers in the *In re Wholesale Elec*. antitrust cases in California, which settled for over $1 billion. Mr. Burke also investigated and filed the first complaint in *In re Credit Default Swaps Antitrust Litigation*, No. 13-md-2476 (S.D.N.Y.).

Mr. Burke has extensive trial experiences. Mr. Burke was lead trial counsel in the FX litigation and one of the trial counsel in *Schwartz v. Visa*, No. 822505-4 (Alameda Cty. Super. Ct.) ($780 million plaintiff's judgment after six months of trial); *In re Disposable Contact Lens Antitrust Litigation*, MDL No. 1030 (M.D. Fla.) ($90 million settlement with final settlements occurring during trial); *Ross v. Bank of America N.A. (USA)*, No. 05-cv-7116, MDL No. 1409 (S.D.N.Y.); and *Ross v. American Express Co.*, No. 04-cv-5723, MDL No. 1409 (S.D.N.Y.).

Mr. Burke frequently lectures at professional conferences and CLEs on competition matters, including litigation surrounding financial benchmarks, class-barring arbitration clauses, the effects of *Twombly* in 12(b)(6) motions, and the increasing use of experts at class certification and trial. The American Antitrust Institute ("AAI") honored Mr. Burke with an Outstanding Antitrust Litigation Achievement in Private Law Practice award at their 2020 and 2018 Antitrust Enforcement Awards for efforts in the GSE litigation and ISDAfix litigation, respectively. In 2014, he was also recognized for his exemplary work in the *Dahl v. Bain Capital Partners* matter by the AAI and has regularly been designated as a Super Lawyer by *Thomson Reuters*.

Mr. Burke has also served as an Assistant Attorney General at the Wisconsin Department of Justice and has lectured on law-related topics, including constitutional law, law and politics, and civil rights at the State University of New York at Buffalo and at the University of Wisconsin. Mr. Burke's book, *The Appearance of Equality: Racial Gerrymandering, Redistricting, and the Supreme Court* (Greenwood, 1999), examines conflicts over voting rights and political representation within the competing rhetoric of communitarian and liberal strategies of justification.

Mr. Burke co-authored an article with Stephanie A. Hackett, David W. Mitchell, Simon J. Wilke, Melanie Stallings Williams, Michael A. Williams, and Wei Zhao, "Masters of the Universe: Bid Rigging by Private Equity Firms in Multibillion Dollar LBOs," 87 U. Cin. L. Rev. 29 (2018).