# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | |
|---|---|
| Jonathan Corrente, et al., | Case No. 4:22-cv-470-ALM |
| *Plaintiffs*, | Hon. Amos L. Mazzant, III |
| v. | |
| The Charles Schwab Corporation, | |
| *Defendant*. | |

## PLAINTIFFS' MOTION FOR FINAL
## <u>APPROVAL OF CLASS ACTION SETTLEMENT</u>

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................ 2

    A.    History of the Litigation ................................................................................ 2

    B.    The Settlement Class .................................................................................... 4

    C.    The Settlement Relief .................................................................................. 5

    D.    Scope of the Release ................................................................................... 6

    E.    Attorney's Fees, Costs, and Expenses and Representative Plaintiff Service Awards ........................................................................................................ 6

    F.    Notice to the Class ...................................................................................... 7

ARGUMENT ...................................................................................................................... 7

I.      PLAINTIFFS HAVE ARTICLE III STANDING ........................................... 7

II.     THE CLASS SHOULD BE CERTIFIED ......................................................... 8

    A.    The Settlement Class Is Ascertainable ........................................................ 9

    B.    The Rule 23(a) Requirements Are Met ........................................................ 9

        1.        Numerosity .................................................................................. 9

        2.        Commonality ............................................................................. 10

        3.        Typicality .................................................................................. 10

        4.        Adequacy of Representation ....................................................... 11

    C.    The Rule 23(b)(2) Requirements Are Met .................................................. 12

III.    APPOINTMENT OF CLASS COUNSEL IS PROPER .................................. 13

IV.   THE CLASS RECEIVED REASONABLE NOTICE .................................... 14

V.     THE SETTLEMENT MERITS FINAL APPROVAL .................................... 16

    A.    Plaintiffs and Counsel Have Adequately Represented the Class .................. 18

    B.    The Settlement Was Negotiated at Arm's Length ....................................... 18

    C.    The Relief Provided for the Class Is Adequate .......................................... 19

        1.        The costs, risks, and delay of trial and appeal ............................. 21

        2.        Proposed method of distributing relief to the class ...................... 25

        3.        Proposed award of attorney's fees .............................................. 25

        4.        Agreements required to be identified under Rule 23(e)(3) ............ 27

    D.    The Settlement Treats Class Members Equitably Relative to Each Other ........... 27

    E.    The Opinions of Class Counsel, the Class Representatives, and Absent Class Members Weigh in Favor of Approval ....................................................... 28

## TABLE OF CONTENTS
(*continued*)

CONCLUSION ................................................................................................................... 30

# TABLE OF AUTHORITIES

## Cases

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)......................................................................................... 8

*Angell v. GEICO Advantage Ins. Co.*,
67 F.4th 727 (5th Cir. 2023) ........................................................................ 10, 11

*Athale v. Sinotech Energy Ltd.*,
2013 WL 11310686 (S.D.N.Y. Sept. 4, 2013)...................................................... 21

*Braidwood Mgmt., Inc. v. Equal Emp. Opportunity Comm'n*,
70 F.4th 914 (5th Cir. 2023) ............................................................................. 9

*C.C. & L.C. v. Baylor Scott & White Health*,
2022 WL 4477316 (E.D. Tex. Sept. 26, 2022) ................................................ 17, 23

*Campbell v. Facebook, Inc.*,
951 F.3d 1106 (9th Cir. 2020) .......................................................................... 20

*Cargill, Inc. v. Monfort of Colo., Inc.*,
479 U.S. 104 (1986)........................................................................................ 21

*Celeste v. Intrusion Inc.*,
2022 WL 17736350 (E.D. Tex. Dec. 16, 2022).................................................... 17

*Chicago Bridge & Iron Co. N.V. v. F.T.C.*,
534 F.3d 410 (5th Cir. 2008) ........................................................................... 24

*Combs v. City of Huntington, Tex.*,
829 F.3d 388 (5th Cir. 2016) ........................................................................... 26

*Cotton v. Hinton*,
559 F.2d 1326 (5th Cir. 1977) ................................................................ 17, 22, 28

*DeBremaecker v. Short*,
433 F.2d 733 (5th Cir. 1970) ............................................................................ 9

*DeHoyos v. Allstate Corp.*,
240 F.R.D. 269 (W.D. Tex. 2007) ................................................................ *passim*

*Duncan v. JPMorgan Chase Bank, N.A.*,
2016 WL 4419472 (W.D. Tex. May 24, 2016) ..................................................... 28

*Frank v. Gaos*,
586 U.S. 485 (2019)......................................................................................... 7

## TABLE OF AUTHORITIES

### Cases
*(continued)*

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ................................................ 26

*Illumina, Inc. v. Fed. Trade Comm'n*,
    88 F.4th 1036 (5th Cir. 2023) ................................................ 21

*In re Chinese-Manufactured Drywall Prods. Liab. Litig.*,
    424 F. Supp. 3d 456 (E.D. La. 2020) ..................................... 24

*In re Deepwater Horizon*,
    739 F.3d 790 (5th Cir. 2014) .................................................. 8

*In re Katrina Canal Breaches Litig.*,
    628 F.3d 185 (5th Cir. 2010) ................................................ 14

*In re N.J. Tax Sales Certificates Antitrust Litig.*,
    750 F. App'x 73 (3d Cir. 2018) ...................................... 21, 23

*John v. Nat'l Sec. Fire & Cas. Co.*,
    501 F.3d 443 (5th Cir. 2007) .................................................. 9

*Johnson v. Ga. Highway Exp., Inc.*,
    488 F.2d 714 (5th Cir. 1974) ................................................ 25

*Johnson v. Kansas City S. Ry. Co.*,
    208 F. App'x 292 (5th Cir. 2006) ......................................... 14

*Jones v. Singing River Health Servs. Found.*,
    865 F.3d 285 (5th Cir. 2017) ...................................... 17, 18, 28

*Klein v. O'Neal, Inc.*,
    705 F. Supp. 2d 632 (N.D. Tex. 2010) .................................. 18

*Kostka v. Dickey's Barbecue Restaurants, Inc.*,
    2022 WL 16821685 (N.D. Tex. Oct. 14, 2022) ..................... 8, 21, 26

*Marcus v. J.C. Penney Co., Inc.*,
    2017 WL 6590976 (E.D. Tex. Dec. 18, 2017) ........................ 29

*Mullen v. Treasure Chest Casino, LLC*,
    186 F.3d 620 (5th Cir. 1999) .................................................. 9

*Nelson v. Constant*,
    2020 WL 5258454 (E.D. La. Sept. 3, 2020) ..................... 14, 25, 27

## TABLE OF AUTHORITIES

### Cases
*(continued)*

*Nelson v. Constant*,
  2020 WL 7480627 (E.D. La. Dec. 18, 2020)........................................................... 14

*ODonnell v. Harris Cnty., Texas*,
  2019 WL 4224040 (S.D. Tex. Sept. 5, 2019) ................................................... 14, 27

*Perez v. McCreary, Veselka, Bragg & Allen, P.C.*,
  45 F.4th 816 (5th Cir. 2022) ....................................................................................... 8

*Reed v. Gen. Motors Corp.*,
  703 F.2d 170 (5th Cir. 1983) .............................................................. 17, 21, 28

*Rodriguez v. W. Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ............................................................... 22, 23

*Scott v. Dart*,
  99 F.4th 1076 (7th Cir. 2024) .................................................................................... 28

*Stott v. Cap. Fin. Servs., Inc.*,
  277 F.R.D. 316 (N.D. Tex. 2011) ........................................................................ 7, 14

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021)...................................................................................................... 8

*Utah Ret. Sys. v. Healthcare Servs. Grp., Inc.*,
  2022 WL 118104 (E.D. Pa. Jan. 12, 2022) ............................................................. 21

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011).............................................................................................. 10, 14

*Welsh v. Navy Fed. Credit Union*,
  2018 WL 7283639 (W.D. Tex. Aug. 20, 2018) ....................................................... 18

*Yates v. Collier*,
  868 F.3d 354 (5th Cir. 2017) ............................................................................. 10, 12

*Zaragoza v. Union Pac. R.R. Co.*,
  112 F.4th 313 (5th Cir. 2024) ..................................................................................... 4

### Statutes and Rules

15 U.S.C. § 18............................................................................................................ 10, 21

15 U.S.C. § 26............................................................................................................ 10, 26

# TABLE OF AUTHORITIES

## Statutes and Rules
### (*continued*)

28 U.S.C. § 1715 .................................................................................................... 14

FED. R. CIV. P. 23 ................................................................................................ *passim*

## Other Authorities

3 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS
  § 8:15 (6th ed. 2024) ......................................................................................... 14

4 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS
  § 13:54 (6th ed. 2024) ....................................................................................... 26

AMERICAN LAW INSTITUTE, PRINCIPLES OF THE LAW OF AGGREGATE LITIGATION
  § 3.04(a) (2010) ................................................................................................. 26

# INTRODUCTION

After three years of litigation, Plaintiffs and the Charles Schwab Corporation ("Schwab") reached a settlement in principle to settle *only* the claim for injunctive relief brought by Plaintiffs under Section 7 of the Clayton Act. The proposed class settlement does not release or resolve any damages claims available under Section 4 of the Clayton Act. The parties ultimately memorialized their agreement in a Stipulation and Agreement (the "Settlement Agreement") and sought preliminary approval from this Court, which was granted. The settlement class to be certified pursuant to Fed. R. Civ. 23(b)(2) (the "Settlement Class") was provided notice, and Plaintiffs now seek final approval of the Settlement.

The injunctive relief obtained as part of the settlement is valuable and is expected to provide more than one hundred million dollars per year of benefit—concrete benefit, through increased price improvement—to the Settlement Class going forward. Specifically, the injunctive relief obtained addresses the theory of anticompetitive harm pleaded  and litigated in this case— that the merger reduced competition among market makers to provide discretionary price improvement, the amount greater or lesser than the National Best Bid Offer price (the "NBBO") to Schwab's customers, depending on whether the trade is for a purchase or sale of a security. The settlement appoints a neutral third-party to address specific areas of concern and requires Schwab to implement recommended changes that are calculated to restore competition for price improvement prospectively—namely, by ensuring adequate information barriers among the market makers to which Schwab routes all its customers' orders. In exchange for this relief, the Settlement Class releases only its claims for injunctive relief; the Settlement Class retains any damages claims they may have flowing from the merger and may pursue them even if the Settlement is approved. As shown below, this settlement is fair. It also meets all of the applicable

Rule 23 requirements. Plaintiffs accordingly respectfully request that the Court grant this motion to finally approve the Settlement and other related relief set forth below.

## BACKGROUND

### A.    History of the Litigation

On June 2, 2022, Plaintiffs filed a class action complaint challenging the merger between Schwab and TD Ameritrade Holding Corporation ("TD Ameritrade") (the "Merger") under Section 7 of the Clayton Act, seeking damages and injunctive relief. *See* Compl., Dkt. No. 1; Joint Decl. of Yavar Bathaee and Christopher Burke ("Bathaee Decl.") ¶ 5. Plaintiffs alleged the Merger substantially lessened competition in an asserted Retail Order Flow Market ("ROFM"), harming Schwab brokerage customers in the form of reduced price improvement on trades through their brokerage accounts. Bathaee Decl. ¶ 6.

On August 29, 2022, Schwab filed a motion to dismiss, which the Court denied on February 24, 2023. Dkt. Nos. 18, 40. Discovery opened following the parties' Rule 26(f) conference on October 12, 2022. On December 1, 2022, Plaintiffs served their First Set of Interrogatories and Requests for Admission on Schwab. Bathaee Decl. ¶ 9.

On March 15, 2023, Plaintiffs deposed Schwab through its Rule 30(b)(6) designee, a Senior Vice President. Bathaee Decl. ¶ 9. Plaintiffs also deposed four key Schwab and TD Ameritrade executives prior to settlement discussions: Schwab's Managing Director of Market and Execution Services; Managing Director of Corporate Development; Managing Director of Trading Order Management and Risk; and Managing Director of Trading Operation, Equity, Options and Futures Trading Operations. *Id.* In addition, Schwab produced approximately 218,319 documents comprising 950,021 pages, of which Plaintiffs have conducted a thorough review for merits and expert purposes. *Id.*

Plaintiffs' economic experts conducted extensive statistical analysis to investigate and test the hypothesis that the Merger reduced price improvement on trades below the levels that would have prevailed absent the Merger. This analysis involved processing voluminous data on more than 6 billion trades. Bathaee Decl. ¶ 10. Plaintiffs' financial markets expert also reviewed information, materials, and testimony from discovery, as well as other technical information. *Id.*

During discovery, Plaintiffs filed two motions to compel against Schwab. Dkt. Nos. 80, 109; Bathaee Decl. ¶ 11. Discovery proceeded until July 2024, when the parties jointly moved for the appointment of a mediator and a stay of most case deadlines to facilitate settlement discussions. Dkt. No. 140.

By mutual agreement, the Hon. Nancy F. Atlas (Ret.) held a full-day, in-person mediation session on July 9, 2024 with the parties. Bathaee Decl. ¶ 12. Although the parties did not reach a resolution at the mediation, they conceived of a conceptual framework for a potential resolution and resolved to continue further negotiations thereafter with Judge Atlas's assistance. On July 24, 2024, the parties jointly requested that the Court formally appoint Judge Atlas to serve as a mediator. *Id.* ¶ 13. The Court granted this request on July 29, 2024, suspending the pending discovery motions and staying all other case deadlines except for Plaintiffs' deadline to file a motion for class certification and associated expert reports, which it reset to October 7, 2024. Dkt. No. 141; Bathaee Decl. ¶ 13.

After providing a status report on August 23, 2024, indicating that the negotiations had made significant progress, the parties jointly reported on September 27, 2024 to the Court that they had reached an agreement in principle with respect to settlement that had been reduced to a signed term sheet. Dkt. Nos. 142, 145; Bathaee Decl. ¶¶ 15-16. On October 1, 2024, the Court stayed all remaining case deadlines, and subsequently, the parties provided status reports on the process of

finalizing the settlement. Dkt. No. 146; Bathaee Decl. ¶ 16. After months of further negotiation, the parties executed the Settlement Agreement on December 12, 2024. Bathaee Decl. ¶ 18.

On February 4, 2025, Plaintiffs filed their Unopposed Motion for Preliminary Approval of Class Action Settlement. Dkt. No. 154. On February 19, 2025, the Court granted that motion and preliminarily approved the Settlement, certified the Settlement Class, appointed Plaintiffs as class representatives, and appointed Yavar Bathaee of Bathaee Dunne LLP and Christopher M. Burke of Burke LLP as co-lead class counsel. Dkt. No. 157. Additionally, the Court ordered that the Settlement Class be notified and scheduled the Fairness Hearing for August 28, 2025. *Id.* Subsequently, the members of the Settlement Class were notified. Northeim Decl. ¶¶ 24-39.

### B.    The Settlement Class

The Settlement Class is defined as:

> persons, entities, and corporations who are current U.S. brokerage customers of Schwab or any of its affiliates, including customers who previously held accounts at TD Ameritrade.

Excluded from the Settlement Class are: (a) the Defendant; (b) its employees, officers, directors, legal representatives, heirs, successors, and wholly or partly owned subsidiaries or affiliates; and (c) the judicial officers and their immediate family members and associated court staff assigned to this case. Because the Settlement provides prospective relief that will benefit current and future Schwab customers only, the proposed Settlement Class is narrower than the class defined in the Complaint, which also encompassed past customers seeking damages for past conduct, *see* Compl. ¶¶ 464-65. *See Zaragoza v. Union Pac. R.R. Co.*, 112 F.4th 313, 318-19 (5th Cir. 2024) (court may "redefine" pleaded class definition "as appropriate in response to the progression of the case from assertion to facts").

### C.    The Settlement Relief

The parties agreed to jointly retain an independent consultant at Schwab's expense to design an antitrust compliance program that Schwab will implement. The independent consultant was tasked with several areas of concern that must be addressed as part of the program. Settlement Agmt. (Ex. 1) ¶ 2.2. The parties interviewed multiple candidates for the consultant position before submitting the Settlement for preliminary approval and agreed to retain a team of attorneys from Fried, Frank, Harris Shriver & Jacobson LLP, including Bernard A. Nigro, Jr., Aleksandr Livshits, and Nihal Patel, to serve as the consultants. Mr. Nigro is Global Chair of Fried Frank's Antitrust and Competition Department. Mr. Nigro previously served as the Department of Justice's Principal Deputy Assistant Attorney General for Antitrust and the Federal Trade Commission's Deputy Director for the Bureau of Competition. While in government, Mr. Nigro worked on revisions to the merger guidelines and remedies polices. In private practice, Mr. Nigro has advised numerous companies on antitrust compliance issues. Mr. Livshits represents clients in connection with antitrust merger reviews, including governmental investigations of complex cross-border transactions, as well as antitrust compliance issues. Mr. Patel represents financial institutions and buy-side market participants on regulatory and compliance issues relating to securities and derivatives training. Mr. Patel regularly advises broker-dealers on regulatory issues. Bathaee Decl. ¶ 21. Messrs. Nigro, Livshits, and Patel's combined experience, covering antitrust and financial institutions, makes them an ideal fit for this case.

In designing the program, the consultant will target (without limitation) the following areas of Schwab's business:

- Policies, practices, and procedures related to Schwab's communications with and among market makers and other broker-dealers;

- Policies, practices, and procedures related to Schwab's order routing and execution, including those pertaining to Schwab's order routing allocations and price

improvement as provided by market makers to Schwab's retail customers who trade equities and options;

- Policies, practices, and procedures applicable to Schwab's order routing committees and decisionmakers, including as to communications and coordination with market makers and other broker-dealers; and

- Schwab's post-merger disclosures, reporting, statements, and other communications with retail clients regarding transaction-related price improvement and order routing that may promote inter-brand competition among broker-dealers.

Settlement Agmt. (Ex. 1) ¶ 2.2. These areas are directly implicated in Plaintiffs' allegations that the Merger has led to a substantial lessening of competition in an asserted Retail Order Flow Market, leading to decreased price improvement.

Plaintiffs believe the antitrust compliance program will provide tangible benefits to members of the Settlement Class and future Schwab customers by further ensuring price improvement on trades (which would provide direct monetary benefits).

### D.    Scope of the Release

The Settlement releases the claims of the members of the Settlement Class as to all injunctive and other equitable or non-monetary claims or remedies asserted or that could have been asserted in the action, including any claim for divestiture. Settlement Agmt. (Ex. 1) ¶¶ 1.33, 3.3, 3.6. Schwab also has agreed to pay each of the three Plaintiffs $50 in return for releasing their individual damages claims. *Id.* ¶ 2.1. The Settlement does not release any right of absent class members to bring damages claims, either individually or on behalf of a class.

### E.    Attorney's Fees, Costs, and Expenses and Representative Plaintiff Service Awards

As more fully stated in Plaintiffs' Motion for an Award of Attorney's Fees, Litigation Expenses, and Service Awards, counsel for Plaintiffs ("Plaintiffs' Counsel") request the Court issue an award of attorney's fees and litigation costs and expenses to be paid by Schwab. Settlement Agmt. (Ex. 1) ¶ 7.1. The parties did not discuss the amounts of attorney's fees, costs,

and expenses Plaintiffs' Counsel would seek prior to agreeing on relief for the Settlement Class.
Instead, they mediated the issue before Judge Atlas on January 24, 2025 and reached an agreement
that Plaintiffs' Counsel would seek an award of attorney's fees not exceeding $8,250,000 and
reimbursement of litigation expenses not exceeding $700,000. The notice given to the class and
the settlement website reflects this agreement.

Plaintiffs' Counsel also request the Court award service awards of $5,000 for each Plaintiff
for service undertaken on behalf of the Settlement Class in connection with the litigation of this
action. Bathaee Decl. ¶ 19.

### F.     Notice to the Class

Notice has been provided to the Settlement Class in compliance with Rule 23, due process,
and the Court's Preliminary Approval Order, Dkt. No. 157. Northeim Decl. ¶¶ 8-39.

## ARGUMENT

A class action "may be settled, voluntarily dismissed, or compromised only with the court's
approval." Fed. R. Civ. P. 23(e). Where the parties have reached a proposed settlement, and the
court has directed notice after preliminary approval of the settlement, "the court may approve [the
settlement] only after a hearing and only on finding that it is fair, reasonable, and adequate[.]" Fed.
R. Civ. P. 23(e)(2). Prior to determining whether a settlement is "fair, reasonable, and adequate,"
the court must certify the class, appoint class counsel, and conclude that the notice requirements
have been satisfied. *See Stott v. Cap. Fin. Servs., Inc.*, 277 F.R.D. 316, 342 (N.D. Tex. 2011). As
stated herein, these prerequisites have been fulfilled and the Settlement should be approved.

## I.     PLAINTIFFS HAVE ARTICLE III STANDING

For a court to approve a proposed class action settlement, at least one named plaintiff must
have Article III standing. *See Frank v. Gaos*, 586 U.S. 485, 492 (2019). As current Schwab
brokerage customers, Corrente Decl. ¶ 5; Shaw Decl. ¶ 5; Williams Decl. ¶ 5, all three Plaintiffs

have Article III standing to seek the injunctive relief provided for in the Settlement. They allege an "imminent" (in fact, ongoing) injury—underpayment for their order flow, in the form of reduced price improvement on their trades, *see, e.g.*, Compl. ¶¶ 3, 35, 448-59.[1] *See Perez v. McCreary, Veselka, Bragg & Allen, P.C.*, 45 F.4th 816, 827 (5th Cir. 2022) (where injunctive relief is sought, plaintiff may show standing based on "a material risk of future harm . . . , at least so long as the risk of harm is sufficiently imminent and substantial" (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 435 (2021)). And Plaintiffs' threatened injury (and that of other members of the Settlement Class) would be redressed by the injunctive relief provided for in the Settlement. *See TransUnion*, 594 U.S. at 423 (standing requires "that the injury would likely be redressed by judicial relief"). As discussed, the antitrust compliance program to be implemented by Schwab should target the very areas of Schwab's business where Plaintiffs allege the competitive forces affecting price improvement have been suppressed by the Merger. *See supra* Background Part I; *see, e.g.*, *Kostka v. Dickey's Barbecue Restaurants, Inc.*, 2022 WL 16821685, at *5 (N.D. Tex. Oct. 14, 2022), *report and recommendation adopted*, 2022 WL 16821665 (N.D. Tex. Nov. 8, 2022) (finding redressability at preliminary approval stage where plaintiffs alleged their injuries "may be redressed by . . . potential equitable relief to prevent future harm").

## II.    THE CLASS SHOULD BE CERTIFIED

In considering whether to certify a settlement class, a court must consider whether the requirements of Rule 23 have been satisfied. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). All Rule 23(a) factors and at least one subsection of Rule 23(b) must be satisfied, except that a court need not consider the manageability of a potential trial, since the settlement, if

---

[1] Because the parties are settling at the class-certification stage, the Court need only consider whether the named plaintiffs have alleged Article III standing on behalf of the absent class members. *In re Deepwater Horizon*, 739 F.3d 790, 799-804 (5th Cir. 2014).

approved, would obviate the need for one. *Id.* Plaintiffs here seek to certify an injunctive-relief class under Rule 23(b)(2). In addition, an "implied prerequisite" of Rule 23 is that the proposed class be "ascertainable." *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007). Each of these elements is satisfied such that the Court may be certified for final approval. Fed. R. Civ. P. 23(e)(1)(B).

### A.     The Settlement Class Is Ascertainable

To satisfy the ascertainability requirement, the class must be "adequately defined and clearly ascertainable." *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970). Here, the class is defined (with narrow exceptions) to include: persons, entities, and corporations who are current U.S. brokerage customers of Schwab or any of its affiliates, including customers who previously held accounts at TD Ameritrade. Whether someone is in the class is objectively determinable by reference to their status as a current brokerage customer of Schwab or its affiliated entities. And as current customers, these class members are identifiable through Schwab's customer records and reachable by email, mail, or whatever other means Schwab uses to contact its customers. This is not the sort of "amorphous" or "imprecise" class definition that might defeat ascertainability. *See Braidwood Mgmt., Inc. v. Equal Emp. Opportunity Comm'n*, 70 F.4th 914, 933 n.36 (5th Cir. 2023). The ascertainability requirement is satisfied.

### B.     The Rule 23(a) Requirements Are Met

The Rule 23(a) factors are: numerosity, commonality, typicality, and adequacy of representation. *Braidwood Mgmt.*, 70 F.4th at 933. Each is met here.

#### 1.     Numerosity

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." Schwab's records establish that the Settlement Class consists of approximately 25 million members. This is far more than sufficient to satisfy the numerosity requirement. *See Mullen*

*v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999) (holding that a class of 100 to 150 members "is within the range that generally satisfies the numerosity requirement").

### 2.    Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Commonality is satisfied where the putative class members' claims "depend upon a common contention" that "must be of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Yates v. Collier*, 868 F.3d 354, 361 (5th Cir. 2017) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). "[E]ven a single common question will do." *Id.* at 365 n.6 (quoting *Wal-Mart*, 564 U.S. at 359).

There are several questions of law and fact that are capable of classwide resolution here, including: (1) whether the U.S. Retail Order Flow Market is a relevant antitrust market; (2) whether the effect of the Merger "may be substantially to lessen competition" in the ROFM, per Section 7 of the Clayton Act, 15 U.S.C. § 18; and (3) whether there is "threatened" loss or damage from the Merger entitling Plaintiffs and the class members to injunctive relief under Section 16 of the Clayton Act, 15 U.S.C. § 26. The commonality requirement is satisfied.

### 3.    Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Typicality "focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent. . . . If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality." *Angell v. GEICO Advantage Ins. Co.*, 67 F.4th 727, 736 (5th Cir. 2023) (citations omitted).

Plaintiffs' claims and those of the other members of the Settlement Class all arise from the same course of conduct and are based on the same alleged legal theory—that the Merger will substantially lessen competition in the ROFM (as it already has done), resulting in reduced price improvement on future trades for all or most Schwab brokerage customers. Typicality is satisfied.

### 4. Adequacy of Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Adequacy involves the following factors: "(1) the zeal and competence of the representatives' counsel; (2) the willingness and ability of the representatives to take an active role in and control the litigation and to protect the interests of absentees; and (3) the risk of conflicts of interest between the named plaintiffs and the class they seek to represent." *Angell*, 67 F.4th at 737 (cleaned up).

Plaintiffs have demonstrated that they are well suited to represent the Settlement Class. They have taken an active role in this litigation since before the filing of the Complaint, including by cooperating in discovery and approving the terms of the Settlement. Corrente Decl. ¶ 10; Shaw Decl. ¶ 10; Williams Decl. ¶ 10. There are no conflicts of interest between Plaintiffs and the Settlement Class. As current Schwab brokerage customers, Plaintiffs have the same interest as the rest of the class in establishing Schwab's liability and will benefit from the proposed injunctive relief in the same way as other class members. And while Plaintiffs will each receive $50 from Schwab in return for releasing their individual damages claims, any damages claims of absent class members are not being released under the Settlement, so there is no concern that Plaintiffs have sacrificed the rights of absent class members for their own benefit. Finally, Plaintiffs' Counsel are well qualified to represent the Settlement Class, as they each possess significant experience prosecuting complex class actions, including antitrust class actions. *See* Bathaee Decl. ¶¶ 24-34.

11

### C.     The Rule 23(b)(2) Requirements Are Met

Plaintiffs seek certification of an injunctive-relief class under Rule 23(b)(2), which applies when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Certification under Rule 23(b)(2) is available if three requirements are met: "(1) class members must have been harmed in essentially the same way; (2) injunctive relief must predominate over monetary damage claims; and (3) the injunctive relief sought must be specific. The specificity element requires plaintiffs to give content to the injunctive relief they seek so that final injunctive relief may be crafted to describe in reasonable detail the acts required." *Yates*, 868 F.3d at 366-67 (cleaned up).

These elements are met here. First, Plaintiffs allege that as a result of the Merger, all members of the Settlement Class will be harmed in "essentially the same way," by underpayment for their retail order flow, in the form of reduced price improvement on trades through their Schwab brokerage accounts. Second, injunctive relief more than "predominates"—it is the only relief sought. Finally, the injunctive relief sought is specific. The Settlement not only requires the engagement of a consultant (whom the parties have already selected) to design an antitrust compliance program to be implemented by Schwab, but it also directs the consultant to examine specific areas of Schwab's business where Plaintiffs allege competitive forces have been diminished due to the Merger and where Plaintiffs allege remedial measures are most likely to benefit class members. *See supra* Background Part II.B. This provides more than enough detail as to the "acts required" under the requested injunctive relief to support certification under Rule 23(b)(2). *See Yates*, 868 F.3d at 368.

*     *     *

12

The Settlement Class is ascertainable and the Rule 23(a) and Rule 23(b)(2) factors are satisfied such that the Settlement Class should be certified.

## III.    APPOINTMENT OF CLASS COUNSEL IS PROPER

Rule 23 requires that a court certifying a class appoint class counsel. *See* Fed. R. Civ. P. 23(g)(1); *see also Stott*, 277 F.R.D. at 342. In appointing class counsel, the court must consider:

(i)   the work counsel has done in identifying or investigating potential claims in the action;

(ii)  counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

(iii) counsel's knowledge of the applicable law; and

(iv) the resources that counsel will commit to representing the class[.]

Fed. R. Civ. P. 23(g)(1)(A). The court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class[.]" Fed. R. Civ. P. 23(g)(1)(B).

Plaintiffs' Counsel have significant experience in litigating and settling class actions and, specifically, complex antitrust class actions. *See* Bathaee Decl. ¶¶ 24-34. Over the last three years, Plaintiffs' Counsel have demonstrated their knowledge of the applicable law, committed substantial resources, conscientiously and vigorously litigated the claims, and skillfully steered the claims against Schwab to a resolution that benefits all Settlement Class Members. Plaintiffs' Counsel devoted extensive time to researching the factual and legal support for Plaintiffs' 103-page class action complaint, worked tirelessly to defeat Schwab's motion to dismiss, assiduously pushed discovery, and fervently negotiated on behalf of the Settlement Class Members. *See* Bathaee Decl. ¶¶ 5-11.

The Court should appoint Yavar Bathaee of Bathaee Dunne LLP and Christopher M. Burke of Burke LLP as co-lead class counsel pursuant to Rule 23(g)(1).

## IV.    THE CLASS RECEIVED REASONABLE NOTICE

Rule 23 requires that a court approving a class action settlement first "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). "There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements." *ODonnell v. Harris Cnty., Texas*, 2019 WL 4224040, at *26 (S.D. Tex. Sept. 5, 2019) (quoting *Wal-Mart*, 396 F.3d at 114). Instead, "a settlement notice need only satisfy the broad reasonableness standards imposed by due process." *In re Katrina Canal Breaches Litig.*, 628 F.3d 185, 197 (5th Cir. 2010) (internal quotation marks omitted). In a mandatory class action, such as one under Rule 23(b)(2),[2] due process requires that "class members be given information reasonably necessary for them to make a decision whether to object to the settlement." *Katrina Canal Breaches*, 628 F.3d at 197; *see also Stott*, 277 F.R.D. at 342 (concluding that notice was sufficient when it "clearly provided the nature of the action, the definition of the Settlement Class, the terms of the settlement, the class members' options, including the fact that they could not exclude themselves, the claims, defenses, and issues, and the procedures surrounding the settlement" and "[c]lass members were further provided with the date of the fairness hearing and were given the opportunity to object to the settlement").[3] Further, "[i]n the case of Rule 23(b)(2) class settlement, individualized notice is not required, but may be ordered

---

[2] *See Johnson v. Kansas City S. Ry. Co.*, 208 F. App'x 292, 296 (5th Cir. 2006) ("There are essentially two separate types of class action suits, mandatory non-opt-out classes under 23(b)(1) or 23(b)(2) and discretionary opt-out classes under 23(b)(3)."); *accord Wal-Mart*, 564 U.S. at 362.

[3] *See also ODonnell*, 2019 WL 4224040, at *26 ("The purpose of a notice of a proposed class settlement is to set forth the major contours of the proposal and to inform class members of their right to attend the fairness hearing and to lodge written objections by a prescribed date should they so desire." (quoting AMERICAN LAW INSTITUTE, PRINCIPLES OF THE LAW OF AGGREGATE LITIGATION § 3.04(a) (2010))).

by the court" in its discretion. *Nelson v. Constant*, 2020 WL 5258454, at *9 (E.D. La. Sept. 3, 2020); *accord* 3 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS § 8:15 (6th ed. 2024).[4]

The notice plan implemented satisfied Rule 23(e)(1)(B). Ankura Consulting Group LLC ("Ankura") developed the notice program based on its over 15 years of experience in designing notice and claims administration programs for class actions and mass torts. The notice program provided individual direct notice to all reasonably identifiable members of the Settlement Class via email or postcard notice, along with a dedicated website, class helpline, and helpdesk support where Settlement Class Members could learn more about their legal rights, the notices, and implications of the litigation, among other topics. Northeim Decl. ¶¶ 8-28. The costs of notice were paid by Schwab. Settlement Agmt. (Ex. 1) ¶ 6.7.

For direct notice, Ankura, under the supervision of Plaintiffs' Counsel, obtained basic contact information from Schwab for class members. Ankura then sent direct notices to all potential class members for which contact information was available. As of July 15, 2025, the direct notice campaign successfully sent 18,333,070 notices via email and 5,832,294 notices through mail, reaching 24,165,364 class members, or 97.0% of the class.[5] The final batch of postcards were sent on July 16 and, once delivered, will increase the reach to 99.5% of the class. Northeim Decl. ¶ 36.

---

[4] In addition, the Class Action Fairness Act (CAFA) "requires that defendants provide notice of a proposed class action settlement to the appropriate state and federal officials no later than 10 days after the proposed settlement is filed in court." *Nelson v. Constant*, 2020 WL 7480627, at *7 (E.D. La. Dec. 18, 2020) (citing 28 U.S.C. § 1715(b)). Under the Settlement, Schwab has agreed to serve the notice required under CAFA. Settlement Agmt. (Ex. 1) ¶ 6.8.

[5] Ankura considers postcard mailings to be "successful" unless they are returned as undeliverable in the mail. Ankura will continue to monitor for any returned mailings designated as undeliverable and attempt to remail where possible. Northeim Decl. ¶ 36, n.2.

Ankura employed methods to maximize the number of Settlement Class Members who received notice via email or postcard notices. For example, prior to distributing email notice, Ankura engaged in an email cleansing and validation process to help ensure the quality of recipient email addresses. Northeim Decl. ¶ 9. Before mailing physical postcard notices, Ankura processed the addresses through the U.S. Postal Service's National Change of Address (NCOA) program and the Coding Accuracy Support System (CASS) certification to minimize undeliverable mail. *Id.* ¶ 25. Ankura endeavored to disseminate the direct notices within 21 days after the Court approved the notice plan. To aid class members, Ankura set up and maintained a settlement website that provided an overview of the litigation, issued notices, frequently asked questions, associated program documents, and any relevant contact information.[6] Ankura also set up a class helpline and a helpdesk to aid class members with any questions. Northeim Decl. ¶¶ 30-34.

Notice was provided in plain terms and easy-to-understand language. Direct email and postcard notices were in a short-form version (Summary Notice) of the long-form notice, which was accessible on the settlement website. All forms of notice included information about the nature of the action, the definition of the Settlement Class, the settlement itself, the rights of Settlement Class Members under the Settlement (including their right to object), and the date and location of the Fairness Hearing.

Plaintiffs' notice plan provided the "reasonable" notice required by Rule 23(e)(1)(B).

## V.  THE SETTLEMENT MERITS FINAL APPROVAL

To be approved, a proposed settlement must be "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Under Rule 23(e)(2), courts making this determination look to whether:

---

[6] *See* Official Schwab Corrente Settlement Website, https://www.schwabcorrentesettlement.com (last visited July 17, 2025).

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

> (i) the costs, risks, and delay of trial and appeal;

> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

> (iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). In evaluating a proposed settlement, courts should consider the "overriding public interest in favor of settlement" in class action suits. *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977).

Before the amendment of Rule 23(e)(2) in 2018, the Fifth Circuit had set forth a six-factor test (the "*Reed* Test") to determine the appropriateness of a proposed settlement: "(1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members." *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983); *accord Jones v. Singing River Health Servs. Found.*, 865 F.3d 285, 293 (5th Cir. 2017). The 2018 amendment of Rule 23(e)(2) does not displace the largely overlapping *Reed* Test; rather, the *Reed* factors inform courts' application of the Rule 23(e)(2) requirements. *See Celeste v. Intrusion Inc.*, 2022 WL 17736350, at *3 n.3 (E.D. Tex. Dec.

16, 2022) (citing Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment); *C.C. & L.C. v. Baylor Scott & White Health*, 2022 WL 4477316, at *2 (E.D. Tex. Sept. 26, 2022).

The Settlement meets the Rule 23(e)(2) requirements and should be approved.

### A.    Plaintiffs and Counsel Have Adequately Represented the Class

As discussed above with respect to Rule 23(a)(4), Plaintiffs and Plaintiffs' Counsel have adequately represented the Settlement Class, *see* Fed. R. Civ. P. 23(e)(2)(A). *See supra* Argument Part II.B.4. Plaintiffs have been actively involved in the litigation and in approving the terms of the Settlement and their interests are aligned with those of the absent class members. Plaintiffs' Counsel have extensive experience in complex class actions, including antitrust class actions, have zealously prosecuted the class's claims, and have negotiated for injunctive relief that will meaningfully benefit class members. This factor favors approval of the Settlement.

### B.    The Settlement Was Negotiated at Arm's Length

The Settlement was negotiated at arm's length under the auspices of an experienced and esteemed mediator, the Hon. Nancy F. Atlas (Ret.), satisfying both Rule 23(e)(2)(B) and the first *Reed* factor (concerning the existence of fraud or collusion behind the settlement). "The involvement of an experienced and well-known mediator is . . . a strong indicator of procedural fairness." *Jones*, 865 F.3d at 295 (internal quotation marks omitted). In her attached declaration, Judge Atlas affirms that the negotiations were conducted at arm's length. Atlas Decl. ¶¶ 6-9; *see, e.g.*, *Jones*, 865 F.3d at 295 (crediting mediator's affidavit affirming that "[a]t all times, the participating parties' negotiations were civil, professional, but hard fought" and "[t]he negotiations were conducted at arm's length without collusion"). A court may "presume that no fraud or collusion occurred between opposing counsel in the absence of any evidence to the contrary[,]" *Welsh v. Navy Fed. Credit Union*, 2018 WL 7283639, at *12 (W.D. Tex. Aug. 20, 2018) (citing

*Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 651 (N.D. Tex. 2010)), and such a presumption is warranted here. This factor favors approval.

### C.    The Relief Provided for the Class Is Adequate

The Settlement provides injunctive relief aimed at mitigating the risk of future anticompetitive conduct. It reflects a behavioral remedy tailored to Schwab's post-merger activities, particularly following its acquisition of TD Ameritrade, and functions as a mechanism to enforce antitrust guardrails that safeguard market competition.

As part of this relief, an Antitrust Compliance Program will be designed by an independent consultant to target operational behaviors most likely to impact competition and execution quality. The Consultant is authorized to review Schwab's policies, practices, and procedures governing communications with market makers and broker-dealers, thereby enhancing visibility into how interfirm relationships may influence trade routing. The Consultant may also assess Schwab's order routing and execution systems, including allocation methods and price improvement performance for retail clients. Oversight will extend to Schwab's governance architecture, including its routing committees and key decisionmakers, with particular attention to potential coordination with other market participants. Additionally, the Consultant will evaluate Schwab's post-merger public disclosures and communications to retail clients regarding execution quality.

Collectively, these provisions ensure that the Antitrust Compliance Program will deliver structured insight into the systems and decision-making processes that shape competitive dynamics and retail trading outcomes. Settlement Class Members are expected to benefit from more favorable pricing over time. Plaintiffs' antitrust economics expert, applying merger guidelines to Schwab's conduct, estimates substantial forward-looking value from the compliance framework. Previously lacking such a policy, Schwab's adoption of a structured antitrust program represents a significant regulatory advancement for both the firm and its customers. As noted in the expert

19

declaration submitted with this motion: "The Compliance Program serves as a meaningful deterrent against pricing manipulation or degradation" and "incentivizes Schwab to uphold rigorous standards in its routing and pricing protocols, particularly in a post-merger landscape where its market share affords outsized influence." Singer & Tatos Decl. ¶ 81.

Using two statistical methodologies, Plaintiffs' expert estimates that implementation of the compliance program could yield price improvement gains of approximately 1.8% to 2.4%, translating to $10.7 million to $14.5 million in monthly savings—or roughly $128.4 million to $174 million annually—for Schwab's retail customers. Singer & Tatos Decl. ¶¶ 84-85.

Rule 23(e)(2)(C) asks whether the proposed relief is adequate, taking into account: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Considering these factors, the antitrust compliance program provided for in the Settlement—which would focus on the areas of Schwab's business that Plaintiffs allege were affected by the Merger—provides exceptional value to the Settlement Class. Indeed, the mediator, Judge Atlas, has expressed her view that "the settlement provides meaningful relief to the members of the settlement class." Atlas Decl. ¶ 10.

The Settlement also preserves the ability of absent class members to bring damages claims if they so choose (including on behalf of a class). "[T]he relief provided to the class cannot be assessed in a vacuum. Rather, the settlement's benefits must be considered by comparison to what the class actually gave up by settling." *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1123 (9th Cir. 2020). As in *Campbell*, a leading case on injunctive-relief-only class settlements, the Settlement Class "gave up very little" to obtain the injunctive relief provided for in the Settlement, which

weighs heavily in favor of a finding that the relief is adequate. *See id.* ("Here, the class did not need to receive much for the settlement to be fair because the class gave up very little."); *see also id.* at 1124 (noting that "the settlement here expressly excludes any release of absent class members' claims for damages").

### 1.    The costs, risks, and delay of trial and appeal

The first Rule 23(e)(2)(C) consideration—"the costs, risks, and delay of trial and appeal"— implicates four of the *Reed* factors: "(2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; [and] (5) the range of possible recovery." *Kostka*, 2022 WL 16821685, at *11 (quoting *Reed*, 703 F.2d at 172). Examining these factors supports a finding that the injunctive relief is adequate.

***Complexity, expense, and likely duration of litigation.*** This litigation involves complex legal and factual issues and—in the absence of a settlement—is virtually certain to continue for years, at significant expense to both sides. To establish a claim under Section 7 of the Clayton Act, Plaintiffs will have to show that the effect of the Merger "may be substantially to lessen competition." 15 U.S.C. § 18. This requires defining a relevant market (here, the ROFM), "establish[ing] a prima facie case that the merger is likely to substantially lessen competition in the relevant market," and, if Schwab were to rebut that prima facie case, "producing additional evidence of anticompetitive effects." *Illumina, Inc. v. Fed. Trade Comm'n*, 88 F.4th 1036, 1047–48 (5th Cir. 2023). To obtain injunctive relief, Plaintiffs would also need to show "a threat of antitrust injury." *Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104, 122 (1986). And Plaintiffs would need to establish the requirements for proceeding on a classwide basis under Rule 23. While Plaintiffs are confident they would prevail, many of these issues would be vigorously contested by Schwab. *Cf. In re N.J. Tax Sales Certificates Antitrust Litig.*, 750 F. App'x 73, 79 (3d Cir. 2018)

(affirming district court finding that antitrust case was "complex" to prosecute "in light of the elements Plaintiffs must demonstrate to establish their claim under § 1 of the Sherman Act"). Moreover, this action involves "complex factual questions involving the . . . securities industry, which would likely require expert testimony, complex models, and analysis of financial data." *Athale v. Sinotech Energy Ltd.*, 2013 WL 11310686, at *4 (S.D.N.Y. Sept. 4, 2013); *see also Utah Ret. Sys. v. Healthcare Servs. Grp., Inc.*, 2022 WL 118104, at *8 (E.D. Pa. Jan. 12, 2022) ("Lead Plaintiff's theory of liability, and the defenses proffered by Defendants, require sophisticated analysis of complex financial data and accounting rules before the case could proceed to trial.").

Finally, though this litigation has been pending for approximately three years, it has yet to reach the class-certification stage and would likely go on for years absent a settlement. Given the hard-fought nature of this case to date, "[a]dditional litigation would likely include: (1) contested class certification proceedings; (2) an appeal under Federal Rule of Civil Procedure 23(f); (3) dispositive motions; (4) expert depositions leading to *Daubert* challenges; (5) extensive pretrial filings; (6) a lengthy trial; (7) post-trial proceedings in this District Court; and (8) further appeals." *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 291-92 (W.D. Tex. 2007); *see also Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009) (same, antitrust action).

**Stage of the proceedings and amount of discovery completed.** Courts consider the stage of the proceedings and the amount of discovery completed to determine "whether the parties have sufficient information to evaluate the terms of the settlement." *DeHoyos*, 240 F.R.D. at 292; *see also Cotton*, 559 F.2d at 1332-33. Here, the parties have engaged in an extensive discovery process, with Plaintiffs having deposed several of Schwab's executives most knowledgeable about PFOF and Schwab having produced nearly one million pages of documents and 6.5 terabytes of financial data comprising approximately 6.4 billion individual trades placed by Schwab and TD Ameritrade

customers from 2019 through 2023. Plaintiffs have retained a renowned finance professor who has more than 30 years of academic experience researching, writing, and speaking in the area of securities trading, the structure of the securities market, securities trading by retail customers, and payment for order flow. Plaintiffs' expert conducted an extensive study of market microstructure relevant to this case, including how the structure, design, and operation of the relevant market affect price formation and transaction costs of investors. Plaintiffs have also retained expert economists who have engaged in both qualitative and quantitative analysis of this information to determine the Merger's effect on competition in the asserted ROFM. Having analyzed this discovery in consultation with their experts, Plaintiffs are sufficiently informed to assess the parties' positions and determine that the Settlement is in the best interests of the putative class. *Cf. DeHoyos*, 240 F.R.D. at 292 (finding this factor satisfied where defendant produced "tens of thousands of documents" and "voluminous electronic data" and plaintiffs' experts conducted statistical data analysis).

**Probability of Plaintiffs' success on the merits.** Absent fraud or collusion, "the most important factor in determining the fairness, adequacy, and reasonableness of the settlement is the likelihood of plaintiffs' success on the merits if the case were to proceed to trial." *DeHoyos*, 240 F.R.D. at 287 (citations omitted). Plaintiffs are confident they would ultimately prevail at trial but also recognize the substantial risks of proceeding with litigation, particularly given that many of "the key legal issues in the case ha[ve] not been adjudicated." *C.C. & L.C.*, 2022 WL 4477316, at *3. Schwab has stated that it is equally confident in its defense of this case. As noted above, Plaintiffs face substantial legal and factual hurdles in establishing a claim under Section 7 of the Clayton Act and an entitlement to classwide relief. Schwab can be expected to push back at every turn, likely opposing class certification, seeking to exclude Plaintiffs' experts, and moving for

summary judgment. *Cf. In re N.J. Tax Sales Certificates Antitrust Litig.*, 750 F. App'x at 81 (evaluating plaintiffs' probability of success in light of "[d]efendants' intent to oppose class certification and move for summary judgment, and the complexities inherent in prosecuting a case that sounds in antitrust and that involves a settlement class of thousands"); *see also Rodriguez*, 563 F.3d at 964 (noting "the difficulty of proving an antitrust case," particularly where there are "no government coattails for the class to ride").

Against the nonnegligible risk that Plaintiffs might not prevail at trial, the Settlement secures meaningful relief that can be expected to provide concrete benefits to the Settlement Class. Given the risks inherent in proceeding with the litigation, this factor weighs in favor of approving the Settlement.

***Range of possible recovery.*** In considering the range of possible recovery, the question is "whether the settlement's terms fall within *a reasonable range of recovery*, given the likelihood of the plaintiffs' success on the merits." *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 424 F. Supp. 3d 456, 489 (E.D. La. 2020). Because the Settlement would bind only an injunctive-relief class under Rule 23(b)(2) and does not release damages claims, the relevant inquiry is the range of possible recovery were this case to proceed to trial as a Rule 23(b)(2) class action. In that scenario, the lowest end of the range would be no recovery at all. The high end would be divestiture of TD Ameritrade from Schwab or segregation of the legacy Schwab and TD Ameritrade lines of business within the merged entity, to protect against future injury due to the Merger. *See* Compl. ¶ 487; *Chicago Bridge & Iron Co. N.V. v. F.T.C.*, 534 F.3d 410, 440-42 (5th Cir. 2008) (approving divestiture remedy in Clayton Act § 7 suit).

While not as drastic a remedy as divestiture or segregation, the antitrust compliance program provided for in the Settlement will ensure Schwab's order-routing practices (among

24

others) promote competitive price improvement for members of the Settlement Class and future Schwab brokerage customers. Indeed, the Department of Justice has observed that "Antitrust compliance programs promote vigorous competition in a free market economy by creating a culture of good corporate citizenship."[7] As noted above, Plaintiffs' experts estimate that the Antitrust Compliance Program could generate increased price improvements for Settlement Class Members valued between $10.7 million and $14.5 million per month—equating to approximately $128.4 million to $174 million annually. Singer & Tatos Decl. ¶¶ 84-85. Given the risks inherent in proceeding with the litigation, this is doubtlessly within "a reasonable range of recovery" for the class.

### 2.    Proposed method of distributing relief to the class

The second Rule 23(e)(2)(C) consideration—"the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims"—does not apply here, since only injunctive relief is proposed and such relief will not need to be distributed to individual class members. *Cf. Nelson*, 2020 WL 5258454, at *8 (applying this factor to refunds distributed to class members but not to injunctive relief); *see also* Fed. R. Civ. P. 23(b)(2) (Rule 23(b)(2) class action requires that injunctive relief be appropriate respecting the class "as a whole").

### 3.    Proposed award of attorney's fees

The third Rule 23(e)(2)(C) consideration—"the terms of any proposed award of attorney's fees, including timing of payment"—supports a finding that the proposed injunctive relief is

---

[7] U.S. Department of Justice Antitrust Division Evaluation of Corporate Compliance Programs in Criminal Antitrust Investigations, available at https://www.justice.gov/d9/2024-11/DOJ%20Antitrust%20Division%20ECCP%20-%20November%202024%20Updates%20-%20FINAL.pdf (November 2024).

adequate. Provided the amount is reasonable, "[a]n agreed upon award of attorneys' fees and expenses is proper in a class action settlement." *DeHoyos*, 240 F.R.D. at 322 (citing Fed. R. Civ. P. 23(h) and collecting cases). Indeed, the Fifth Circuit has encouraged counsel in class actions to resolve fee issues by agreement. *See Johnson v. Ga. Highway Exp., Inc.*, 488 F.2d 714, 720 (5th Cir. 1974). By the same token, courts evaluating a proposed settlement must consider the terms of a proposed fee award, as "an inordinate fee may be the sign that counsel sold out the class's claims at a low value in return for the high fee." 4 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS § 13:54 (6th ed. 2024). That concern is not present here.

The parties did not discuss the amount of attorney's fees Plaintiffs' Counsel would seek in their fee petition until after the substantive provisions of the Settlement, including the proposed injunctive relief, were agreed on. Bathaee Decl. ¶ 19. Instead, the parties mediated the maximum amounts of attorney's fees, costs, and expenses to be sought before the court-appointed mediator (Judge Atlas) over a month after execution of the Settlement Agreement. Plaintiffs' Counsel agreed to cap their attorney's fee application at $8,250,000 and expense reimbursement application at $700,000, and Schwab agreed not to object to these applications. *See DeHoyos*, 240 F.R.D. at 323 (noting with approval that "attorneys' fees were not negotiated or discussed until after the agreement was reached between the parties on all other terms of the settlement," and citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998)). In addition, these amounts were disclosed in the notice of settlement, providing class members notice and the opportunity to object prior to final approval. *See Kostka*, 2022 WL 16821685, at *12 (noting that "the Objecting Plaintiffs, and any other concerned class member, may object to the award of attorneys' fees after the application has been filed").

Moreover, regardless of the fee cap negotiated by the parties, the Court has the final say as to the appropriate award based on the lodestar method, as is required where attorney's fees are sought under a federal fee-shifting statute such as Section 16 of the Clayton Act, 15 U.S.C. § 26. *See Combs v. City of Huntington, Tex.*, 829 F.3d 388, 391-95 (5th Cir. 2016) (describing two-step lodestar method applicable in statutory fee-shifting cases); *Nelson*, 2020 WL 5258454, at *8 n.3 (noting that counsel's request for attorney's fees "will be at the discretion of the court"). Here, Plaintiffs' Counsel will seek an amount not to exceed their lodestar and will forgo any multiplier or supplemental fee request. And because there is no damages award (and no corresponding release of damages claims), there is no settlement fund that might be drawn down by an attorney's fee award. Accordingly, any fee award "will not affect [class members'] recovery." *Nelson*, 2020 WL 5258454, at *8 n.3.

### 4.    Agreements required to be identified under Rule 23(e)(3)

There are no agreements between the parties beyond the terms set forth in the Settlement Agreement. Accordingly, this consideration under Rule 23(e)(2)(C)(iv) is not applicable here. *See Kostka*, 2022 WL 16821685, at *13.

*        *        *

Taking into account the Rule 23(e)(2)(C) considerations and applicable *Reed* factors, the injunctive relief provided for in the Settlement—which, as discussed above, is designed to provide meaningful benefits to class members and future Schwab brokerage customers—is clearly adequate. This supports approval.

### D.    The Settlement Treats Class Members Equitably Relative to Each Other

Rule 23(e)(2)(D) asks whether the proposed settlement "treats class members equitably relative to each other." The Settlement satisfies this factor. The antitrust compliance program to be implemented under the Settlement will redound to the benefit of all class members. Any

measures related to price improvement or trading transparency will be shared broadly by Schwab brokerage customers. *See, e.g.*, *ODonnell*, 2019 WL 4224040, at *13 (noting in injunctive-relief settlement that "[a]ll class members are entitled to the same relief").

The only potential differential in recovery among class members is that Schwab has agreed that it will not object to Plaintiffs' motion to receive a service award of up to $5,000 each, subject to court approval. Service awards (also called "incentive awards") are entirely consistent with Rule 23(e)(2)(D)'s equitable-treatment mandate because "the named plaintiffs invest in the case more heavily than their unnamed counterparts." *Scott v. Dart*, 99 F.4th 1076, 1086 (7th Cir. 2024). The Plaintiffs here have certainly done so, having spent considerable time and effort on such tasks as assisting in counsel's initial investigation of the theory of the case, reviewing the Complaint, keeping abreast of case developments, collecting voluminous electronic documents and years of account statements for production, responding to two rounds of interrogatories, and consulting on and reviewing the terms of the Settlement. Corrente Decl. ¶¶ 9-13; Shaw Decl. ¶¶ 9-13; Williams Decl. ¶¶ 9-13. Moreover, the $5,000 maximum provided for in the Settlement is in line with what courts in the Fifth Circuit typically award. *See Duncan v. JPMorgan Chase Bank, N.A.*, 2016 WL 4419472, at *16 (W.D. Tex. May 24, 2016), *report and recommendation adopted*, 2016 WL 4411551 (W.D. Tex. June 17, 2016) ("District courts in the Fifth Circuit routinely award $5,000-$10,000 per named plaintiff."); *see, e.g.*, *DeHoyos*, 240 F.R.D. at 339-40 (approving incentive award of $5,000 to each named plaintiff in Rule 23(b)(2) class action). This factor supports approval.

### E. The Opinions of Class Counsel, the Class Representatives, and Absent Class Members Weigh in Favor of Approval

The final *Reed* factor—"the opinions of the class counsel, class representatives, and absent class members," 703 F.2d at 172—also supports approval. In determining whether to approve a

28

settlement, "[t]he trial court is entitled to rely upon the judgment of experienced counsel for the parties." *Jones*, 865 F.3d at 300 (quoting *Cotton*, 559 F.2d at 1330); *see also id.* ("[I]f experienced counsel reached this settlement, the court may trust that the terms are reasonable in ways that it might not had the settlement been reached by lawyers with less experience in class action litigation." (citation omitted)). Indeed, absent fraud or collusion, the trial court "should be hesitant to substitute its own judgment for that of counsel." *Cotton*, 559 F.2d at 1330; *see also Marcus v. J.C. Penney Co., Inc.*, 2017 WL 6590976, at *4 (E.D. Tex. Dec. 18, 2017), *report and recommendation adopted*, 2018 WL 307024 (E.D. Tex. Jan. 4, 2018) ("Significant weight is given to the opinion of class counsel concerning whether the settlement is in the best interest of the class and the court is not to substitute its own judgment for that of counsel."). Plaintiffs' Counsel have many years of experience litigating class actions, and specifically antitrust class actions. *See* Bathaee Decl. ¶¶ 24-34. In this Action, counsel undertook a thorough investigation of the asserted claims and, after three years of rigorous litigation and settlement negotiations, developed a well-informed view of the strengths and risks involved. Based on that insight and their depth of experience in complex antitrust cases, Lead Counsel concluded that the Settlement is fair, reasonable, and adequate, and that it appropriately advances the interests of the Settlement Class.

In addition, Plaintiffs have reviewed the Settlement and consider it to be fair, reasonable, and adequate, and each of them endorses court approval of the Settlement. Corrente Decl. ¶¶ 12-13, 18; Shaw Decl. ¶¶ 12-13, 18; Williams Decl. ¶¶ 12-13, 18. This factor supports approval.

Finally, the overwhelmingly positive response of Settlement Class Members to date supports final approval of the Settlement. Pursuant to the Preliminary Approval Order, the Court-appointed Claims Administrator, Ankura, successfully distributed direct notice—via email and postcard—to more than 24 million absent Class Members. As of July 15, 2025, Ankura has

processed 26,324 total inquiries from Class Members, including 1,112 website submissions, 806 emails, and 24,406 phone calls. *See* Northeim Decl. ¶ 35. In addition, Class Counsel have fielded numerous phone calls and emails from Class Members seeking further information or clarification regarding the Action and the benefits of the Settlement. Bathaee Decl. ¶ 18. The vast majority of these inquiries were resolved satisfactorily. To date, only approximately two dozen objections have been submitted to the Court, representing approximately 0.0001% of the Class. Although the deadline to file objections is set for July 29—twelve days after the date of this motion—a number of objections have already been submitted to the Court. This motion, which specifically addresses fairness and attorney's fees, rebuts many of these already-filed objections. Given the July 29 objection deadline, Plaintiffs will address and respond to specific objections lodged with the Court in their reply brief.

*    *    *

Because the Settlement meets the Rule 23(e)(2) requirements, the Settlement should be approved.

## CONCLUSION

The Settlement readily meets the standard for final approval. Plaintiffs therefore respectfully request that this Court enter the proposed order and judgment submitted herewith: (1) certifying the class for settlement purposes; (2) appointing Plaintiffs as class representatives; (3) appointing Yavar Bathaee of Bathaee Dunne LLP and Christopher M. Burke of Burke LLP as co-lead class counsel; (4) approving the Settlement; and (5) dismissing the above captioned action on the merits and with prejudice. Plaintiffs additionally request that the Court grant Plaintiffs' simultaneously filed Motion for an Award of Attorney's Fees, Litigation Expenses, and Service Awards.

Dated:  July 17, 2025

Respectfully submitted,

*/s/ Christopher M. Burke*
Christopher M. Burke (*pro hac vice*)
cburke@burke.law
**BURKE LLP**
402 West Broadway, Suite 1890
San Diego, CA 92101
Tel: (619) 369-8244

Chad E. Bell (*pro hac vice*)
cbell@koreintillery.com
**KOREIN TILLERY P.C.**
205 North Michigan Avenue, Suite 1950
Chicago, IL 60601
Tel: (312) 641-9750

*/s/ Yavar Bathaee*
Yavar Bathaee (NY 4703443)
yavar@bathaeedunne.com
Andrew Wolinsky (NY 4892196)
awolinsky@bathaeedunne.com
**BATHAEE DUNNE LLP**
445 Park Avenue, 9th Floor
New York, NY 10022
Tel: (332) 322-8835

Brian J. Dunne (CA 275689)
bdunne@bathaeedunne.com
Edward M. Grauman (TX 24081931)
egrauman@bathaeedunne.com
**BATHAEE DUNNE LLP**
901 South MoPac Expressway
Barton Oaks Plaza I, Suite 300
Austin, TX 78746
Tel: (213) 462-2772

Elizabeth L. DeRieux (TX 05770585)
ederieux@capshawlaw.com
S. Calvin Capshaw (TX 03783900)
ccapshaw@capshawlaw.com
**CAPSHAW DERIEUX LLP**
114 E. Commerce
Gladewater, TX 75647
Tel: (903) 236-9800
Fax: (903) 236-8787

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on July 17, 2025, the above document was served on counsel of record for all parties via the CM/ECF system.

*/s/ Yavar Bathaee*

## <u>CERTIFICATE OF CONFERENCE</u>

I certify that the meet and confer requirement in Local Rule CV-7(h) has been complied with and that the motion is unopposed by Defendant The Charles Schwab Corporation.

*/s/ Yavar Bathaee*