UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| Jonathan Corrente, et al., *Plaintiffs* v. The Charles Schwab Corporation., *Defendants*. | Case No. 4:22-cv-470-ALM  Hon. Amos L. Mazzant, III |

### *REVISED* OBJECTION TO FINAL APPROVAL OF CLASS-ACTION SETTLEMENT [DKT. 199][1]

"[I]f it walks like a duck, swims like a duck, and quacks like a duck, it's a duck." *Lake v. Neal,* 585 F.3d 1059 (7th Cir. 2009). Plaintiffs' proposal cannot survive even under the duck test.

*First,* Plaintiffs say to have won an injunction to end Schwab's alleged antitrust actions by stopping nothing; but by adding a miraculous group of lawyers-as-consultants on payroll.

*Second,* Plaintiffs advertise that "injunctive relief" Schwab will swallow can return *hundreds of millions* of dollars! They claim last-minute, *partially redacted* experts also agree.

The duck test is right: it's too good to be true. After smokes and mirrors, Named Plaintiffs and their counsel only agreed to a class-action settlement making themselves *only VIPs* to get over $9 million in cash, while unnamed class members' cash "share of the settlement was a big fat zero". *Mirfasihi v. Fleet Mortg. Corp.,* 356 F.3d 781, 785 (7th Cir. 2004) (Posner, J.)

---

[1] This updated brief focuses on a newly identified jurisdictional concern of Named Plaintiffs. Otherwise he incorporates by reference the remainder his original objection, Dkt. 184.

1

Preserving unnamed class members' damage claims does not alone satisfy Rule 23. This proposal has problems with Article III standing, preferential treatments, and perhaps more.

I. **Before class certification, Plaintiffs must first have Article III standing to sue**

"Standing is an inherent prerequisite to the class certification inquiry." *Wilson v. Centene Mgmt. Co., LLC,* No. 24-50044, __F.4th___, at *8 (5th Cir. Jul. 17, 2025). Whether a plaintiff has standing "is the threshold question in every federal case." *Ibid.* To establish standing, the plaintiff bears the burden of showing "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the Defendant; and (iii) that the injury would likely be redressed by judicial relief." *Ibid.* (quoting *TransUnion, LLC v. Ramirez,* 594 U.S. 413, 423 (2021)). "In the class-action context, the class representative must have standing to represent a class of other allegedly injured persons." *Ibid.* (citing *Flecha v. Medicredit, Inc.,* 946 F.3d 762, 769 (5th Cir. 2020)). "After all, if the class representative lacks standing, then there is no Article III suit to begin with — class certification or otherwise." *Ibid.* "Accordingly, if the class representative presents a standing problem, as the district court determined to be the case here, it must be addressed prior to deciding class certification." *Ibid. Wilson* "adopt[ed] the class certification approach" "for determining a plaintiff's standing at the class certification stage" and "evaluates only a named plaintiff's individual standing." *Id.* at *9. "In considering a plaintiff's Article III standing in the Rule 23 context, courts "must assume *arguendo* the merits of his or her legal claim." *Id.* at *18 (quoting (*Cole v. Gen. Motors Corp.*, 484 F.3d 717, 723 (5th Cir. 2007)). "To the extent merits-based evaluations of expert testimony are necessary at the certification stage, they are premature in determining standing." *Id.* at *24. At the very least, "the class-certification stage [is] beyond the motion-to-dismiss stage but before a motion for summary judgment", "while general factual allegations of injury may suffice for a

motion to dismiss, by the time a court reaches the summary-judgment stage, for example, the plaintiff "must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true." *Id.* at *17 (citation omitted). [2]

### A. **Plaintiffs lacks Article III standing to certify a class for prospective relief** [3]

"Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not." *TransUnion LLC v. Ramirez,* 141 S. Ct. 2190, 2208 (2021). Moreover, a district court is "powerless to approve a proposed class settlement" if "no named plaintiff has standing." *Frank v. Gaos,* 139 S. Ct. 1041, 1046 (2019) (vacated to address jurisdictional doubts). *Earl v. Boeing Co.,* 53 F.4th 897 (5th Cir. 2022) (reversing class certification with instructions to dismiss for lack of jurisdiction, because Named Plaintiffs lack Article III standing). Some attorneys who represented Earl are here by mere coincidence, but the standing problem seems remarkably similar (except standing defect was for damages in *Earl*, for prospective relief here).

Plaintiffs swear to have Article III standing, by citing the magic word "imminent" in the operating complaint. Dkt. 197 at 8 (citing Compl., Dkt. 1 at ¶¶ 3, 35, 448-59). Oddly enough, the word "imminent" is only used *conclusorily*, *once*, *elsewhere*. Compl. ¶ 44 ("Each Plaintiff faces an imminent risk of continued injury absent intervention by this Court") *Cf. Interstate Circuit, Inc. v. United States,* 306 U.S. 208, 226 (1939) ("The production of weak evidence when strong is available can lead only to the conclusion that the strong would have been adverse").

So what *were* in the complaint? The answer: past injuries—ones Plaintiffs have been litigating before settlement appeared. All Named Plaintiffs only "has executed" trades with

---

[2] "[A]t the final stage, those facts (if controverted) must be "supported adequately by the evidence adduced at trial." *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 562 (1992).

[3] "Because the class [also] fails under Rule 23, there is no need to separately decide whether the class additionally fails under Article III." *Flecha,* 946 F.3d at 768. Otherwise, here, "the standing issues in this case are real. Countless unnamed class members lack standing." *Ibid.*

Schwab. Compl. ¶¶ 38-40. Named Plaintiffs only "intend to continue as a brokerage customer of Schwab". Dkts. 197-3, 197-4, 197-5. **What is "imminent" with a Schwab account?** *Cf. United States v. Marchena-Silvestre*, 802 F.3d 196, 203 (1st Cir. 2015) ("[T]he … argument is like the thirteenth chime of a clock: you not only know it's wrong, but it causes you to wonder about everything you heard before."). And scary "class allegations" cannot buy Plaintiffs any standing: "a plaintiff who files a proposed class action cannot legally bind members of the proposed class before the class is certified." *Std. Fire Ins. Co., v. Knowles,* 133 S. Ct. 1345, 1349 (2015).

The operating complaint—filed 6 months before the Fifth Circuit's *Earl v. Boeing Co.* decision (and survived a motion to dismiss)—originally planned to certify a past-looking class of "[a]ll persons, entities, and/or corporations in the United States **who purchased or sold equities or equity options through TD Ameritrade, Schwab**, or any of their affiliates from October 26, 2020, through the present." Dkt. 1 at 97-98, ¶ 464 (emphasis added). That definition appeared typical for a class that seeks to recover *past* damages: people who have traded equity and equity options using the allegedly rogue "order flow" mechanism may allege an injury-in-fact for losing money in the past. *Cf. Earl,* 53 F.4th at 903 ("In an ordinary fraud lawsuit—a pyramid scheme, for example —there are identifiable victims who lost money that wouldn't have been lost in a counterfactual world without the fraudulent scheme.")

But problems came as Named Plaintiffs did a major switch-a-roo to seek settlement for a *prospective, forward-looking* class. Dkt. 197 at 4 ("narrower" class of "persons, entities, and corporations **who are current U.S. brokerage customers of Schwab** … ") (emphasis added). Thus "plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *TransUnion LLC,* 141 S. Ct. at 2208. "Threatened injury must be *certainly impending* to constitute injury in fact, and …

4

allegations of *possible* future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (cleaned up). *See also Lujan v. Defs. of Wildlife,* 504 U.S. 555, 564 (1992) (even "'some day' intentions — without any description of concrete plans, or indeed even any specification of *when* the some day will be — do not support a finding of the 'actual or imminent' injury that our cases require."") *Lopez v. City of Houston,* 617 F.3d 336, 342 (5th Cir. 2010) ("[i]f the purported injury is contingent on future events that may not occur as anticipated, or indeed may not occur at all, the claim is not ripe for adjudication.") (cleaned up).

*Ghedi v. Mayorkas*, 16 F.4th 456 (5th Cir. 2021) shows a counterexample of why Named Plaintiffs failed to allege an injury-in-fact to seek prospective relief. After Ghedi (a regular international traveler) declined to be an FBI informant, he often had long delays and extra screenings in airports. *Id.* at 461-62. So Ghedi sued, and the district court ruled that he "failed to sufficiently allege an … imminent threat of future injury." *Id.* at 463. Ghedi lost his appeal, but the Fifth Circuit clarified that Ghedi did allege an injury-in-fact: "[t]he *Lujan* conservationists neither alleged a professional need for habitual travel nor that they were injured each time they flew. Instead, they alleged that they traveled for pleasure (to view wildlife) and that their injury would occur only once they arrived at their destination (the wildlife's habitat). Ghedi, on the other hand, alleges both a professional need for habitual travel and that his injuries are tied to the *act of flying,* not his destination. ... On these facts we can reasonably infer that his next flight, and thus injury, is both real and immediate. Therefore, he has plausibly alleged an injury in fact under Article III." *Id.* at 465. But the entire Class, here, are light-years away from *Ghedi*.

Named Plaintiffs all claim that they have traded equities and/or exchange-traded funds in the past. Dkt. 1 at 8, ¶¶ 39-41 (Corrente, Shaw and Williams). In the latest papers, Named Plaintiffs "intend to continue as a brokerage customer of Schwab". Dkts. 197-3, 197-4, 197-5.

The mere act of owning a Schwab account *does not hurt*, so there exists a a serious question of how Named Plaintiffs can demonstrate a "real and immediate" injury exists for Article III standing, let alone for the 36.5-million-people class. "As a result, the putative class inevitably includes people … [who] lack a cognizable injury under Article III." *Flecha,* 946 F.3d at 769. And because "it is the *class representative* who presents a standing problem, … *that* standing issue must be addressed first, prior to deciding class certification." *Ibid.*

To seek future relief, Named Plaintiffs "must allege some "lasting impact or likely future injury." *Williams v. Reckitt Benckiser LLC,* 65 F.4th 1243, 1254 (11th Cir. 2023) (similar result). Because Named Plaintiffs only might have standing to seek damages—of which they can insist whenever settlement approval is denied—they lack standing for prospective relief. (Unless Plaintiffs switch to seek past damages again, they need new plaintiffs who *can* sue for injunctive relief.) The rest of their motion for class certification and settlement should be denied as moot.

## II. Even if *arguendo* Plaintiffs had Article III standing, class certification still requires "heightened attention" for this Court as a fiduciary of the Class

"Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate [and] be prepared to prove" Rule 23 requirements. *Wal-Mart Stores v. Dukes,* 131 S. Ct. 2541, 2551 (2011). A "fear of underenforcement is no justification for class certification." *Flecha,* 946 F.3d at 769. "[C]ourts must certify class actions based on proof, not presumptions." *Id.* at 768. "[U]ndiluted, even heightened, attention" for settlement is needed as "a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class". *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997).

"[T]here is an overriding public interest in favor of settlement" of class actions. *Cotton v. Hinton,* 559 F.2d 1326, 1331 (5th Cir. 1977). But if "a portion of the class objects to the proposed settlement, the trial judge must assume additional responsibilities." *Ibid.* "[C]areful

6

scrutiny is necessary to guard against settlements that may benefit the class representatives or their attorneys at the expense of absent class members ... The court's role [is] a fiduciary serving as guardian for the unrepresented class members". *United States v. City of Miami,* 614 F.2d 1322, 1331 (5th Cir. 1980). "Moreover, the court's examination of attorneys' fees guards against the public perception that attorneys exploit the class action device to obtain large fees at the expense of the class." *Strong v. BellSouth Telecom.,* 137 F.3d 844, 849 (5th Cir. 1998).

"The burden of proving the fairness of the settlement is on the proponents." *In re Katrina Canal Breaches Litig.,* 628 F.3d 185, 196 (5th Cir. 2010). "The court must be assured that the settlement secures an adequate advantage for the class in return for the surrender of litigation rights against the defendants." *Id.* at 195. "[A] settlement is not fair where all the cash goes to expenses and lawyers, and the [class] members receive only discounts of dubious value." *Ibid*. "[W]hen fees are paid from the defendant's own funds, a conflict [exists] from "the danger that the lawyers might urge a class settlement at a low figure or on a less-than-optimal basis in exchange for red-carpet treatment on fees".[4] *Strong,* 137 F.3d at 850. "Rule 23(e) directs courts to compare the proportion of the total recovery going to attorney's fees with the [recovery] going to the class, and to consider whether … a sufficient imbalance … cast doubt on the settlement's fairness." *Kurtz v. Kimberly Clark Corp.,* __ F.4th __, 2025 WL 1802667, *13 (2d. Cir. 2025).[5]

**A. The presence of VIP red-carpet treatments for Named Plaintiffs simultaneously failed Rule 23(b)(2), Rule 23(a)(4) and Rule 23(e)(2)**

Even if Plaintiffs could manufacture standing to sue, many Rule 23 problems await them.

---

[4] Objectors will lack standing to challenge Rule 23(h) motion here due to a well-known "gimmick for defeating objectors". *Briseno,* 998 F.3d at 1027; *Contra* Dkt. 197 at 26.

[5] *See also Briseńo v. Henderson,* 998 F.3d 1014, 1024 (9th Cir. 2021) (same); *Pearson v. NBTY, Inc.,* 772 F.3d 778, 787 (7th Cir. 2014) (rejecting a settlement with "meager recovery for the class but generous compensation for the lawyers"). That is because "[t]he award to the class and the agreement on attorney fees represent a package deal." *Johnston v. Comerica Mortg. Corp.,* 83 F.3d 241, 246 (8th Cir. 1996); *Evans v. Jeff D.,* 475 U.S. 717, 733-34 (1986).

As Plaintiffs' papers admitted, "[Named] Plaintiffs will each receive $50 from Schwab in return for releasing their individual damages claims". Dkt. 154 at 17. Under Parties' class-action Settlement Agreement, the *only* section of "Monetary Consideration" will *only* benefit Named Plaintiffs, as "Schwab shall pay […] USD $50 (fifty dollars) to each [Named] Plaintiff to settle and release the Plaintiffs' Released Claims…"). Settlement Agreement, Dkt. 154-1 at 9. As this brief will show, that **VIP privilege to settle Named Plaintiffs' damage claims for $50/person** is simultaneously unacceptable under Rule 23(b)(2), Rule 23(a)(4), and Rule 23(e).

1. <u>**Creative use of Rule 23(b)(2) for damages is prohibited under binding case law**</u>

For Rule 23, "creative uses are perilous." *Chavez v. Plan Benefit Servs.,* 957 F.3d 542, 547 (5th Cir. 2020). Here, "claims for *individualized* relief do not satisfy" Rule 23(b)(2) under *Wal-Mart Stores v. Dukes,* 131 S. Ct. 2541, 2557 (2011). Rule 23(b)(2) "does not authorize class certification when each class member would be entitled to an individualized award of monetary damages." *Ibid.* The Fifth Circuit interpreted *Dukes* in *M.D. ex rel. Stukenberg v. Perry,* 675 F.3d 832 (5th Cir. 2012). There, "Named Plaintiffs requested some forms of relief that would not apply to all class members", and "The district court found it irrelevant that some of the class's requested relief would not apply to every class member". *Id.* at 846. The Fifth Circuit reversed under *Dukes* because "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Ibid.* (quoting *Dukes, supra*). Here, $50 payments are clearly not injunctions and would not "apply to every class member." *Ibid.*

Even before *Dukes, Allison v. Citgo Petroleum Corp.* 151 F.3d 402, 415 (5th Cir. 1998) held "monetary relief predominates in (b)(2) class actions unless it is incidental to requested injunctive or declaratory relief." Here, Plaintiffs sought class certification under Rule 23(b)(2), yet the agreement contains a **VIP clause to buy-out Named Plaintiffs' damages claims for**

8

**$50/each**. Since unnamed class members can be dragged into the class without *any* monetary relief, such monetary relief is far from "incidental". *Ibid.* ("By incidental, we mean damages that flow directly from liability to the class *as a whole* on the claims forming the basis of the injunctive or declaratory relief."). Since monetary relief is "not sufficiently incidental to the injunctive and declaratory relief being sought to permit [it] in a (b)(2) class action", it "predominates" every other relief. *Id.* at 415-16. As another case interpreted *Allison*, "**where the predominant relief sought is an award of money damages, class certification must proceed through the (b)(3) gate**, with its mandatory opt-out provisions." *Klier v. Elf Atochem N. Am.,* 658 F.3d 468, 471 (5th Cir. 2011) (citing *Allison, supra*; emphasis added). Named Plaintiffs' creative use of Rule 23(b)(2)—to seek monetary relief for only themselves—is not permissible.

    2. <u>Named Plaintiffs' VIP-exclusive Settlement terms fell short of Rule 23(a)(4)</u>

The Settlement terms are also "relevant" for a denial of class certification (*Amchem*, 521 U.S. at 619) because Named Plaintiffs are inadequate. Rule 23(a)(4) demands class representatives "will fairly and adequately protect the interests of the class." "[B]ecause of the broad binding effect of class-action judgments, serious attention is given to the adequacy of representation of those absent class members who will be bound by the judgment." 7A Charles Alan Wright et al., *Fed. Prac. & Proc. Civ.* § 1769.1 (3d ed. 2018). "Numerous courts have held that intraclass conflicts may negate adequacy under Rule 23(a)(4)." *Langbecker v. Elec. Data Systems Corp.,* 476 F.3d 299, 315 (5th Cir. 2007). Named Plaintiffs cannot have "economic interests and objectives conflicted substantially with those of absent class members". *Ibid.* Here, Named Plaintiffs sold damages claims for $50/person. While $50/person is perhaps not so eye-popping, **a $50 "throw away" for 36.5 million accounts is $1,825,000,000 ($1.825 billion)**. (36.5 million Schwab account owners are class members under current class definition; *see*

9

content.schwab.com/web/retail/public/about-schwab/SEC_Form10k_2024.pdf at 3). *But see Std. Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1349 (2015) ("class representative[] [owes] fiduciary duty not to throw away what could be a major component of the class's recovery").

*Pettway v. Am. Cast Iron Pipe Co.,* 576 F.2d 1157, 1177 (5th Cir. 1978) recounted "the scope of Rule 23(a)(4) and the proper role of the class representatives … in *Gonzales v. Cassidy,* 474 F.2d 67 (5th Cir. 1973). Gonzales was a class member in a prior class action in which only the class representative, Gaytan, was awarded both retrospective monetary relief and prospective injunctive relief. The other members of the class, including Gonzales, were granted only prospective relief." *Gonzales* held that "Gaytan, through his attorney, vigorously represented the class until he obtained individual relief. The problem is that he was representing approximately 150,000 persons" who were "denied retroactive relief to all members of the class except Gaytan", and Gaytan's inaction "constitutes inadequate representation of the class". 474 F.2d at 75-76.[6]

*Gonzales*' criticism is also an apt description of the merits of this case. Named Plaintiffs here also appear checked out because they "obtained individual relief".[7] *Gonzalez,* 474 F.2d at

---

[6] The Ninth Circuit offers more modern versions of *Gonzales*. In *Roes v. SFBSC Mgmt., LLC,* 944 F.3d 1035, 1056-57 (9th Cir. 2019), a class-action agreement also contained VIP terms for Named Plaintiffs dubbed "General Release enhancement" ($20,000 for each named plaintiff's general release). *Ibid.* The court found that "[i]n contrast to the $5,000 service awards that Jane Roes 1 and 2 also received in recognition of their efforts to represent the class and secure a settlement, the $20,000 General Release Enhancement Payments appear to be completely divorced from any benefit or service to the class. In fact, the Settlement Agreement explicitly states that these incentive payments are "consideration for [Jane Roes' execution 1 and 2] execution of a General Release Form." *Ibid.* The court found the "General Release" terms to also defeat Rule 23(a)(4), which "raise concerns about a potential conflict of interest between the class representatives and unnamed class members. That conflict arises because, [i]f ... members of the class are provided with special `incentives' in the settlement agreement, they may be more concerned with maximizing those incentives than with judging the adequacy of the settlement as it applies to class members at large." *Ibid.* (cleaned up).

[7] Plaintiffs agreed to non-disparagement, Dkt. 154-1 at 17-18, and declared support of this deal for $50 *plus* incentive awards. Together they also function as "conditional incentive awards" rejected by *Radcliffe v. Experian Info. Sols.,* 715 F.3d 1157, 1163-65 (9th Cir. 2013).

75-76. **To receive $50, Plaintiffs switched allegiance to now represent "current account holders"** (Dkt. 197 at 4) **instead of "anyone who traded equity and equity options" since 2020** (Dkt. 1 at 97) **. But absentees** still " For this point alone, Huang asked whether Plaintiffs can remove the clause of "$50 payment per named Plaintiff"—if so, Huang could have concluded his watchdog work. But Plaintiffs declined forcefully. Their stubbornness infers how "special" they are for Named Plaintiffs, while "special rewards for counsel's individual clients are not permissible when the case is pursued as a class action … [when] a person "join[s] in bringing [an] action as a class action ... he has disclaimed any right to a preferred position in the settlement."" *Staton v. Boeing Co.,* 327 F.3d 938, 976 (9th Cir. 2003) (indirectly quoting *Kincade v. Gen. Tire & Rubber Co.* 635 F.2d 501, 506 n.5 (5th Cir. 1981)). *Parker v. Anderson,* 667 F.2d 1204, 1211 (5th Cir. 1982) ("the named plaintiffs should not be permitted to hold the absentee class hostage … in order to secure their individual demands.") *Melong v. Micronesian Claims Comm'n,* 643 F.2d 10, 14 (D.C. Cir. 1980) (there is "no assurance that [plaintiff] will vigorously litigate [claims] which he need not address to prevail on his individual claim but which are essential to any recovery [for class members]. Absent such assurance plaintiff cannot be considered an adequate class representative under Rule 23(a)(4).")

3. **Named Plaintiffs also violated binding circuit law and Rule 23(e)(2)(D)** [8] **by securing a "preferred position" to release their own damage claims**

The preferential treatment for Named Plaintiffs is also problematic for Rule 23(e)(2)(D).[9] *Kincade v. Gen. Tire & Rubber Co.* 635 F.2d 501, 506 n.5 (5th Cir. 1981) ruled that "by choosing to bring their action as a class action, the **named plaintiffs disclaimed any right to a**

---

[8] Circuits unanimously consider 2018 amendments of Rule 23 as new steps to follow in addition to prior case law. *E.g., Moses v. N.Y. Times Co.,* 79 F.4th 235, 243 (2d Cir. 2023); *Briseño,* 998 F.3d at 1026-27; *Williams,* 65 F. 4th at 1261

[9] This applies even when "incentive awards" for named plaintiffs are permitted. *Roes,* 944 F.3d 1035; *Crawford, infra; Flinn v. FMC Corp.,* 528 F.2d 1169, 1176 (4th Cir. 1975).

**preferred position in the settlement [and] negate any claim a named plaintiff might have to preferred treatment simply by reason of his status as a class representative**." (emphasis added). Rule 23(e)(2)(D) also requires that the settlement "treats class members equitably relative to each other." These anti-bias provisions "protect[] unnamed class members … when the representatives become fainthearted before the action is adjudicated or are able to secure satisfaction of their individual claims by a compromise." *Amchem,* 521 U.S. at 623.

A "preferred position" is present here: ***only* Named Plaintiffs got VIP tickets to settle their damages claims in this Settlement**. But what if absentees want to do the same? Plaintiffs' counsel admit absentees **"would either need to bring [one's] own lawsuit on behalf of a damages class or file an arbitration individually with FINRA (because non-class claims are subject to binding arbitration under your account agreements)."** (emphasis added). Since Named Plaintiffs received VIP access that absentees cannot have, Plaintiffs got precisely a "preferred position". *Kincade, supra; Holmes v. Cont. Can Co.,* 706 F.2d 1144, 1148 (11th Cir. 1983) ("[W]here representative plaintiffs obtain more for themselves by settlement than they do for the class … serious questions are raised as to the fairness of the settlement to the class.") *Vassalle v. Midland Funding LLC,* 708 F.3d 747, 755 (6th Cir. 2013) ("preferred positions of the named plaintiffs [signal] potential inequities in this proposed settlement.") (collecting cases).

Such VIP terms also mirror *Crawford v. Equifax Payment Servs.*, 201 F.3d 877, 880 (7th Cir. 2001), where Named Plaintiff Crawford's VIP terms are "$500 as damages, plus a $1,500 'incentive award' for serving as the class representative [while] Rights of all class members other than Crawford to seek damages are unaffected—they receive nothing in this case but are free to file their own suits, provided, however, that no other suit may proceed as a class action."

> [But] the settlement is substantively troubling. Crawford and his attorney were paid handsomely to go away; the other class members received nothing […] and

lost the right to pursue class relief. […] They gain nothing, yet lose the right to the benefits of aggregation in a class. (*Id.* at 882).

The *Crawford* court reversed. Even with additional injunctive relief terms, the court found "the fact that one class member receives $2,000 and the other 200,000+ nothing is quite enough to demonstrate that the terms should not have been approved under Rule 23(e)." *Ibid.* Named Plaintiffs here might protest this comparison because *Crawford*'s class members are barred from class actions, but absentees here still can. While true technically, class members here fare no better—per Class Counsel's own words, individual claims must go through arbitration; and because Plaintiffs—unsuccessfully—litigated class-wide damages for years, few attorneys will pursue again these same damages claims and take risk on a contingency basis.

## CONCLUSION

Named Plaintiffs lack Article III standing to seek prospective relief, and their standing problem extends to any class members not at risk for "real and immediate" future injuries. The settlement approval should be denied as moot. If merits questions could be reached, class certification and settlement approval should be denied under Rule 23(b)(2), Rule 23(a)(4), Rule 23(e)(2)(D) and *Kincade* for the monetary terms exclusively benefitting Named Plaintiffs.

Dated: July 23, 2025

Respectfully Submitted,

Shiyang Huang
/s/ SHIYANG HUANG
2813 SW Rother Rd
Topeka, KS 66614
314-669-1858
defectivesettlement@gmail.com

## CERTIFICATE OF SERVICE

I certify that on July 23, 2025, the above document was served via CM/ECF.

/s/ Shiyang Huang

13