**SUPPLEMENTAL DECLARATION OF MICHAEL T. NORTHEIM**

**ON BEHALF OF**

**ANKURA CONSULTING GROUP, LLC**

**REGARDING THE IMPLEMENTATION AND ADEQUACY OF THE NOTICE PLAN**

1.     I am a Managing Director at Ankura Consulting Group, LLC, Inc. ("Ankura"). The following statements are based on my personal knowledge, the information provided to me by plaintiffs' counsel and other Ankura employees working on this matter, and records of Ankura generated and maintained in the usual course of its business. If called on to do so, I could and would testify competently hereto.

2.     Ankura is located at 2000 K St NW 12th Floor, Washington, DC 20006.

3.     Ankura is a leader in the settlement administration industry and has extensive experience administering settlements and providing court approved notice of class actions. Over the past 15 years, we have provided notification and/or settlement administration services in some of the highest-profile and most complex matters. Ankura offers a wide range of settlement administrative services for developing, managing and executing all stages of integrated settlement plans.

4.     My Declaration Regarding the Proposed Notice Plan, filed with this Court on February 4, 2025, described my experience and the notice plan being developed for the proposed class action settlement of this litigation. Also included were exhibits presenting detailed information concerning Ankura's relevant settlement administration experience; the summary notice of proposed class action settlement; the post card notice; and the long form notice.

5.     February 4, 2025, Settlement Class Counsel moved the Court for preliminary approval of the Class Action Settlement and for Issuance of Notice to the Settlement Class. (Doc. No. 154-8). On February 19, 2025, the Court entered its order preliminarily approving the Settlement (the "Preliminary Approval of Class Action Settlement") and appointed Ankura as the Notice Administrator (Doc. No. 157).

6.     This declaration will: (a) summarize the Notice Plan; (b) detail Ankura's implementation of its role as Notice Administrator; and (c) provide information and statistics regarding the successful implementation of the Notice Plan as of August 11, 2025.

7.     Unless otherwise noted, the matters set forth in the Declaration are based upon my personal knowledge, training, and experience; information received from the parties in this proceeding; and information provided by my colleagues at Ankura. I believe them to be true and correct.

### Development of the Class Member List

8.     On February 11, 2025, Ankura received the original, unprocessed data from Charles Schwab ("Schwab") in the form of two datasets: (1) a list of registered accounts within their database and (2) a list of all active Schwab employees. Per the class definition in the Settlement Agreement, Ankura identified and removed all Schwab employees that matched between the two datasets. During this process Ankura identified a separate population of Class Members that could not receive notice because they contained no email or physical address in the Schwab dataset. Ankura coordinated with Schwab representatives, and it was determined that the original datasets provided to Ankura were over-inclusive as not all individuals in those datasets were potential Class Members. As a result of that determination, Schwab provided Ankura with a new dataset of potential Class Members on March 22, 2025. Ankura then processed and analyzed the new dataset and removed any accounts associated with Schwab employees.

9.     For accounts that had an email address, Ankura began coordinating with the internet service providers (ISPs) on March 31, 2025, to identify any email addresses that may not allow for an email to be successfully delivered. During the ISPs pre-approval process and analysis of email

notice campaign data, Ankura was notified that over 3 million email addresses in the queue could not be sent because they were flagged as invalid or "High-Risk."[1] Ankura provided a list of these problematic email addresses to Schwab and coordinated extensively with them to identify better contact information for these Class Members. Additionally, within this population, another set of non-Class Members was identified and removed from the potential Class Member list.

10.    The remaining population of potential Class Members where an invalid or "High-Risk" email address was identified were shifted to the physical notice campaign if a better email address was unavailable.

11.    After all Schwab employees and other non-Class Members were removed, the final total of potential Class Members to be sent notice is as follows:

| Total Number of Class Members | 24,908,212 |
|---|---|

*Class Action Fairness Act (CAFA) Notice Compliance*

12.    The Plaintiffs filed their motion for preliminary approval on February 4, 2025, initiating the 10-day timeline to serve CAFA notice to the appropriate federal and state officials for each Class Member (by February 14, 2025).

13.    Between February 11 and February 13, 2025, Ankura analyzed and generated 57 datasets for each jurisdiction requiring notice, and on February 14, 2025, Ankura created certified mail envelopes for all jurisdictions. See **Exhibit A** for a breakdown of results pertaining to CAFA notices disseminated.

---

[1] For additional information regarding invalid and "High-Risk" email addresses identified during this process, please see section 21-22.

14.    After all CAFA notices were mailed, Ankura continued to monitor the tracking information for each package to ensure successful delivery. All packages were delivered successfully, apart from six envelopes (American Samoa, Indiana, Massachusetts, Mississippi, South Dakota, and Virginia) where the USPS website did not indicate successful delivery. Ankura promptly initiated investigation cases with USPS to determine the whereabouts of the remaining envelopes. As of March 19, 2025, Ankura received confirmation that 5 of the 6 remaining CAFA notices were successfully delivered. Ankura coordinated closely with American Samoa to ensure successful notification, and on March 21, 2025, Ankura provided electronic notice to American Samoa, which confirmed receipt. Accordingly, after extensive coordination with USPS and representatives from each state attorney general's office, all USPS investigation cases were closed by March 21, 2025.

### Public Website Launch

15.    On February 12, 2025, Ankura began building a public notice website (www.SchwabCorrenteSettlement.com) to include an overview of the litigation, associated program documents and issued notices, answers to frequently asked questions, and all relevant contact information for the helpdesk. The public website officially launched on March 5, 2025, and will remain active for the duration of the program. Please see **Exhibit B** for snapshots of content on the public website.

16.    The Settlement Website provides a public posting of the notice, displays important summary information about the program on the Home page, and provides links to the Settlement Notice Administrator's contact information. The public website is a source of information for all Class Members and can be accessed by anyone. Ankura developed a set of Frequently Asked

Questions and answers ("FAQs"), which visitors to the Settlement Website can review using the interactive, online menu, or by viewing a PDF version of the FAQs available on the Important Documents page of the Website. The Settlement Website also allows anyone with internet access to read, download, and print critical Settlement documents, including the following:

    **a.** Complaint against Charles Schwab Corporation;

    **b.** Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement, the Stipulation of Settlement, and all associated exhibits;

    **c.** Order Granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlement and for Issuance of Notice to the Settlement Class;

    **d.** Notice of Proposed Class Action Settlement;

    **e.** Declaration(s) in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Settlement;

    **f.** Joint Declaration of Yavar Bathaee and Christopher Burke in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement;

    **g.** Analysis of Proposed Settlement - Declaration of Hal J. Singer, Ph.D. and Ted P. Tatos, MS, PStat;

    **h.** Declaration of Michael T. Northeim on behalf of Ankura Consulting Group, LLC Regarding the Implementation and Adequacy of the Notice Plan;

    **i.** Declaration of The Honorable Nancy F. Atlas (Ret.), Mediator;

    **j.** Plaintiffs' Motion for Final Approval of Class Action Settlement;

    **k.** Proposed Order and Final Judgment Approving Class Action Settlement;

    **l.** Stipulation and Agreement of Settlement with The Charles Schwab Corporation;

**m.** Plaintiffs' Counsel's Motion for an Award of Attorney's Fees, Litigation Expenses, and Service Awards;

**n.** Declaration(s) in Support of Plaintiffs' Counsel's Motion for an Award of Attorneys' Fees, Litigation Expenses, and Service Awards;

**o.** Proposed Order Awarding Attorney's Fees, Reimbursement of Litigation Expenses, and Service Awards.

17.    The first batch of documents (¶16(a)–(e)) were published on the public website upon its launch on March 5, 2025. The second batch – comprising Plaintiffs' Motion for Final Approval of Class Action Settlement, Plaintiffs' Counsel's Motion for an Award of Attorney's Fees, Litigation Expenses, and Service Awards, along with their supporting papers (¶16(f)–(o)) – was uploaded on July 29, 2025.

18.    The Settlement Website address appeared prominently in all Notices and has been visited more than 387,173 times as of August 11, 2025. The public website can be viewed in both English and Spanish and provides Class Members with all the information they may need to understand the proposed settlement. Moreover, for those Class Members that wish to receive additional support, the website features a function for submitting inquiries via an online form (which is then linked directly to the settlement helpdesk support inbox). As of August 11, 2025, Class Members have submitted 2,133 inquiries via the online form.

***Direct Notice Campaign***

19.    Generally, in notice campaigns of this magnitude, indirect notice is utilized to reach a substantial portion of the class. However, in this program, Ankura endeavored to disseminate summary notice directly to as many class members as feasibly possible. Potential Class Members

were designated to receive either an email or postcard notice based on the availability and/or validity of their contact information. Additionally, email communication was prioritized to ensure timely and efficient delivery of notices, and those without valid email addresses were subsequently designated to receive postcard notices where a physical address was available.

**(a) Approved Notice Templates:**

20.    Ankura generated final versions of the postcard and email notices in parallel with the data analysis of the Class Member list. The postcard notice was designed to be eye-catching and contain the most important information available about the settlement. It included our helpdesk and public website contact information for Class Members to easily reach out with questions. Following approval from the various parties, Ankura provided the printing and email vendor with final copies of the email and physical postcard notices on February 26, 2025.

**(b) Email Notice Campaign:**

21.    To minimize the risk of issues with the major ISPs, including Google, Microsoft, and Apple, Ankura notified them of the campaign and requested pre-approval of mass email distribution. This approval process took 15 days and was critical to ensure that the campaign was not flagged as spam by one or more of the major ISPs. Once approval was obtained, emails were sent in batches to further avoid the risk of spam filtering.

22.    Throughout Ankura's coordination with the ISPs, we continued to analyze the Class Member data to identify problematic email address categories that could compromise email delivery. Some examples of issues identified in the datasets provided are as follows:

      **(i)**     Records identified contain a potential temporary email domain (e.g. @temporary-mail.net, @inpwa.com, @intopwa.com) that expire shortly after the email address was initially created;

      **(ii)**    Records identified contain a variation of @schwab.com, @none.com, or "noemail" domains;

      **(iii)**   Records identified appear to be "test" entries created by a representative of Schwab (e.g. "Test" in the "name" and/or "email" fields);

      **(iv)**   Records identified contain illegitimate data (e.g. name fields contain such as "smurf" or "yogi bear").

23.     In addition to Ankura's efforts to identify invalid email addresses, each email in the email notice list is cross-referenced against several databases that identify "High-Risk" email accounts. Email addresses can be flagged as "High-Risk" for several reasons: (1) role accounts, (2) compromised accounts, (3) bots, (4) spam traps, (5) and complainers, among others. Sending emails to these "High-Risk" categories harms email marketing performance and damages a domain's reputation with the ISPs. Ankura leverages the databases maintained by Spamhaus to identify these "High-Risk" emails, the same data service provider commonly used by major ISPs to identify and flag fraudulent or spam email campaigns. Attempts to circumvent these warnings would likely result in a permanent block of the notice plan domain, putting all future notice attempts at risk. Ankura provided a list of these problematic email addresses to Schwab and coordinated extensively with them to identify better contact information for these Class Members. In total, roughly 3.3 million email addresses were excluded from the email notice campaign and, where possible, physical notice was sent to these Class Members.

24.    With each batch of emails, Ankura closely monitored for bounce backs due to undeliverable email addresses. When bounce backs occurred, Ankura investigated these instances to attempt to identify a better alternate of the email address. If a better email address was identified, or Ankura had reason to believe a second attempt to deliver notice to the same address would be successful, email notice was attempted again. When a revised email address could not be identified, Ankura migrated the bounce back to the physical mailing campaign where possible, and postcards were sent to Class Members with undeliverable email addresses.

25.    Ankura distributed the first batch of emails on April 14, 2025. Working in batches, all email notices were sent by early May.  Following completion of the email campaign, a total of 19,586,731 emails were sent, which includes emails returned as undeliverable. 18,333,070 emails of these were confirmed as successfully delivered to Class Members. For the 1,253,661 emails where delivery could not be confirmed, Class Members were additionally sent a notice through physical mail, where possible, to ensure that they were reached.

| Date Email Notices Sent | Number of Notices Sent | Number of Notices Delivered |
|---|---|---|
| April 14, 2025 – May 2, 2025 | 19,586,731 | 18,333,070 |

**(c) Physical Mail Notice Campaign:**

26.    The first batch of physical notices was sent to 2,000,070 Class Members that did not have a valid email. To ensure the highest level of deliverability among the postcard recipients, Ankura utilized the National Change of Address (NCOA) database.  Through the NCOA research process, Ankura identified invalid and updated addresses and updated addresses were implemented

within the data. The postcards then proceeded to the printing process. After 2,000,070 post cards were printed, they were mailed on April 10, 2025.

27.    When a postcard was returned as undeliverable, a skip trace was performed. If a new address was identified, a second attempt at mailing was made. A total of 341,521 postcards have been remailed in batches, while 134,783 notices have been returned and an updated address is unavailable.

28.    A second and third batch of postcard notices were mailed to Class Members that could not be reached via their email, either due to having a "High-Risk" or invalid email address, or their email notice bounced back. The second batch consisted of 1,779,833 postcards, all of which were mailed by July 7, 2025, and the third batch consisted of 2,172,898 postcards, all of which were mailed by July 12, 2025.

29.    The fourth and final batch of postcards was mailed on July 15, 2025, and consisted of 622,341 postcards.

| Postcard Batch Number | Date of Postcard Batch Completion | Number of Notices Sent |
|---|---|---|
| Batch 1 | April 10, 2025 | 2,000,070 |
| Batch 2 | July 7, 2025 | 1,779,833 |
| Batch 3 | July 12, 2025 | 2,172,898 |
| Batch 4 | July 15, 2025 | 622,341 |
| *Total Postcards* | | *6,575,142* |

***Establishment and Operation of Class Member Resources***

30.    Following the execution of the notice campaign, it was anticipated that Class Members and potential Class Members may have questions regarding the notices, their legal rights,

and implications of the litigation, among other topics. This underscored the need for robust consumer support to ensure clarity and provide timely assistance. Ankura's Notice Plan offered support through three primary channels – (1) public website, (2) interactive voice response ("IVR"), and (3) helpdesk support – all designed to effectively address a range of inquiries of potential Class Members. Class Members have the option to call the helpdesk, leave a voicemail, and receive a call back from an agent; interact with our comprehensive IVR menu; submit an inquiry through the public website; or email the helpdesk directly to receive an email or phone call reply from an agent. Ankura established all support channels within two weeks of the commencement of the program.

***Interactive Voice Response (IVR)***

31.     Ankura established a toll-free telephone number, 1-888-828-5845 (the "Toll- Free Number"), which was made available for Class Members immediately upon the launch of the public settlement website on March 5, 2025. Twenty-four hours per day, Class Members can call and engage with an automated Interactive Voice Response (IVR) menu that Ankura designed and configured. The IVR menu focuses on all core components of the proposed settlement, including information about what the settlement provides, who belongs to the class, how to object to the settlement, and the fairness hearing, among others. The IVR menu provides the option for Class Members to leave voicemails for our agents, who will research each question and provide a callback within 48 hours. This system is designed to streamline the process of answering frequent questions while allowing for personal assistance via telephone for those that need it. See **Exhibit C** for the IVR script.

32.     Callers, both domestic and international, can leave a voicemail and request to speak to a live agent who will provide a callback from 9:00 a.m. CT to 5:00 p.m. CT, Monday through Friday. The Toll-Free Number appeared prominently in all Notices, as well as on the Settlement Website, and has received 48,602 calls as of August 11, 2025. This Toll-Free Number will remain active through the close of the Settlement. Ankura has designed a helpdesk protocol containing frequently asked questions and has trained our agents on the relevant information for communicating with Class Members.

***Helpdesk and Support***

33.     By February 27, 2025, Ankura had implemented a comprehensive Class Member support program that would address potential questions regarding the notices, the legal rights of Class Members, and implications of the litigation, among other things. Notably, Ankura established a dedicated helpdesk that can receive domestic and international calls, as well as a notice plan-specific email address (info@SchwabCorrenteSettlement.com), enabling Class Members to easily reach out with their questions.

34.     Ankura created a dedicated email (info@SchwabCorrenteSettlement.com) for the Settlement on February 12, 2025. The inbox is monitored regularly, and Class Members who email the Settlement Notice Administrator will correspond with a live agent between 9:00 a.m. CT to 5:00 p.m. CT, Monday through Friday. As of August 11, 2025, the inbox has received 967 emails. This inbox will remain active through the close of the Settlement.

35.     The Class Member support phone line and email support inbox were made available to support Class Members immediately upon the launch of the public settlement website on March 5, 2025.

*Class Member Coordination Summary*

36.    Ankura designed resources to address Class Members' questions about notices, legal rights, and litigation implications, providing timely and effective assistance. Class Members utilized all outreach channels available to them, and Ankura continues to provide support through the public website, the dedicated email inbox, and the toll-free phone line. As of August 11, 2025, Ankura has processed 51,702 total inquiries from Class Members, including 2,133 website submissions, 967 emails, and 48,602 phone calls.

## CONCLUSION

37.    As of August 11, 2025, the direct notice campaign successfully sent 18,333,070 notices via email and 6,440,359 notices through mail, reaching 24,773,429 class members, or 99.5% of the class.[2]

| Type of Notice | Number of Class Members | Number of Notices Sent | Number of Notices Successfully Delivered |
|---|---|---|---|
| Email | 18,333,070 | 19,586,731[3] | 18,333,070 |
| Mailing | 6,575,142 | 6,575,142 | 6,440,359 |
| *Total* | *24,908,212* | *26,161,873* | *24,773,429* |

38.    The foregoing establishes that the Notice Plan is being implemented fully, properly, and successfully as of the date of this Declaration.

---

[2] Ankura considers postcard mailings to be "successful" unless they are returned as undeliverable in the mail.

[3] Note that a total of 19,586,731 Class Members were sent an email notice throughout the entire notice campaign. Among these, 18,333,070 were successfully delivered. Ankura then attempted to notice the 1,253,661 undeliverable emails via physical postcard mailing.

39.     It is my professional opinion that the Notice Plan has met the requirements of due process and Federal Rules of Civil Procedure 23(c)(2)(A) and 23(e)(1) and has provided appropriate notice in a reasonable manner to Settlement Class Members.

40.     I declare under penalty of perjury under the laws of the United States and the District of Columbia that the foregoing is true and correct.


Executed on August 14, 2025, at Washington, District of Columbia.


_____

Michael T. Northeim

# EXHIBIT A

## SCHWAB CORRENTE CAFA NOTICE SUMMARY

| | Jurisdiction | Type of Notice | Physical Notice Recipient | Physical Notice Tracking Number | Electronic Notice Recipient |
|---|---|---|---|---|---|
| 1 | Federal (United States) | Physical | U.S. Attorney General Pamela Bondi Office of the Attorney General U.S. Department of Justice 950 Pennsylvania Avenue NW Washington, D.C. 20530-0001 | 9589 0710 5270 0320 7818 22 | |
| 2 | Alabama | Physical | Attorney General Steve Marshall Office of the Attorney General 501 Washington Avenue Montgomery, AL 36104 | 9589 0710 5270 0320 7818 39 | |
| 3 | Alaska | Physical | Attorney General Treg R. Taylor Office of the Attorney General Alaska Department of Justice 1031 West 4th Avenue, Suite 200 Anchorage, AK 99501-1994 | 9589 0710 5270 0320 7818 77 | |
| 4 | Arizona | Physical | Attorney General Kris Mayes Office of the Attorney General 2005 N. Central Avenue Phoenix, AZ 85004-2926 | 9589 0710 5270 0320 7813 89 | |
| 5 | Arkansas | Physical | Attorney General Tim Griffin Office of the Attorney General 323 Center Street, Suite 200 Little Rock, AR 72201-2610 | 9589 0710 5270 0320 7813 72 | |
| 6 | California | Physical | Attorney General Rob Bonta Office of the Attorney General CAFA Coordinator Consumer Protection Section 455 Golden Gate Ave., Suite 11000 San Francisco, CA 94102 | 9589 0710 5270 0320 7813 65 | |
| 7 | Colorado | Physical | Attorney General Phil Weiser Office of the Attorney General Ralph L. Carr Colorado Judicial Center 1300 Broadway, 10th Floor Denver, CO 80203 | 9589 0710 5270 0320 7813 58 | |
| 8 | Connecticut | Physical + Email | CAFA Coordinator Office of the Connecticut State Attorney General 165 Capitol Ave Hartford, CT 06106 | 9589 0710 5270 0320 7813 41 | AG.CAFA@CT.gov |

| 9 | Delaware | Physical | Attorney General Kathy Jennings<br>Office of the Attorney General<br>Delaware Department of Justice<br>Carvel State Office Building<br>820 N. French Street<br>Wilmington, DE 19801 | 9589 0710 5270 0320 7813 34 | |
| 10 | District of Columbia | Physical | Attorney General Brian L. Schwalb<br>Office of the Attorney General<br>400 6th Street, NW<br>Washington, D.C. 20001 | 9589 0710 5270 0320 7813 27 | |
| 11 | Florida | Physical | Attorney General Ashley Moody<br>Office of the Attorney General State of Florida<br>PL-01, The Capitol<br>Tallahassee, FL 32399-1050 | 9589 0710 5270 0320 7818 46 | |
| 12 | Georgia | Physical | Attorney General Chris Carr<br>Office of the Attorney General<br>40 Capitol Square, SW<br>Atlanta, GA 30334-1300 | 9589 0710 5270 0320 7818 53 | |
| 13 | Hawaii | Physical | Attorney General Anne E. Lopez<br>Office of the Attorney General<br>425 Queen Street<br>Honolulu, HI 96813 | 9589 0710 5270 0320 7814 88 | |
| 14 | Idaho | Physical | Attorney General Raúl R. Labrador<br>Office of the Attorney General<br>700 W. Jefferson Street, Suite 210<br>P.O. Box 83720<br>Boise, ID 83720-1000 | 9589 0710 5270 0320 7814 88 | |
| 15 | Illinois | Physical | Attorney General Kwame Raoul<br>Office of the Attorney General<br>500 S. 2nd St.<br>Springfield, IL 62701 | 9589 0710 5270 0320 7814 71 | |
| 16 | Indiana | Physical | Attorney General Todd Rokita<br>Office of the Attorney General<br>Indiana Government Center South<br>302 W. Washington Street, 5th Floor<br>Indianapolis, IN 46204 | 9589 0710 5270 0320 7814 64 | |
| 17 | Iowa | Physical | Attorney General Brenna Bird<br>Office of the Attorney General<br>Hoover State Office Building<br>1305 E. Walnut Street<br>Des Moines, IA 50319 | 9589 0710 5270 0320 7814 40 | |
| 18 | Kansas | Physical | Attorney General Kris Kobach<br>Office of the Attorney General<br>120 SW 10th Avenue, 2nd Floor<br>Topeka, KS 66612-1597 | 9589 0710 5270 0320 7814 57 | |
| 19 | Kentucky | Physical | Attorney General Russell Coleman<br>Office of the Attorney General<br>700 Capitol Avenue, Suite 118<br>Frankfort, KY 40601-3449 | 9589 0710 5270 0320 7814 33 | |

| 20 | Louisiana | Physical | Attorney General Liz Murrill<br>Office of the Attorney General<br>Louisiana Department of Justice<br>1885 North Third Street<br>Baton Rouge, LA 70802 | 9589 0710 5270 0320 7814 26 | |
| 21 | Maine | Physical | Attorney General Aaron Frey<br>Office of the Attorney General<br>6 State House Station<br>Augusta, ME 04333 | 9589 0710 5270 0320 7816 17 | |
| 22 | Maryland | Physical | Attorney General Anthony G. Brown<br>Office of the Attorney General<br>200 St. Paul Place<br>Baltimore, MD 21202-2202 | 9589 0710 5270 0320 7816 00 | |
| 23 | Massachusetts | Physical | Attorney General Andrea Joy Campbell<br>Office of Massachusetts Attorney General Andrea Joy Campbell<br>ATTN: CAFA Coordinator/General Counsel's Office<br>One Ashburton Place<br>Boston, MA 02108 | 9589 0710 5270 0320 7815 94 | |
| 24 | Michigan | Physical | Attorney General Dana Nessel<br>Office of the Attorney General<br>G. Mennen Williams Building<br>525 W. Ottawa Street<br>P.O. Box 30212<br>Lansing, MI 48909-0212 | 9589 0710 5270 0320 7815 87 | |
| 25 | Minnesota | Physical | Attorney General Keith Ellison<br>Office of the Minnesota Attorney General<br>445 Minnesota Street, Suite 600<br>St. Paul, MN 55101-2131 | 9589 0710 5270 0320 7815 70 | |
| 26 | Mississippi | Physical | Attorney General Lynn Fitch<br>Office of the Attorney General<br>P.O. Box 220<br>Jackson, MS 39205 | 9589 0710 5270 0320 7815 63 | |
| 27 | Missouri | Physical | Attorney General Andrew Bailey<br>Missouri Attorney General's Office<br>Supreme Ct. Bldg.<br>207 W. High St.<br>P.O. Box 899<br>Jefferson City, MO 65102 | 9589 0710 5270 0320 7815 56 | |
| 28 | Montana | Physical | Attorney General Austin Knudsen<br>Office of the Attorney General<br>Justice Building, Third Floor<br>215 N. Sanders Street<br>P.O. Box 201401<br>Helena, MT 59620-1401 | 9589 0710 5270 0320 7815 49 | |
| 29 | Nebraska | Physical | Attorney General Mike Hilgers<br>Nebraska Attorney General's Office<br>2115 State Capitol<br>PO Box 98920<br>Lincoln, NE 68509-8920 | 9589 0710 5270 0320 7815 25 | |

| | | | | | |
|---|---|---|---|---|---|
| 30 | Nevada | Physical + Email | CAFA Coordinator<br>Office of the Nevada State Attorney General<br>Bureau of Consumer Protection<br>100 N. Carson Street<br>Carson City, NV 89701 | 9589 0710 5270 0320 7815 32 | NVAGCAFAnotices@ag.nv.gov |
| 31 | New Hampshire | Physical | Attorney General John M. Formella<br>Office of the Attorney General<br>Department of Justice<br>1 Granite Place South<br>Concord, NH 03301 | 9589 0710 5270 0320 7816 48 | |
| 32 | New Jersey | Physical | Attorney General Matthew J. Platkin<br>Office of the Attorney General<br>Richard J. Hughes Justice Complex<br>8th Floor, West Wing<br>25 Market Street<br>Trenton, NJ 08625-0080 | 9589 0710 5270 0320 7817 16 | |
| 33 | New Mexico | Physical | Attorney General Raúl Torrez<br>Office of the Attorney General<br>408 Galisteo Street<br>Villagra Building<br>Santa Fe, NM 87501 | 9589 0710 5270 0320 7812 66 | |
| 34 | New York | Physical + Email | CAFA Coordinator<br>Office of the New York State Attorney General<br>28th Liberty Street<br>15th Floor<br>New York, NY 10005 | 9589 0710 5270 0320 7817 09 | CAFA.Notices@ag.ny.gov |
| 35 | North Carolina | Physical | Attorney General Jeff Jackson<br>Office of the Attorney General<br>9001 Mail Service Center<br>Raleigh, NC 27699-9001 | 9589 0710 5270 0320 7816 93 | |
| 36 | North Dakota | Physical | Attorney General Drew H. Wrigley<br>Office of the Attorney General<br>600 E. Boulevard Avenue,<br>Department 125<br>Bismarck, ND 58505-0040 | 9589 0710 5270 0320 7816 86 | |
| 37 | Ohio | Physical | Attorney General Dave Yost<br>Office of the Attorney General<br>30 E Broad Street<br>Floor 14<br>Columbus, OH 43215 | 9589 0710 5270 0320 7816 31 | |
| 38 | Oklahoma | Physical | Attorney General Gentner Drummond<br>Office of the Oklahoma Attorney General<br>313 NE 21st Street<br>Oklahoma City, OK 73105 | 9589 0710 5270 0320 7816 79 | |
| 39 | Oregon | Physical | Attorney General Dan Rayfield<br>Office of the Attorney General<br>Oregon Department of Justice<br>1162 Court Street, NE<br>Salem, OR 97301-4096 | 9589 0710 5270 0320 7816 62 | |

19

| 40 | Pennsylvania | Physical | Attorney General David W. Sunday, Jr.<br>Pennsylvania Office of the Attorney General<br>16th Floor, Strawberry Square<br>Harrisburg, PA 17120 | 9589 0710 5270 0320 7816 55 | |
| 41 | Rhode Island | Physical | Attorney General Peter F. Neronha<br>Office of the Attorney General<br>150 South Main Street<br>Providence, RI 02903 | 9589 0710 5270 0320 7818 15 | |
| 42 | South Carolina | Physical | The Honorable Alan Wilson<br>Office of the Attorney General<br>P.O. Box 11549<br>Columbia, SC 29211 | 9589 0710 5270 0320 7818 08 | |
| 43 | South Dakota | Physical | Attorney General Marty J. Jackley<br>Office of the Attorney General<br>1302 E Hwy 14, Suite 1<br>Pierre, SD 57501-8501 | 9589 0710 5270 0320 7817 92 | |
| 44 | Tennessee | Physical | Attorney General Jonathan Skrmetti<br>Office of the Attorney General and Reporter<br>P.O. Box 20207<br>Nashville, TN 37202-0207 | 9589 0710 5270 0320 7817 85 | |
| 45 | Texas | Physical | Attorney General Ken Paxton<br>Office of the Attorney General<br>P.O. Box 12548<br>Austin, TX 78711-2548 | 9589 0710 5270 0320 7817 78 | |
| 46 | Utah | Physical | Attorney General Derek Brown<br>Office of the Attorney General<br>Utah State Capitol Complex<br>350 North State Street, Suite 230<br>SLC, UT 84114-2320 | 9589 0710 5270 0320 7817 61 | |
| 47 | Vermont | Physical | Attorney General Charity R. Clark<br>Vermont Attorney General's Office<br>109 State Street<br>Montpelier, VT 05609 | 9589 0710 5270 0320 7817 54 | |
| 48 | Virginia | Physical | Attorney General Jason S. Miyares<br>Office of the Attorney General<br>202 North Ninth Street<br>Richmond, VA 23219 | 9589 0710 5270 0320 7817 47 | |
| 49 | Washington | Physical | Attorney General Nick Brown<br>Office of the Attorney General<br>800 5th Ave<br>Suite 2000<br>Seattle, WA 98104 | 9589 0710 5270 0320 7818 60 | |

| | | | | | |
|---|---|---|---|---|---|
| 50 | West Virginia | Physical | Attorney General John B. McCuskey<br>Office of the Attorney General<br>State Capitol Complex Bldg 1<br>Room E 26<br>1900 Kanawha Blvd. E<br>Charleston, WV 25305 | 9589 0710 5270 0320 7817 23 | |
| 51 | Wisconsin | Physical | Attorney General Josh Kaul<br>Office of the Attorney General<br>Wisconsin Department of Justice<br>P.O. Box 7857<br>Madison, WI 53707-7857 | 9589 0710 5270 0320 7812 73 | |
| 52 | Wyoming | Physical | Attorney General Bridget Hill<br>Office of the Attorney General<br>109 State Capital<br>Cheyenne, WY 82002 | 9589 0710 5270 0320 7816 24 | |
| 53 | American Samoa | Physical | Attorney General Fainu'ulelei<br>Falefatu Ala'ilima-Utu<br>Office of the Attorney General<br>American Samoa Gov't<br>Department of Legal Affairs<br>c/o Attorney General Fainu'ulelei<br>Falefatu Ala'ilima-Utu<br>PO Box 7<br>Utulei, American Samoa 96799 | 9589 0710 5270 0320 7812 59 | |
| 54 | Guam | Physical | Attorney General Douglas B. Moylan<br>Office of the Attorney General<br>ITC Building<br>590 S. Marine Corps Drive, Suite 706<br>Tamuning, Guam 96913 | 9589 0710 5270 0320 7813 10 | |
| 55 | Puerto Rico | Physical | Secretario de Justicia Domingo Emanuelli Hernández<br>Oficina del Secretario de Justicia<br>P.O. Box 9020192<br>San Juan, PR 00902-0192 | 9589 0710 5270 0320 7812 97 | |
| 56 | Northern Mariana Islands | Physical | Attorney General Edward E. Manibusan<br>Office of the Attorney General<br>Caller Box 10007<br>Saipan, MP 96950 | 9589 0710 5270 0320 7813 03 | |
| 57 | U.S. Virgin Islands | Physical | Attorney General Gordon C. Rhea<br>Office of the Attorney General<br>3438 Kronprindsens Gade<br>GERS Building, 2nd Floor<br>St. Thomas, Virgin Islands 00802 | 9589 0710 5270 0320 7812 80 | |

**EXHIBIT B**

## Jonathan Corrente, et al. v. The Charles Schwab Corporation
Case Number 4:22-cv-00470 (E.D. Tex.)

Home    Frequently Asked Questions    Helpful Resources    Contact Us    Español

### Welcome to the Official Schwab Corrente Settlement Website

Plaintiffs allege that the combination of Schwab and TD Ameritrade Holding Corporation, in October 2020, violated Section 7 of the Clayton Act (15 U.S.C. § 18). Plaintiffs allege that the merger decreased competition among brokers, resulting in Plaintiffs making less money from their trading activity. The Court preliminarily approved the Settlement with Schwab on February 19, 2025. To resolve this lawsuit, Schwab agreed to implement an antitrust compliance program to address Plaintiffs' claims.

You have received a Notice because records indicate that you may be a Settlement Class Member in this Action because you may be a current brokerage customer of Schwab or any of its affiliates, including as a former customer of Ameritrade.

**YOUR LEGAL RIGHTS AND OPTIONS IN THE SETTLEMENT**

More detailed information about your rights and options can be found in the Stipulation, which is available in the Helpful Resources tab.

■ **DO NOTHING**

You are automatically part of the Settlement Class if you fit the Settlement Class description. You will be bound by past and any future Court rulings, including rulings on the Settlement, if approved, and releases.

■ OBJECT TO THE SETTLEMENT

If you wish to object to the Settlement, Attorney's Fees and Expenses, or Service Awards, you must file a written objection with the Court by July 29, 2025, and serve copies on Co-Lead Counsel and Schwab's Counsel.

See question 13 on the Frequently Asked Questions tab.

■ GO TO THE SETTLEMENT HEARING

You may ask the Court for permission to speak at the Fairness Hearing by including such a request in your written objection, which you must file with the Court and serve copies of on Co-Lead Counsel and Schwab's Counsel, by July 29, 2025. The Fairness Hearing is scheduled for August 28, 2025 at 9:00 am CST.

See questions 16 through 18 on the Frequently Asked Questions tab.

■ APPEAR THROUGH AN ATTORNEY

You may enter an appearance through your own counsel at your own expense.

See question 14 on the Frequently Asked Questions tab.

**IMPORTANT DEADLINES**

More detailed information about your rights and options can be found in the Stipulation, which is available in the Helpful Resources tab.

■ JULY 17, 2025

Deadline for Plaintiffs' final approval motion and fee and expense application

■ JULY 29, 2025

Deadline for objections to all or any part of the Settlement, application for attorney's fees and litigation expenses, and any service awards for Plaintiffs

See question 13 on the Frequently Asked Questions tab.

■ AUGUST 14, 2025

Deadline for Plaintiffs' responses to objections

■ AUGUST 28, 2025

The Fairness Hearing is scheduled as follows:

**Date:** August 28, 2025
**Time:** 9:00 am CST
**Location:** United States District Court for the Eastern District of Texas
Paul Brown United States Courthouse
101 East Pecan Street
Sherman, Texas 75090

The Fairness Hearing may be moved to a different date or time without notice to you. Although you do not need to attend, if you plan to do so, you should check the Settlement Website before making travel plans.

## Jonathan Corrente, et al. contra The Charles Schwab Corporation
**Número de Caso 4:22-cv-00470 (E.D. Tex.)**

Inicio    Preguntas Frecuentes    Recursos Útiles    Contáctenos    English

### Bienvenido al sitio web oficial del Acuerdo Schwab Corrente

Los demandantes alegan que la combinación de Schwab y TD Ameritrade Holding Corporación, en octubre de 2020, violó la Sección 7 de la Ley Clayton (15 U.S.C. § 18). Los demandantes alegan que la fusión disminuyó la competencia entre los corredores, lo que resultó en que los demandantes ganaran menos dinero con su actividad comercial. El Tribunal aprobó preliminarmente el acuerdo con Schwab el 19 de febrero de 2025. Para resolver esta demanda, Schwab acordó implementar un programa de cumplimiento antimonopolio para abordar las reclamaciones de los demandantes.

Usted ha recibido una Notificación porque los registros indican que puede ser un Miembro del Grupo de la Conciliación en esta acción porque puede ser un cliente actual de corretaje de Schwab o cualquiera de sus afiliados, incluso como ex cliente de Ameritrade.

### SUS DERECHOS LEGALES Y OPCIONES EN EL ACUERDO

Puede encontrar información más detallada sobre sus derechos y opciones en la Estipulación, que está disponible en la página de Recursos Útiles.

### FECHAS CLAVES

La siguiente table contiene un resumen de las fechas límites relevantes para este Acuerdo. Puede encontrar información más detallada sobre sus derechos y opciones en Estipulación, que está disponible en la página de Recursos Útiles.

#### ■ HACER NADA

Usted forma parte automáticamente del Grupo del Acuerdo si se ajusta a la descripción del Grupo del Acuerdo. Usted estará obligado por las resoluciones judiciales pasada y futuras, incluidas las resoluciones sobre el acuerdo, si se aprueba, y las exenciones.

#### ■ OBJETAR

Si desea objetar el acuerdo, los honorarios y gastos de los abogados o las adjudicaciones por servicios, debe presentar una objeción por escrito ante el Tribunal antes del 29 de julio de 2025 y entregar copias al abogado principal adjunto y al abogado de Schwab.

Consulte la pregunta 13 en la página de Preguntas Frecuentes.

#### ■ ASISTIR A LA AUDENCIA

Puede solicitar permiso al Tribunal para hablar en la Audiencia de Imparcialidad incluyendo dicha solicitud en su objeción por escrito, que debe presentar ante el Tribunal y entregar copias al abogado principal adjunto y al abogado de Schwab, antes del 29 de julio de 2025. La Audiencia de Imparcialidad está programada para el 28 de agosto de 2025 a las 9:00 a.m. Hora estándar central.

Consulte la pregunta 16 en la página de Preguntas Frecuentes.

#### ■ COMPARECER A TRAVÉS DE UN ABOGADO

Usted puede comparecer a través de su propio abogado y a su propio costo.

Consulte la pregunta 14 en la página de Preguntas Frecuentes.

#### ■ 17 de Julio 2025

Fecha límite para aprobar la moción final de los demandantes y la solicitud de honorarios y gastos.

#### ■ 29 de Julio 2025

Fecha límite para objeciones a la totalidad o parte del Acuerdo, solicitud de honorarios de abogados y gastos de litigio, y cualquier adjudicación de servicios para los Demandantes.

Consulte la pregunta 13 en la página de Preguntas Frecuentes.

#### ■ 14 de Agosto 2025

Fecha Límite para las respuestas de los demandantes a las objeciones.

#### ■ 28 de Agosto 2025

La Audiencia de Equidad está programado a lo siguiente:

**Fecha:** 28 de Agosto 2025
**Horario:** 9:00 am Hora estándar central
**Ubicación:** Estados Unidos, Tribunal de Distrito para el Distrito Este de Texas
Palacio de Justicia de los Estados Unidos Paul Brown
101 East Pecan Street
Sherman, Texas 75090

La Audiencia de Equidad puede cambiarse de fecha u hora sin previo aviso. Aunque no es necesario que asista, si planea

## Jonathan Corrente, et al. v. The Charles Schwab Corporation
### Case Number 4:22-cv-00470 (E.D. Tex.)

Home    Frequently Asked Questions    Helpful Resources    Contact Us    Español

## Contact Us

**First Name***

**Last Name***

**Email***

**Telephone**

**Question/Feedback***

Send

✉ **Email Us:**
info@SchwabCorrenteSettlement.com

📞 **Call Us:**
888-828-5845
From outside the United States or Canada +1-888-828-5845

✏ **Write Us:**
Ankura Consulting Group, LLC
2000 K St NW, 12th Floor
Washington, DC 20006

Privacy Policy

## EXHIBIT C

## INTERACTIVE VOICE RESPONSE (IVR) SCRIPT FOR HELPDESK

**Line Options for Callers – (888) 828-5845**

The following is an itemization of the line options available for callers prior to the opportunity to leave a message for a call back from a help desk agent:

**IVR Menu**

**IVR Menu Level 1: Greeting**

Thank you for calling the *Corrente versus The Charles Schwab Corporation* Proposed Settlement Contact Center.

For further information please visit our website at www.SchwabCorrenteSettlement.com or select from the following menu options:

**Press 1 For information about why you received the notice**

You received a Notice regarding the Corrente versus The Charles Schwab Corporation proposed settlement because you requested it, or records indicate that you may be a Settlement Class Member. As a potential Settlement Class Member, you have a right to know about the proposed Settlement with Schwab before the Court decides whether to approve the Settlement. The Notice you received explains the Action, the Settlement, your legal rights, and what benefits the Settlement provides.

The purpose of the Notice is also to inform you of the Fairness Hearing to be held by the Court to consider the fairness, reasonableness, and adequacy of the Settlement and to consider requests for awards of attorney's fees, litigation expenses, and any service awards for Plaintiffs from Schwab. For more detailed information, please visit www.SchwabCorrenteSettlement.com.

**Press 2 To determine whether you are a member of the settlement class**

The class includes all individuals or companies who are currently U.S. brokerage customers of Schwab or any of its affiliates, including customers who previously held brokerage accounts at Ameritrade.

You are not included in the Settlement Class if you are: the Defendant, one of its employees, officers, directors, legal representatives, heirs, successors, or wholly or partly owned subsidiaries or affiliates or one of the judicial officers or their immediate family members or associated court staff assigned to this case.

**Press 3 For general information about class action settlements**

25

A class action is a type of lawsuit where a few people (in this case, Jonathan Corrente, Charles Shaw, and Leo Williams) file a lawsuit not just for themselves but for a larger group of people who have similar issues with a company (like Charles Schwab). These people are called "representative plaintiffs." The representatives, the court, and the lawyers for the group must make sure that everyone's interests in the group are fairly considered.

If you are part of this group, called a class, you don't have to pay for the lawyers or other legal costs. Schwab will cover these expenses. If the representatives reach a proposed settlement, as the plaintiffs here have done with Schwab, everyone in the group will be informed about it and can share their thoughts before the settlement is finalized.

Prior to deciding whether to approve the settlement, the court will hold a "Fairness Hearing" to decide if the settlement is fair and reasonable for everyone involved.

**Press 4 For information about Corrente versus The Charles Schwab Corporation and its progress**

Plaintiffs allege they have been and will continue to be injured as a result of the combination of Schwab and Ameritrade in October 2020 in violation of Section 7 of the Clayton Act, a provision of federal antitrust laws. Plaintiffs allege that the merger decreased competition among brokers, resulting in Plaintiffs making less money from their trading activity. Plaintiffs allege they suffered a type of injury that the antitrust laws were intended to prevent.

After extensive negotiations between the Parties, including mediation, the Parties reached an agreement to settle the Action in December 2024. The Court granted Plaintiffs' motion for preliminary approval of the Settlement with Schwab on February 19, 2025. For more detailed information regarding litigation progress or to view the settlement agreement and supporting documents, please visit www.SchwabCorrenteSettlement.com. Press 1 for Details if the settlement is approved or Press 2 for Details if the settlement is not approved.

**Press (1) for Details if the settlement is approved**

If the settlement agreement is approved, Settlement Class Members will receive valuable injunctive relief without releasing their individual damage claims, rather than risk receiving nothing if the case were to proceed to trial and post-trial appeals. Plaintiffs and Co-Lead Counsel believe the Settlement is fair and in the best interest of all Settlement Class Members. As a part of the Settlement, Schwab has agreed to implement a comprehensive antitrust compliance program to prevent antitrust violations.

If the Settlement is approved, any Notice Costs, any Court awarded attorney's fees and litigation expenses, service awards for Plaintiffs, and any other costs or fees approved by the Court will be

paid by Schwab. If the Settlement is approved, the Action will be dismissed, and Schwab will no longer be the defendant in this Action.

**Press (2) for Details if the settlement is not approved**

If the Settlement is not approved, Schwab will remain as the defendant in the Action, and Plaintiffs will continue to pursue their claims against Schwab. For more detailed information, please visit www.SchwabCorrenteSettlement.com.

**Press 5 For detailed information about what the proposed settlement provides**

The settlement requires Schwab to set up a program to ensure they follow fair competition rules.

An outside team of legal experts will be hired to create this program, which will include a focus on how Schwab communicates with other financial firms and market makers, how Schwab handles the process of directing and executing trades, and how Schwab communicates and works with other financial firms. The program will also focus on the internal processes and decisions related to trade routing, and how Schwab communicates with its customers about trade execution and pricing, especially after the merger, to encourage competition among different financial firms.

Once the program is set up, Schwab will have to confirm every year for four years that they are following these rules.

**Press (1) for What happens if I agree to the settlement**

By agreeing to the settlement, you are giving up the right to ask for certain types of non-monetary relief (like court orders to stop certain actions, such as the Schwab Ameritrade merger) related to the issues that were or could have been brought up in this lawsuit.

However, you are not giving up your right to seek money or damages from Schwab, nor are you giving up the right to enforce the terms of the settlement in the future.

For more detailed information, please visit www.SchwabCorrenteSettlement.com.

**Press 6 For information regarding how to object to the settlement**

If you are a Settlement Class Member, you can tell the Court what you think about the Settlement. You can object to all or any part of the Settlement, application for attorney's fees and litigation expenses, and any service awards for Plaintiffs. You can give reasons why you think the Court should approve them or not. The Court will consider your views. If you want to make an objection, you may enter an appearance in the Action, at your own expense, individually or through counsel of your own choice, by filing with the Clerk of Court a notice of appearance and your objection by July 29, 2025, and serving copies of your notice of appearance and objection on Co-Lead Counsel and Schwab's Counsel. The physical addresses for Co-Lead Counsel and Schwab's Counsel are available on the public settlement website at www.SchwabCorrenteSettlement.com.

**Press (1) for What happens if I object to the settlement**

If you choose to object, you must file a written objection with the Court. You cannot make an objection by telephone or email. Your written objection must include a heading that refers to this Action by case name and case number, and the following information: name, address, and telephone number; proof of membership in the Settlement Class; all grounds for the objection; the name, address, and telephone number of your counsel, if any; and a list of other cases in which the objector or counsel for the objector has appeared either as an objector or counsel for an objector in the last five years. If you want to be heard at the hearing, you must say so in your written objection and also identify any witnesses you propose to call to testify or exhibits you propose to introduce into evidence, if the Court so permits.

If you do not timely and validly submit your objection, your views may not be considered by the Court or any court on appeal.

### Press 7 For information on the Fairness Hearing

The Court will hold the Fairness Hearing on August 28, 2025 at 9:00 a.m. CST at the United States District Court for the Eastern District of Texas, Paul Brown United States Courthouse, 101 East Pecan Street, Sherman, Texas 75090. The Fairness Hearing may be moved to a different date or time without notice to you. Although you do not need to attend, if you plan to do so, you should check www.SchwabCorrenteSettlement.com before making travel plans. At the Fairness Hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate. The Court will also consider whether to approve the requests for attorney's fees and litigation expenses, and any service awards for Plaintiffs. If there are any objections, the Court will consider them at this time. We do not know how long the Fairness Hearing will take or when the Court will make its decision. The Court's decision may be appealed.

#### Press (1) for More details about attending the Fairness Hearing

You are welcome to come at your own expense. If you send an objection, you do not have to come to Court. As long as you draft, file, and serve your written objection according to the requirements set forth above, the Court will consider it. You may attend the Fairness Hearing personally or hire your own lawyer to attend and you or your counsel may ask the Court to allow you to participate in the Hearing, but you are not required to do so.

You may ask the Court for permission to speak at the Fairness Hearing. To appear at the Fairness Hearing, you may enter an appearance in the Action at your own expense, individually or through counsel of your own choice, by filing with the Clerk of Court a notice of appearance and your objection by July 29, 2025, and serving copies of your objection on Co-Lead Counsel and Schwab's Counsel at the addresses available at www.SchwabCorrenteSettlement.com. Any

Settlement Class Member who does not enter an appearance will be represented by Co-Lead Counsel.

**Press 8 To leave a message and an agent will call you back**

Please leave a voicemail and an agent will call you back as soon as possible.

**Press 9 To repeat the menu options**