## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | |
|---|---|
| Jonathan Corrente, et al., | Case No. 4:22-cv-470-ALM |
| *Plaintiffs*, | Hon. Amos L. Mazzant, III |
| v. | |
| The Charles Schwab Corporation, | |
| *Defendant*. | |

## PLAINTIFFS' COUNSEL'S RESPONSE TO
## OBJECTIONS TO THEIR MOTION FOR AN AWARD
## OF ATTORNEY'S FEES, LITIGATION EXPENSES, AND SERVICE AWARDS

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................................. 1

ARGUMENT ....................................................................................................................... 3

I.    PLAINTIFFS' COUNSEL'S REQUEST FOR ATTORNEY'S FEES AND LITIGATION EXPENSES IS REASONABLE IN RELATION TO THE RELIEF OBTAINED FOR THE CLASS ........................................................................................... 4

II.    THE REQUESTED SERVICE AWARD OF $5,000 TO EACH CLASS REPRESENTATIVE IS REASONABLE ........................................................................... 7

III.    PLAINTIFFS' COUNSEL'S PROPOSED HOURLY RATES, TIME EXPENDED ON THIS CASE, AND ALLOCATION OF TIME ARE REASONABLE ............................. 9

IV.    THE CLASS RECEIVED REASONABLE NOTICE OF THE FEE MOTION ............. 13

CONCLUSION ................................................................................................................... 17

# TABLE OF AUTHORITIES

## Cases

*Campbell v. Facebook Inc.*,
  2017 WL 3581179 (N.D. Cal. Aug. 18, 2017) ........................................................................ 6

*Cassese v. Williams*,
  503 F. App'x 55 (2d Cir. 2012) ........................................................................................... 16

*Cerdes v. Cummins Diesel Sales Corp.*,
  2010 WL 2835755 (E.D. La. 2010) ..................................................................................... 13

*DeHoyos v. Allstate Corp.*,
  240 F.R.D. 269 (W.D. Tex. 2007) ............................................................................... 5, 7, 13

*Evans v. Jeff D.*,
  475 U.S. 717 (1980) ............................................................................................................. 5

*Graves v. Barnes*,
  700 F.2d 220 (5th Cir. 1983) ........................................................................................... 5, 13

*In re Bluetooth Headset Prods. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011) ................................................................................................ 6

*In re High-Tech Emp. Antitrust Litig.*,
  2015 WL 5158730 (N.D. Cal. Sept. 2, 2015) ..................................................................... 16

*In re Motor Fuel Temperature Sales Pracs. Litig.*,
  2016 WL 4445438 (D. Kan. Aug. 24, 2016) ......................................................................... 6

*In re Relafen Antitrust Litig.*,
  231 F.R.D. 52 (D. Mass. 2005) .......................................................................................... 12

*In re Telescopes Antitrust Litig.*,
  2025 WL 1093248 (N.D. Cal. 2025) ................................................................................... 11

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  2011 WL 7575004 (N.D. Cal. Dec. 27, 2011) .................................................................... 16

*In re Vioxx Prods. Liab. Litig.*,
  2018 WL 4613941 (E.D. La. Sept. 26, 2018) ..................................................................... 16

*In re Zetia (Ezetimibe) Antitrust Litig.*,
  699 F. Supp. 3d 448 (E.D. Va. 2023) ................................................................................. 12

*Johnson v. Georgia Highway Express, Inc.*,
  488 F.2d 714 (5th Cir. 1974) ................................................................. 3, 5, 10, 12

*La. Power & Light v. Kellstrom*,
  50 F.3d 319 (5th Cir. 1995) ......................................................................... 3, 9, 13

*LeBlanc-Sternberg v. Fletcher*,
  143 F.3d 748 (2d Cir. 1998) ............................................................................... 13

*Longden v. Sunderman*,
  979 F.2d 1095 (5th Cir. 1992) ............................................................................... 3

*Morrow v. City of Tenaha Deputy City Marshal Barry Washington*,
  2020 WL 5534486 (E.D. Tex. Sept. 15, 2020) ............................................ 9, 10, 11

*Morrow v. Jones*,
  140 F.4th 257, 262 (5th Cir. 2025) ...................................................................... 15

*Roberts v. Baptist Healthcare Sys.,*
  *LLC*, 2023 WL 5163374 (E.D. Tex. 2023) .............................................................. 8

*Shipes v. Trinity Indus.*,
  987 F.2d 311 (5th Cir. 1993) ................................................................................. 4

*Strong v. BellSouth Telecomms., Inc.*,
  137 F.3d 844 (5th Cir. 1998) ................................................................................. 3

**Rules**

FED. R. CIV. P. 23(h) ...................................................................................... 13, 15, 16

iii

## INTRODUCTION[1]

Since the Court's preliminary approval of a proposed class settlement providing valuable injunctive relief to a class of approximately 25 million, there have been just 70 objections. Nearly all of these misunderstand or misstate what has actually been released, and few seem to understand the actual injunctive relief that has been agreed-to and will, upon final approval, substantially benefit all Settlement Class members going forward. Instead, the objections in this case largely attack lawyers generally and focus on claims that have not been settled and relief that is simply not at issue in valuing the relief that has actually been obtained. Many objections criticize Plaintiffs' request for fees and service awards, but upon examination, all these objections are without merit.

*First*, some of the fee- and cost-related objections assert that the requested attorney's fees and costs are too high, and disproportionate to the relief obtained by the class. These objections request that the Court either award $0 in attorney's fees (and some also ask for no reimbursement of litigation costs) or, in the case of the State of Iowa, significantly reduce the requested attorney's fees. These objections mischaracterize the value of the injunctive relief obtained on behalf of the class. The program that will be implemented at Schwab as a result of the Settlement will result in meaningful benefits to the class. While the objections are correct that the exact dollar amount of those benefits is difficult to quantify with exact precision, the detailed analysis offered by Dr. Singer and Mr. Tatos—based on reliable data sources and well-accepted statistical methodologies—demonstrates that Schwab's enforcement of the antitrust compliance program could yield annual price improvement gains exceeding $100 million for the Settlement Class.

---

[1] A chart summarizing all objections to the Settlement and/or fee request as of the filing of this brief is attached as Exhibit 1.

*Second*, several objectors take issue with the $5,000 proposed service awards to each Class Representative. A $5,000 service award is reasonable. Mr. Corrente, Mr. Shaw, and Mr. Williams each played a critical role in initiating and prosecuting this case on behalf of the class. Each of them took on the significant burden of preserving, searching for, collecting, and producing documents in this case and responding to detailed discovery requests from Schwab. Each plaintiff kept abreast of the litigation as the case progressed for over three years and ultimately, after discussing with counsel, authorized the settlement arrived at during the mediation with Judge Atlas. The Fifth Circuit has routinely approved $5,000 service awards to incentivize individuals to come forward to serve in this indispensable role. The Court should grant the request for $5,000 service awards to each Class Representative.

*Third*, a single objector, the State of Iowa, opposes Plaintiffs' Counsel's fee request largely on the basis that Plaintiffs' Counsel's proposed hourly rates are too high. The State of Iowa also contends that the amount of time Plaintiffs' Counsel spent on the case is unreasonable and the hours are "unreasonably allocated." Dkt. 245 at 24. The State of Iowa's objection, which is largely based on three cherry-picked cases that are 5-10 years old—principally a 2020 civil rights class action from this district, as well as a 2013 Southern District of New York securities case and a 2018 Northern District of California data breach case—fails to reflect current prevailing rates in this district, nor does it account for the skill required to litigate a case of this complexity.

*Finally,* Iowa claims that Class Members did not receive reasonable notice of Plaintiffs' Counsel's request for attorney's fees, pointing to the fact that the Motion was inadvertently not posted to the Settlement Website when it was filed on July 17. Yet the Website notified Class Members that the Motion would be filed July 17, objectors who sought access through PACER (such as Iowa itself) had access to the Motion at the time it was filed, and other objectors who

wished to review the Motion and could not find it on the Website would have been able to contact the settlement administrator's helpdesk or Plaintiffs' Counsel or obtain the publicly filed Motion themselves. When Plaintiffs' Counsel did learn of the oversight, they posted the Motion to the Website as soon as possible (July 29), still providing more than four weeks before the Fairness Hearing for Class Members to review the posted version and object should they wish. Plaintiffs' Counsel has treated all objections submitted on or before August 13, 2025, as timely and has responded to them accordingly, Plaintiffs' Counsel respectfully requests reasonable compensation for the over 14,000 hours of time they invested in this case in the amount of $8,250,000 in attorney's fees (which applies a 0.763 lodestar multiplier that represents a nearly 24% reduction of Plaintiffs' Counsel's billed hours), litigation expenses of $686,492.60, and a $5,000 service award to each Class Representative.

## ARGUMENT

The assessment of attorney fee applications in class action cases is a question of reasonableness. *Strong v. BellSouth Telecomms., Inc.*, 137 F.3d 844, 849 (5th Cir. 1998) ("To fully discharge its duty to review and approve class action settlement agreements, a district court must assess the reasonableness of the attorneys' fees."). To determine the reasonable fee that should be awarded to class counsel, courts in the Fifth Circuit "utilize[] the lodestar method." *Longden v. Sunderman*, 979 F.2d 1095, 1099 (5th Cir. 1992) (cleaned up). The lodestar method is a two-step process: "Initially, the district court must determine the reasonable number of hours expended on the litigation and the reasonable hourly rates for the participating lawyers. Then, the district court must multiply the reasonable hours by the reasonable hourly rates." *La. Power & Light v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995) (cleaned up). "After determining the lodestar amount, the district court may adjust the lodestar up or down" based on the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). *Shipes v. Trinity Indus.*,

987 F.2d 311, 320 (5th Cir. 1993). Plaintiffs' Counsel's requested fee award comfortably satisfies the Fifth Circuit's lodestar analysis, and the agreed-upon downward lodestar adjustment results in a final fee that meets the reasonableness standard.

## I.   PLAINTIFFS' COUNSEL'S REQUEST FOR ATTORNEY'S FEES AND LITIGATION EXPENSES IS REASONABLE IN RELATION TO THE RELIEF OBTAINED FOR THE CLASS

In one form or another, the fee-related objections each take issue with the value of relief to the class in relation to the requested fee.[2] Some of the objections are framed in brief statements. *See, e.g.*, Dkt. 172 (Objection of Mark Bond: "Please accept this notice of objection to this settlement as a clear and blatant attempt to line the pockets of a bunch of attorneys with no real benefit to class members."). Some are verbatim or near-verbatim quotes from a form found on Reddit.[3] *See, e.g.*, Dkt. 181 at 1 (Objection of Siddharth Bhavsar: "While I understand attorneys are entitled to compensation, the amount requested appears grossly disproportionate to the actual, practical benefit delivered to the class members."); 166 (same); 187 (same); 188 (same); 192 (same); 210 (same); 234 (same); 261 (same); 165 (slightly modified); 224 (slightly modified). Other objections more fully developed. *See, e.g.*, Dkt. 176 at 8-9 (Objection of Gavin Rossi claiming a lack of "tangible, monetary, or measurable benefit[s] for the class"); 245 at 15 (State of Iowa Objection: "Plaintiffs achieved none of the goals they set forth in their complaint, yet Plaintiffs' Counsel seek $8,250,000 in fees at a rate of more than $731 per hour"[4]). And one

---

[2] Dkt. 161, 165, 166, 167, 168, 169, 171, 172, 173, 176, 179, 181, 187, 188, 192, 193, 194, 208, 210, 217, 220, 223, 224, 225, 226, 227, 234, 235, 236, 237, 238, 240, 242, 245, 246, 248, 251, 252, 255, 256, 257. Plaintiffs' Counsel also respond to the objections of Rita Johnston, Maria Demelo, and William Grubbs (unfiled, *see* Exhibit 2).

[3] A copy of the Reddit form is available at http://bit.ly/4146Zxp (last accessed Aug. 14, 2025).

[4] The State of Iowa's objection appears to elide the reasonableness of Plaintiffs' Counsel's requested fee with the Rule 23(e) fairness analysis. (*See id.* at 16-19 (first discussing fees and then discussing Rule 23(e) and analyzing cases assessing fairness of settlements granting injunctive

objection, which contains substantive objection on fairness grounds, also adopts "any other objection not inconsistent with this objection." Dkt. 251 at 3 (Objection of Theodore Frank incorporating all other objections).

These objections all relate to the eighth *Johnson* factor: "[t]he amount involved and the results obtained." 488 F.2d at 718. In short, these objections do not fairly account for the benefits of the injunctive relief that Plaintiffs' Counsel achieved. As explained by the Fifth Circuit:

> The result obtained by verdict or settlement, evaluated in terms of (a) the potential money damages available to the class member, *i.e.* a comparison of the extent of possible recovery with the amount of actual verdict or settlement; [and] (b) the benefit—monetary or non-monetary—conferred on the class, *i.e.*, permitting the court to recognize and reward achievements of a particularly resourceful attorney who secures a substantial benefit for his clients with a minimum of time invested.

*Graves v. Barnes*, 700 F.2d 220, 223 (5th Cir. 1983) (cleaned up). The importance of the benefits obtained through relief was addressed head-on in *DeHoyos v. Allstate Corp.*, where objectors argued that injunctive relief in a class action settlement had no value. 240 F.R.D. 269, 331 (W.D. Tex. 2007). There, the court recognized that "if [injunctive relief] were valueless, attorneys would rarely accept civil rights or other socially valuable cases not involving monetary damages. This is not how the justice system operates. Instead, recognizing it is difficult to value injunctive and declaratory relief, courts use the lodestar method, which compensates attorneys based on their reasonable time and rates." *Id.* at 336-37 (citations omitted) (citing *Evans v. Jeff D.*, 475 U.S. 717, 745-52 (1980) (Brennan, J., dissenting)). Put another way "[i]n civil rights and other injunctive relief class actions, courts often use a lodestar calculation because there is no way to gauge the net value of the settlement or any percentage thereof." *Id.* at 324 (citation omitted); *see also In re*

---

relief).) The Rule 23(e) factors are addressed in Plaintiffs' separate and concurrently filed motion related to the fairness of the Settlement.

*Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011) (explaining that a lodestar calculation is appropriate measure of attorney's fees "where the relief sought—and obtained—is often primarily injunctive in nature and thus not easily monetized, but where the legislature has authorized the award of fees to ensure compensation for counsel undertaking socially beneficial litigation").

And in another recent case involving privacy-related disclosures that Facebook agreed to implement in a class action settlement, the court noted that an objector's "real concern relate[d] less to the terms of the settlement itself, and more to the proportionality between the benefits for the class and the attorneys' fees sought." *Campbell v. Facebook Inc.*, 2017 WL 3581179, at *5 (N.D. Cal. Aug. 18, 2017), *aff'd*, 951 F.3d 1106 (9th Cir. 2020). Similar to the analysis in *DeHoyos*, the court noted that "[b]ecause the benefits to the class here are declaratory and injunctive in nature, it is difficult to put a dollar figure on their value and compare them to the attorneys' fees sought." *Id.* Nonetheless, the court found that "the privacy interests of the class vindicated by the settlement and through this litigation are substantial, and the court rejects Objector's characterization of them as having 'no value.'" *Id.*; *see also In re Motor Fuel Temperature Sales Pracs. Litig.*, 2016 WL 4445438, at *6-7 (D. Kan. Aug. 24, 2016) (rejecting objections to fee because the objectors ignored the substantial benefit of the injunction-only settlement).

As discussed in Plaintiffs' Motion and explained in the Declaration of Dr. Singer and Mr. Tatos, this settlement achieves meaningful and impactful relief, with tangible benefits to Schwab's current and future customers that could yield price improvement between $10.7 million and $14.5 million per month—and well over $100 million to the class in each of the four years of the compliance program. Dkt. 199 at 17-18; 205 at ¶ 85. If the compliance program provides even 10% of that amount, the class will still obtain benefits exceeding $40 million in addition to

preventing unfair or anticompetitive practices that could cost Schwab retail brokerage customers many millions more. The requested fee of $8.25 million falls well within the percentage of recovery awarded in cases in the Fifth Circuit. *See* Dkt. 199 at 17-18 (collecting cases).

Of course, Dr. Singer and Mr. Tatos acknowledged limitations and made some assumptions in their *ex ante* analysis of expected value. The Court still should "recogniz[e] it is difficult to value injunctive and declaratory relief" when assessing the benefits achieved for the class by Plaintiffs' Counsel. *DeHoyos*, 240 F.R.D. at 337. Dr. Singer and Mr. Tatos's analysis shows how the compliance program provides material benefits to current and future Schwab retail customers in the form of preventing unfair business practices in addition to promoting increased competition. Dkt. 205 at ¶¶ 48-80. Thus, even if the Court sets aside the numerical range that Dr. Singer and Mr. Tatos project, the court can still "use the lodestar method, which compensates attorneys based on their reasonable time and rates" in cases involving injunctive relief. *DeHoyos*, 240 F.R.D. at 336-37. Using the lodestar method, Plaintiffs' Counsel would receive nearly $11 million in attorney's fees. Dkt. 199 at 5. The discount on that lodestar with the 0.763 multiplier[5] applied by Plaintiffs' Counsel further emphasizes the reasonableness of the requested fee.

## II.    THE REQUESTED SERVICE AWARD OF $5,000 TO EACH CLASS REPRESENTATIVE IS REASONABLE

Only a handful of objections refer to the requested service award of $5,000 per Class Representative. The vast majority of objectors appear to oppose service awards on the grounds of

---

[5] In calculating the lodestar, Plaintiffs used June 30, 2025, as the cut-off date. Dkt. 199 at 8. However, Plaintiffs have continued to respond to Settlement Class Member inquiries on a daily basis since that time. When those additional hours are taken into account, the actual lodestar multiplier will be even lower. In addition, the Settlement Agreement obligates Plaintiffs' Counsel to actively participate in negotiating and approving the compliance program following final approval of the Settlement, and to monitor the program over the next four years. Plaintiffs' Counsel are not seeking compensation for this future work.

fairness (which is addressed in the concurrently-filed briefing related to final approval of the settlement), not reasonableness.[6] *Cf. Roberts v. Baptist Healthcare Sys., LLC*, 2023 WL 5163374, at *7 (E.D. Tex. 2023) ("Courts may approve service awards to named plaintiffs if the awards are fair and reasonable." (citation omitted)). And indeed, some objectors take no issue at all with the requested service awards. *See* Dkt. 179 at 2. Just one objector, David Simon, addresses the reasonableness of service awards, taking the position that "[t]he proposed service awards lack clear documentation or rationale. Without evidence of substantial time and effort invested by the named plaintiffs, awarding such bonuses is unjustified, particularly when other class members receive little or no compensation." Dkt. 248 at 1.

Turning first to Mr. Simon's specific objection claiming an absence of "clear documentation or rationale" for the service awards (Dkt. 248 at 1), the Class Representatives have submitted detailed affidavits regarding the work they have done to advance this case over the last three years. Specifically, the Class Representatives engaged in extensive discovery efforts— detailed at length in Plaintiffs' Counsel's Motion (Dkt. 199 at 20-21). They kept abreast of the litigation in order to fulfill their obligations under Rule 23 and communicated with Plaintiffs' Counsel regarding settlement efforts and approved the terms. The Class Representatives conservatively estimate that they each spent at least 30-40 hours working on this case. Corrente Suppl. Decl. ¶ 5; Shaw Suppl. Decl. ¶ 5; Williams Suppl. Decl. ¶ 5. The Class Representatives' efforts have been adequately documented and explained to justify a service award.

---

[6] *See, e.g.*, Dkt. 171 at 1 ("[A]warding attorneys' fees and service awards while the class receives nothing further adds to the unfairness of the proposal"); 173 at 1 ("I object to any attorney's fees or service awards being granted when class members receive no direct financial benefit. It appears disproportionate and unjust."); 176 at 10 (objecting to "unequal distribution of benefits" as a fairness issue under Rule 23(e)(2)(D)); 245 at 8-9 ("Class members get the supposed relief of expensive antitrust monitoring without any of the cash benefits received by named Plaintiffs"); *see also* Dkt. 242 (objecting to service awards based on a number of fairness-related factors).

To the extent that any objections take issue with the amount of the service awards, Plaintiffs' Counsel's Motion identified a number of cases that granted $5,000 service awards (and in some cases, more than that) to class representatives, including representatives of injunction-only settlement classes. None of the objectors have presented any argument to depart from the service awards granted in those cases.

### III. PLAINTIFFS' COUNSEL'S PROPOSED HOURLY RATES, TIME EXPENDED ON THIS CASE, AND ALLOCATION OF TIME ARE REASONABLE

The State of Iowa is the sole objector to the calculation of Plaintiffs' Counsel's lodestar and the 0.763 multiplier requested in Plaintiffs' Counsel's fee application. This objection implicates both the reasonableness of the hourly rates and the number of hours submitted by Plaintiffs' Counsel, *La. Power & Light v. Kellstrom*, 50 F.3d at 324, as well as a handful of the *Johnson* factors, including (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (9) the experience, reputation and quality of the attorneys; and (12) awards in similar cases, *Johnson*, 488 F.2d at 718. The Court should reject this challenge to Plaintiffs' Counsel's requested fee award.

The Iowa objection starts with the proposition that Plaintiffs' Counsel's proposed hourly rates "are far out of range for the market in the Eastern District of Texas." Dkt. 245 at 23. The objection suggests that rates ranging from $200 for staff attorneys to $500 for partners would be acceptable, although possibly still excessive. *Id.* at 23-24. In support of its position on partner hourly rates, the Iowa objection relies exclusively on Judge Gilstrap's opinion in *Morrow v. City of Tenaha Deputy City Marshal Barry Washington*, 2020 WL 5534486 (E.D. Tex. Sept. 15, 2020), an opinion granting a fee award following the successful resolution of civil rights class action in 2020. As an initial matter, Judge Gilstrap noted that, based on the declaration of "a well respected trial lawyer who practices law in the Eastern District of Texas" filed in support of the fee request,

"the range of customary reasonable fees for complex civil litigation in the Eastern District of Texas exceeds $700.00 an hour." *Id.* at *4. Judge Gilstrap then awarded counsel's requested hourly rate, although he reduced that rates by $50 per hour (from $500/hour to $450/hour for a one lawyer, and from $400/hour to $350/hour for another) for tasks that did "not require the skill—or billing rates—of a highly accomplished class action litigator." *Id.* at *4–5.

With respect to staff attorney rates, the Iowa objection states that the staff attorneys employed by both firms "appear to be contracted document reviewers for whom actual market participants would pay substantially lower rates than they would for permanent employees of white-shoe firms." Dkt. 245 at 24. The objection then states that a $200/hour rate would be appropriate for non-employee contract attorneys, relying on two out-of-district cases decided in 2013 and 2018. Dkt. 245 at 24. The Iowa objection is factually incorrect. The attorneys who conducted extensive document review work in this action are not independent contractors but full-time employees of Bathaee Dunne and Korein Tillery. Joint Suppl. Decl. of Yavar Bathaee and Christopher Burke ("Bathaee-Burke Suppl. Decl.") ¶ 2; Bell Suppl. Decl. ¶ 4.

The Iowa objection is misplaced as to the rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Morrow*, 2020 WL 5534486, at *4. First of all, the three cases relied upon by the State of Iowa—decided in 2020, 2018, and 2013—are fairly outdated. Plaintiffs' Counsel have cited much more recent decisions from the Eastern District of Texas awarding hourly rates comparable to what has been requested. Dkt. 199 at 11-12. Moreover, the Iowa objection does not account for the "skill requisite to perform the legal services properly." *Johnson*, 488 F.2d at 718. As discussed in Plaintiffs' Counsel's fee application, this was a novel, complex case that achieved the first-ever favorable resolution of a challenge to Payment for Order Flow-related practices. Dkt. 199 at 10. Only a handful of attorneys

10

in the country do this type of work; the hourly rates awarded to Plaintiffs' Counsel should reflect this—and are comparably measured by the rates opposing counsel have requested in other cases. *Id.* Finally, Warren T. Burns, "a well respected trial lawyer who practices in the Eastern District of Texas," *Morrow*, 2020 WL 5534486, at *4, has submitted a declaration attesting to the reasonableness of the hourly rates requested by Plaintiffs' Counsel and the skill required to prosecute cases such as this matter.[7] Dkt. 199-5. Ultimately, the reasonableness of the hourly rates requested by Plaintiffs' Counsel is confirmed by recent fee awards in this District, the skill needed to litigate the complex and novel issues in this case, the rates charged by opposing counsel, and a declaration from an accomplished Eastern District of Texas practitioner.[8]

Next, Iowa asserts that the "hours [worked by Plaintiffs' Counsel] are unreasonable." Dkt. 245 at 24. The objection offers no explanation for why Plaintiffs' Counsel's investment of over 14,000 hours of their time is unreasonable in this case and seems to ignore that this matter has been litigated for over three years, with an extensive pre-suit investigation, briefing on a motion to dismiss, two motions to compel, extensive statistical analysis of the effects of the Schwab-TD Ameritrade merger, five depositions, review of nearly a million pages of documents concerning complex internal practices, and a contested mediation. *See* Dkt. 199 at 3-5. Other antitrust cases confirm the reasonableness of the total hours worked on this case. *See, e.g.*, *In re Telescopes Antitrust Litig.*, 2025 WL 1093248, at *11 (N.D. Cal. 2025) (20,536 hours billed firms over five

---

[7] Iowa states that Mr. Burns's firm submitted a fee request in this case and complains that Mr. Burns's firm failed "to assign a total amount [of time worked] or to explain its inscrutable coding system." Dkt. 245 at 24. This is incorrect. Mr. Burns's firm did not work on this case and his declaration only relates to the reasonableness of the hourly rates requested in this case.

[8] Additionally, because Plaintiffs' Counsel request a 0.763 lodestar multiplier and because Plaintiffs' Counsel have invested and will continue to invest significant amounts of time in this case after submitting the Final Approval motion, their effective hourly rate will be dramatically lower than their requested hourly rate.

years of litigation); *In re Zetia (Ezetimibe) Antitrust Litig.*, 699 F. Supp. 3d 448, (E.D. Va. 2023) (31,710.2 hours billed over five years of litigation); *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 79 (D. Mass. 2005) ("[C]lass counsel states that it has expended more than 29,000 hours over a four year period." (internal quotation marks omitted)). By any measure, Plaintiffs' Counsel reasonably expended over 14,000 on this case.

Iowa then states that Plaintiffs' Counsel's work was "unreasonably allocated" between senior lawyers and more junior attorneys. Dkt. 245 at 24. The objection does not suggest what a more appropriate distribution of labor would look like, but even if it did, the objection would still be meritless. As discussed in Plaintiffs' Counsel's Motion, work in this case was allocated efficiently and effectively. Dkt. 199 at 7. Attorneys with higher rates and more experience performed tasks like analysis and brief writing; attorneys with lower billing rates performed appropriate tasks including document review and research. *Id.*; *see also* Bathaee Decl. ¶ 31 (Dkt. 199-1). Additionally, in a complex case like this, additional time spent by experienced partners was necessary—for example, to develop the legal and factual theory in the Complaint, respond to an exhaustive motion to dismiss, brief the nuanced administrative law issues in the motions to compel, and work with industry-leading experts to analyze an enormous amount of data. While more junior attorneys could (and did) assist with this work, the lion's share had to be done by senior lawyers with higher billing rates. Iowa's disagreement with Plaintiff's counsel's allocation of resources should not be credited.

Finally, Iowa suggests that Plaintiffs' Counsel's requested 0.763 lodestar multiplier should be reduced by more than half to a 0.33 lodestar multiplier because Plaintiffs' Counsel did not obtain damages or divestiture on behalf of the class. Dkt. 245 at 24-25. This revisits the issue of relief obtained for the class discussed above, *see supra* § I, as well as the *Johnson* factors.

Following the Fifth Circuit's guidance in *Graves* and as applied in the *DeHoyos* case, the Court should assess the non-monetary benefits conferred on the class using the lodestar method, and then as noted in the *Louisiana Power & Light* case, make any adjustments based on the *Johnson* factors. *See also LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 758-60 (2d Cir. 1998) ("[W]here both monetary and equitable relief have been pursued, the size of the monetary recovery is not necessarily the proper measure of the plaintiff's success. . . . When a plaintiff obtains an injunction that carries a systemic effect of importance or serves a substantial public interest, a substantial fee award may be justified."). These factors are discussed at length in Plaintiffs' Counsel's Motion. Dkt. 199 at 6-18.

The Fifth Circuit's prescribed methodology would support a fee request without any multiplier—and a total fee award of approximately $10.8 million in attorney's fees. But as part of the negotiations in this case, Plaintiffs' Counsel have agreed to accept $8.25 million, a significant departure from their lodestar. The Court should grant Plaintiffs' Counsel's request for a 0.763 lodestar multiplier, which will ultimately be considerably lower due to the additional lodestar that will not be submitted between Plaintiffs' Motion for Final Approval and the conclusion of this case. *Cf. Cerdes v. Cummins Diesel Sales Corp.*, 2010 WL 2835755, at *3 (E.D. La. 2010) (awarding additional fees to account for "future work resulting from implementation of the class action settlement").

## IV.    THE CLASS RECEIVED REASONABLE NOTICE OF THE FEE MOTION

Objector State of Iowa complains that Class Members had insufficient time to object to Plaintiff's Counsel's attorney's fee request because the attorney's fee motion was not posted to the Settlement Website by the July 29 objection deadline. Dkt. 245 at 26.  This objection is meritless.

Rule 23(h)(1) requires that notice of class counsel's fee motion be "directed to class members in a reasonable manner." That happened here. Since March 5, 2025, the Settlement

13

Website has allowed Class Members to view the Notice of Proposed Class Action Settlement ("Notice"), Northeim Suppl. Decl. ¶¶ 15-16, which discloses that Plaintiffs' Counsel would "move for an award of up to $8,250,000 in attorney's fees, plus payment of no more than $700,000 for litigation expenses," Northeim PA Decl. at 26 (Dkt. 154-7).[9] Also as of March 5, the Settlement Website informed Class Members that Plaintiffs' Counsel would be filing their attorney's fee motion by July 17, as did the Court's preliminary approval order, *see* Dkt. 157 ¶ 24, which was also posted on the Website. *See* Northeim Decl. ¶ 15, Ex. B. The Motion was filed publicly on July 17—nearly two weeks before the objection deadline and six weeks before the Fairness Hearing.

It is true that the Motion was inadvertently not posted to the Settlement Website when it was filed on July 17. That was an oversight, for which Plaintiffs' Counsel take responsibility. However, the Settlement Website did include contact information for a dedicated helpdesk and email support inbox maintained by Ankura, where Class Members seeking to review the Motion could have sought assistance in obtaining it. *See* Northeim Suppl. Decl. ¶¶ 15, 18, 30, 33-35. Further, Plaintiffs' Counsel fielded numerous calls from Class Members concerning the Settlement and the attorney's fee request. Had any asked for the Motion or alerted counsel to its absence from the Website, the problem would have been corrected immediately—yet none did. Bathaee-Burke Suppl. Decl. ¶ 9. On July 29, immediately upon becoming aware from Iowa's objection that the settlement administrator had not posted the Motion to the Website, Plaintiffs' Counsel corrected

---

[9] The Supplemental Declaration of Michael T. Northeim filed herewith is cited as "Northeim Suppl. Decl." The Declaration of Michael T. Northeim (Dkt. 197-7) filed July 17, 2025, with this Motion is cited as "Northeim Decl." The Declaration of Michael T. Northeim (Dkt. 154-7) filed February 4, 2025, with Plaintiffs' Motion for Preliminary Approval is cited as "Northeim PA Decl."

the omission, and the Motion has been posted there ever since.[10] *Id.* ¶ 9; Northeim Suppl. Decl. ¶ 17. While that was the same day as the objection deadline, Plaintiffs' Counsel have responded to post-deadline objections, including speaking with objectors about fee- and cost-related issues. Bathaee-Burke Suppl. Decl. ¶ 10. Moreover, Plaintiffs' Counsel are treating all objections filed by August 13 as timely, as that date falls more than two weeks after July 29—the day the Motion papers were posted on the Website. This period exceeds the 12-day period between the public filing of the Motion papers on PACER on July 17 and the July 29 objection deadline. Plaintiffs' Counsel have addressed these objections either in this brief or in the concurrently filed reply brief in support of final approval. Class members had access to sufficient information and ample time to object to the fee motion, and many did so after the July 29 deadline. While Plaintiffs' Counsel regrets the delay in posting the Motion papers on the Website, any error would be harmless. For notice of a fee motion to pass muster under Rule 23(h)(1), class members "must be given the opportunity to review and object to the motion for attorney fees." *Morrow v. Jones*, 140 F.4th 257, 262 (5th Cir. 2025). Though the Motion was not posted to the Website at the time it was filed, Class Members have had—and continue to have—the opportunity to review and object to it. The Settlement Website informed Class Members that the Motion would be filed by July 17. The Motion was filed publicly on July 17, meaning objectors who sought access through PACER (such as Iowa) had access to it nearly two weeks before the objection deadline and six weeks before the Fairness Hearing. Since July 17, any objectors could have requested the Motion through the Ankura helpdesk, by using PACER or publicly available research tools like Docket Alarm, or by

---

[10] Iowa notes that "Attorneys General are responsible for protecting their States' consumers." Dkt. 245 at 7. It is thus troubling, and perhaps telling, that the Iowa Attorney General elected not to alert Plaintiffs' Counsel to this oversight as soon as it came to her office's attention, which would have led to the Motion being posted to the Settlement Website sooner.

contacting Plaintiffs' Counsel directly. And the Motion has been available on the Website since July 29, more than four weeks before the Fairness Hearing, which is open to any Class Member who wishes to object to the fee application.

This is sufficient notice under Rule 23(h)(1), and Iowa's objection should be overruled. *See In re High-Tech Emp. Antitrust Litig.*, 2015 WL 5158730, at *15 (N.D. Cal. Sept. 2, 2015) (Koh, J.) (overruling objection where attorney's fees motions "were all publicly filed, in a timely manner, on the case's public electronic docket" and "the Notice provided contact information for Class Counsel to answer any questions class members may have had"); *In re Vioxx Prods. Liab. Litig.*, 2018 WL 4613941, at *5 (E.D. La. Sept. 26, 2018) (finding notice of fee motion reasonable under Rule 23(h)(1) where settlement agreement informed class members that motion would be heard at fairness hearing, motion was filed publicly nearly two months before hearing, "and the Court heard argument from the parties during a hearing that was open to the public and all Class Members"); *Vasco v. Power Home Remodeling Grp. LLC*, 2016 WL 5930876, at *9 (E.D. Pa. Oct. 12, 2016) (finding no authority "requiring posting of a fee motion on a website"); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 7575004, at *2 (N.D. Cal. Dec. 27, 2011) (noting that Rule 23(h) does not "require[] a motion for attorneys' fees to be posted on a class action website" and overruling objection where "Class Members had multiple avenues in addition to the Court's docket and the class action website to obtain information about the proposed settlements and the Fee Motion. The Court-approved class notices not only mention the website, but also identify the Claims Administrator's toll-free telephone number and address, as well as the names and addresses of the Co–Lead Class Counsel."); *cf. Cassese v. Williams*, 503 F. App'x 55, 58 (2d Cir. 2012) (in a case where objections were due *before* fee motion, rejecting challenge to notice under Rule 23(h)(1) because, after fee motion was filed, "[a]ny objectors then had ***two weeks*** to crystallize

their objections and request further information before attending the fairness hearing" (emphasis added)).

## CONCLUSION

For the foregoing reasons, Plaintiffs' Counsel respectfully request that the Court (i) award attorney's fees in the amount of $8,250,000; (ii) award payment of Plaintiffs' Counsel's litigation expenses in the amount of $686,492.60; and (iii) award a $5,000 service award to each Class Representative, for a total of $15,000 in service awards.

Dated: August 14, 2025

Respectfully submitted,

/s/ Christopher M. Burke
Christopher M. Burke (*pro hac vice*)
cburke@burke.law
**BURKE LLP**
402 West Broadway, Suite 1890
San Diego, CA 92101
Tel: (619) 369-8244

Chad E. Bell (*pro hac vice*)
cbell@koreintillery.com
**KOREIN TILLERY P.C.**
205 North Michigan Avenue, Suite 1950
Chicago, IL 60601
Tel: (312) 641-9750

/s/ Yavar Bathaee
Yavar Bathaee (NY 4703443)*
yavar@bathaeedunne.com
Andrew Wolinsky (NY 4892196)
awolinsky@bathaeedunne.com
**BATHAEE DUNNE LLP**
445 Park Avenue, 9th Floor
New York, NY 10022
Tel: (332) 322-8835

Brian J. Dunne (CA 275689)
bdunne@bathaeedunne.com
Edward M. Grauman (TX 24081931)
egrauman@bathaeedunne.com
**BATHAEE DUNNE LLP**
901 South MoPac Expressway
Barton Oaks Plaza I, Suite 300
Austin, TX 78746
Tel: (213) 462-2772

Elizabeth L. DeRieux (TX 05770585)
ederieux@capshawlaw.com
S. Calvin Capshaw (TX 03783900)
ccapshaw@capshawlaw.com
**CAPSHAW DERIEUX LLP**
114 E. Commerce
Gladewater, TX 75647
Tel: (903) 236-9800
Fax: (903) 236-8787

*Attorneys for Plaintiffs*

17

## <u>CERTIFICATE OF SERVICE</u>

I certify that on August 14, 2025, the above document was served on counsel of record for all parties via the CM/ECF system.

*/s/ Yavar Bathaee*