# United States District Court
## EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| JONATHAN CORRENTE, et al., | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | Civil Action No. 4:22-cv-470 |
| | § | Judge Mazzant |
| THE CHARLES SCHWAB | § | |
| CORPORATION, | § | |
| | § | |
| *Defendant.* | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before the Court is Plaintiffs' Motion for Final Approval of Class Action Settlement (Dkt. #197). Having considered the Motion, the relevant pleadings, and the applicable law, the Court finds that the Motion should be **GRANTED**.

## BACKGROUND

This is a class action lawsuit arising from the merger between Charles Schwab ("Schwab" or "Defendant") and TD Ameritrade Holding Corporation ("TD Ameritrade") (the "Merger"). On June 2, 2022, Plaintiffs Jonathan Corrente, Charles Shaw, and Leo Williams (collectively, "Plaintiffs"), each individually and on behalf of approximately twenty-five million members (the "Settlement Class"), filed this action challenging the Merger under Section 7 of the Clayton Act, seeking monetary damages and injunctive relief (Dkt. #1). More specifically, Plaintiffs allege that the Merger substantially lessened competition in an asserted Retail Order Flow Market ("ROFM"), which has harmed Schwab brokerage customers in the form of reduced price improvement on trades (Dkt. #1 at ¶ 35).

Prior to reaching this class action settlement, the parties meaningfully participated in the relevant pretrial procedures to prepare for a trial on the merits. On August 29, 2022, Defendant

filed a 12(b)(6) motion to dismiss arguing that Plaintiffs failed to establish a prima facie Section 7 case (Dkt. #18).[1] On December 1, 2022, Plaintiffs served their First Set of Interrogatories and Request for Admissions on Defendants (Dkt. #197-2 at ¶ 9). On March 15, 2023, Plaintiffs deposed Defendant through its corporate representative (Dkt. #197-2 at ¶ 9). Plaintiffs also deposed four other Schwab and TD Ameritrade executives they believed had knowledge relevant to the anticompetitive conduct at issue (Dkt. #197-2 at ¶ 9). In addition, before reaching this settlement, the parties also engaged in extensive discovery; for example, Defendant produced 218,319 documents and 6.5 terabytes of financial data to Plaintiffs and Plaintiffs filed two motions to compel seeking the production of certain documents that Defendant initially withheld (Dkt. #197-2 at ¶¶ 9–11).

On July 9, 2024, the parties started the process of working towards settling this class action lawsuit (Dkt. #197-2 at ¶ 12). Specifically, on this date, the parties held a full-day, in-person mediation with the Honorable Nancy F. Atlas (Dkt. #197-2 at ¶ 12). During the mediation, the parties were able to devise an initial framework for the settlement of this action and agreed that they would continue to engage in further negotiations following the mediation (Dkt. #197-2 at ¶ 12). On July 24, 2024, the parties filed a Joint Motion to Appoint Mediator and Stay Deadlines (Dkt. #140). The parties' joint motion asked the Court to formally appoint Judge Atlas to serve as the mediator to continue to assist with the negotiations regarding a potential resolution and also requested that the Court stay certain upcoming case deadlines (Dkt. #140 at p. 2). On July 29, 2024, the Court granted the motion which continued the class certification and the initial associated expert reports for sixty days and stayed all other case deadlines (Dkt. #141 at p. 1).

---

[1]  Defendant's Motion to Dismiss was denied by the Court on February 24, 2023.

Additionally, the Court requested that the parties provide a joint report on the status of the mediation by August 23, 2024 (Dkt. #141 at p. 1).

On August 23, 2024, pursuant to the Court's order, the parties filed a Joint Report on Status of Mediation (Dkt. #142). In the joint status report, the parties indicated that although they had not yet reached a settlement, they made significant progress and thus requested another opportunity to provide the Court with a second joint report on September 30, 2024 (Dkt. #142 at p. 2). On September 27, 2024, the parties filed their second Joint Report on Status of Mediation which informed the Court that they reached a settlement agreement in principle which had been reduced to a signed term sheet (Dkt. #145 at p. 2). On October 1, 2024, the Court stayed all deadlines in the case to allow the parties to continue their settlement negotiations (Dkt. #146). The parties continued to engage in negotiations for two more months, during which time the parties provided joint status reports to the Court on the progress of finalizing the class action settlement (*See* Dkt. #147; Dkt. #148). On December 12, 2024, the parties notified the Court that they had executed the Stipulation and Agreement of Settlement (the "Settlement") which they would soon submit to the Court for preliminary approval (Dkt. #149 at p. 2).

On February 4, 2025, Plaintiffs filed their Unopposed Motion for Preliminary Approval of Class Action Settlement (Dkt. #154).[2] On February 19, 2025, the Court granted Plaintiffs' motion and preliminarily approved the Settlement, certified the Settlement Class, appointed Yavar Bathaee and Christopher M. Burke as co-lead class counsel, and appointed Plaintiffs as the class

---

[2] The terms of the Settlement include, among other things, implementation of an antitrust compliance program, a release of non-monetary claims against Defendant, that Defendant shall pay the sum of $50 USD to each Plaintiff to settle and release Plaintiffs individual damages claims, that Co-Lead Counsel will submit an application to the Court for an award of attorney's fees and expenses, and that Co-Lead Counsel will submit an application to the Court for a service award of no more than $5,000 per Plaintiff for the service undertaken on behalf of the Settlement Class (Dkt. #197-1 at pp. 11, 14, 20–21).

representatives (Dkt. #157 at pp. 3–4). Additionally, the Court ordered that the Settlement Class be notified and scheduled a fairness hearing for August 28, 2025 (Dkt. #157 at pp. 4–5). After notice was sent to the members of the Settlement Class, the Court received approximately seventy objections from class members regarding the proposed class action settlement (the "Objectors"). Generally, the Objectors focused on four main issues: (1) Plaintiffs lacked Article III standing to seek the injunctive relief provided for in the Settlement; (2) the Settlement Class did not receive adequate notice of the Settlement; (3) the Settlement provided no monetary benefit to the class; and (4) the class counsel's attorney's fees are disproportionate to the class benefit. On August 28, 2025, the Court held the fairness hearing at which counsel for both parties appeared and argued in favor of the proposed Settlement. However, at the hearing, despite notice, no Objectors appeared. On July 7, 2025, Plaintiffs filed this Motion for Final Approval of Class Action Settlement arguing that the Settlement meets the Rule 23(e) requirements and thus should be approved and the case dismissed with prejudice (Dkt. #197).

## LEGAL STANDARD

Federal Rule of Civil Procedure 23(e) provides that a class action "may be settled, voluntarily dismissed, or compromised only with the court's approval." FED. R. CIV. P. 23(e). Under Rule 23(e) the Court may grant final approval of the class action settlement "only after a hearing and only on a finding that [the settlement] is fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(2) (citation modified); *see also Jones v. Singing River Health Servs. Found.*, 865 F.3d 285, 293 (5th Cir. 2017) (stating that "[u]nder Rule 23, a court must hold a hearing to consider whether a proposed class action settlement is fair, reasonable, and adequate."). Additionally, before granting final approval of a class action settlement under Rule 23(e), the Court must also certify the class,

appear class counsel, and conclude the notice requirements have been satisfied. *See Vaughn v. Am. Honda Motor. Co.*, 627 F. Supp. 2d 738, 744 (E.D. Tex. 2007).

## ANALYSIS

Plaintiffs argue that the proposed class action settlement meets the standard for final approval and thus request that the Court (1) certify the class for settlement purposes; (2) appoint Plaintiffs as class representatives; (3) appoint Yavar Bathaee of Bathaee Dunne LLP and Chrisopher M. Burke of Burks LLP as co-lead counsel; (4) approve the Settlement; and (5) dismiss this action on the merits and with prejudice (Dkt. #197 at p. 37).[3] The Court addresses each request in turn.

### I.     Article III Standing

Before proceeding to the class certification and settlement approval analysis, the Court begins, as it must, with standing. *See Caples v. U.S. Foodservice Inc.*, 444 F. App'x. 49, 52 (5th Cir. 2011) ("We have recognized that standing is essential to the exercise of jurisdiction and is a threshold questions that determines the power of the court to entertain the suit.") (citation omitted). For the Court to approve a proposed class action settlement it must determine whether Article III standing exists. *See Frank v. Gaos*, 586 U.S. 485, 492 (2019) (explaining that the court's obligation to assure itself of litigants' standing under Article III "extends to court approval of proposed class action settlements."). To determine if Article III standing exists in a class action suit, the Court must first decide which class members must have Article III standing. The Fifth Circuit "has not yet decided whether standing must be proven for unnamed class members, in

---

[3] In addition to the abovementioned requests, Plaintiffs also request that the Court grant Plaintiffs' simultaneously filed Motion for an Award of Attorney's Fees, Litigation Expenses, and Service Awards (Dkt. #199). The Court has decided to address this request in a separate order which will be docketed subsequently to this Order.

addition to the class representative." *Flecha v. Medicredit, Inc.*, 946 F.3d 762, 768 (5th Cir. 2020) (citation omitted). However, in making this determination other circuits have followed two analytical approaches. *See In re Deepwater Horizon*, 739 F.3d 790, 800 (5th Cir. 2014) [hereinafter *Deepwater Horizon II*].

The first approach to evaluating standing for purposes of class certification and settlement approval under Rule 23 was initially endorsed by three Justices concurring in the Supreme Court's decision in *Lewis v. Casey*, 518 U.S. 343, 358 (1996) and later adopted by the Seventh Circuit in *Kohen v. Pacific Investment Management Co.*, 571 F.3d 672 (7th Cir. 2009) (the "*Kohen* test").[4] *See Deepwater Horizon II*, 739 F.3d at 800. Under the *Kohen* test, "courts look to whether the *named plaintiffs* or *class representatives* have standing, ignoring the absent class members entirely." *In re Deepwater Horizon*, 785 F.3d 1003, 1019 (5th Cir. 2015) (alteration in original) [hereinafter *Deepwater Horizon III*]. The second approach—which has been adopted by several circuits with the most common formulation of this approach found in the Second Circuit's decision in *Denney v. Deutsche Bank AG*, 443 F.3d 253, 263–64 (2d Cir. 2006)—does not "necessarily ignore[] absent class members" (the "*Denney* test"). *Deepwater Horizon II*, 739 F.3d at 801.[5] Under the *Denney* test, "courts look at the *class definition* to ensure that absent class members possess Article III standing." *Deepwater Horizon III*, 785 F.3d at 1019 (alteration in original). Importantly, however, "this approach does not contemplate scrutinizing or weighing any evidence of absent class members'

---

[4] In addition to the Seventh Circuit, the *Kohen* test for determining standing during class certification has been also followed by the Ninth and Third Circuits. *See Deepwater Horizon II*, 739 F.3d at 800. Additionally, the "Tenth Circuit has adopted this test at least in class actions seeking prospective injunctive relief and arguably also in class actions for damages as well." *Id.*

[5] In addition to the Second Circuit, the "Eighth Circuit has also applied [the *Denney*] test, as have the Seventh, and Ninth Circuits, despite both these latter circuits' statements in other decisions that absent class members are irrelevant to the Article III inquiry." *Deepwater Horizon II*, 739 F.3d at 801 (citation modified).

standing or lack of standing during the Rule 23 stage." *Deepwater Horizon II*, 739 F.3d at 801. Instead, under the *Denney* test, to satisfy the standing requirement, "the class must . . . be defined in such a way that anyone within it would have standing." *Id.* (citation modified). After determining which class members must have standing, the Court must determine whether the elements of Article III standing are satisfied: "(1) an injury [that is] concrete, particularized, and actual or imminent; (2) fairly traceable to the challenged action; and (3) redressable by a favorable ruling." *Clapper v. Amnesty Int'l. USA*, 568 U.S. 398, 409 (2013).

Plaintiffs argue that the Court should approve the class action settlement because Article III standing exists (Dkt. #197 at p. 14). Plaintiffs contend that since the parties are settling at the class-certification stage the Court need only consider whether the named plaintiffs have alleged Article III standing to make this determination (Dkt. #197 at p. 15). Applying this approach, all three Plaintiffs argue that each of them have Article III standing to seek the injunctive relief provided for in the Settlement (Dkt. #197 at pp. 14–15). More specifically, Plaintiffs contend that as current Schwab brokerage customers they each have alleged an imminent in fact, ongoing injury—i.e., underpayment from order flow in the form of reduced payments (Dkt. #197 at p. 15). And Plaintiffs' threatened injury would be redressed by the injunctive relief in the Settlement— i.e., compliance program targets the areas of Schwab's business that have affected price improvements (Dkt. #197 at p. 15). The Court agrees with Plaintiffs that Article III standing exists in this action. However, Plaintiffs' analysis—which focuses only on the three named Plaintiffs when analyzing the standing requirement—does not fully reflect the law of this Circuit. Nevertheless, as discussed in more detail below, the Article III standing requirement is still satisfied.

Here, the Court finds that Article III standing exists in this action because both the three named Plaintiffs and the absent class members contemplated by the class definition include only persons who can allege causation and injury in accordance with Article III. In other words, the Settlement satisfies the standing requirement under both the *Kohen* and the *Denney* test. Applying the *Kohen* test, which focuses on the standing of the named plaintiffs or class representatives only, the Court finds class standing. More specifically, each of the three named Plaintiffs satisfy the elements of standing by identifying an injury in fact—i.e., underpayment of their order flow, in the form of reduced price improvement on their trades—which is traceable to the Merger and susceptible to redress by the injunctive relief provided by the Settlement. Under the *Kohen* test, this is the end of the inquiry. *See Cole v. General Motors Corp.*, 484 F.3d 717, 723 (5th Cir. 2007) (holding that for purposes of Article III standing of named plaintiffs during class certification under Rule 23 it is "sufficient for standing purposes that the plaintiffs seek recovery for an economic harm that they *allege* they have suffered."); *see also Deepwater Horizon II*, 739 F.3d at 803 (explaining that "[a]t the Rule 23, *Cole* provides that a federal court must assume *arguendo* the merits of each named plaintiff's legal claims") (citation modified). Applying the *Denney* test to the definition of the class proposed for certification, the Court comes to the same conclusion. The Class Definition is set forth in section 1.31 of the Settlement with Schwab. Under the plain terms of the Class Definition, a "person, entity, or corporation" is included in the Settlement Class only if they are "current U.S. brokerage customers of Schwab or any of its affiliates, including customers who previously held accounts at Ameritrade" (Dkt. #197-1 at p. 9). Thus, by limiting the Settlement Class to only "current U.S. brokerage customers of Schwab or any of its affiliates" the class includes only persons, entities, and corporations that have suffered the same injury in fact as the three named

Plaintiffs which is traceable to the Merger and susceptible to redress by the injunctive relief provided by the Settlement. Accordingly, the Settlement Class does not include any members who lack any causally related injury. This ends the Article III inquiry under the *Denney* test, which does "not require that each member of the class submit evidence of personal standing so long as ever class member contemplated by the class definition can *allege* standing." *Deepwater Horizon II*, 739 F.3d at 804 (citation modified).

## II. Class Certification

In deciding whether to certify a proposed class, a court must determine whether the party seeking class certification has met "the requirements of Federal Rule of Civil Procedure 23(a): numerosity, commonality, typicality, and adequacy of representation." *See Braidwood Mgmt., Inc. v. Equal Emp. Opportunity Comm'n*, 70 F.4th 914, 933 (5th Cir. 2023) (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 394 (2011)). Additionally, a plaintiff must show that their proposed class "satisfy[ies] at least one of the three requirements listed in Rule 23(b)." *Id.* (citation modified). However, where, as here, a court is confronted with a request for settlement-only class certification, it "need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619 (1997) (citing FED. R. CIV. P. 23(b)(3)(D)). In addition to the class certification requirements above, "the Fifth Circuit, has also articulated an ascertainability requirement for Rule 23 actions." *Braidwood Mgmt., Inc.*, 70 F.4th at 933; *see also John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007) ("The existence of an ascertainable class of persons to be represented by the proposed class representative is an implied prerequisite of Federal Rule of Civil Procedure 23.").

Plaintiffs contend that the proposed Settlement Class satisfies the ascertainability requirement, the four threshold requirements of Rule 23(a), and the requirements of Rule 23(b)(2)

(Dkt. #197 at pp. 16–19). The Court addresses each argument in turn and, as explained in more detail below, the Court agrees with Plaintiffs.

### A.     Ascertainability Requirement

For a proposed class to satisfy the Fifth Circuit's ascertainability requirement, the class must be "adequately defined and clearly ascertainable." *Frey v. First Nat. Bank Sw.*, 602 F. App'x 164, 168 (5th Cir. 2015). To be ascertainable, the class "must be susceptible to a precise definition to properly identify those entitled to relief, those bound by the judgment, and those entitled to notice." *A.A. ex rel. P.A. v. Phillips*, 2023 WL 334010, at *2 (5th Cir. Jan. 20, 2023) (citation modified). However, "the district court need not know the identity of each class member before certification, but it needs to be able to identify class members at some stage of the proceeding." *Frey*, 602 F. App'x at 168. Ultimately, "the touchstone of ascertainability is whether the class is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *Earl v. Boeing Co.*, 339 F.R.D. 391, 422 (E.D. Tex. 2021), *rev'd on other grounds*, 53 F.4th 897 (5th Cir. 2022) (citing *Brecher v. Republic of Arg.*, 806 F.3d 22, 24 (2d Cir. 2015)).

Plaintiffs argue that the proposed Settlement Class satisfies the Fifth Circuit's ascertainability requirement  (Dkt. #197 at p. 16). Specifically, Plaintiffs argue that the class is ascertainable because it is clearly defined so that it would not be difficult to identify whether someone is in the class (Dkt. #197 at p. 16). Indeed, Plaintiffs contend  that the members of the Settlement Class can be identified by using objective criteria—i.e., status as a current U.S. brokerage customer of Schwab or its affiliated entities (Dkt. #197 at p. 16). And, as current customer, the members of the Settlement Class are also readily identifiable through Schwab's customer records and reachable through whatever means Schwab uses to contact customers

(Dkt. #197 at p. 16). Thus, according to Plaintiffs, this is not the sort of "amorphous" or "imprecise" class definition that might defeat ascertainability (Dkt. #197 at p. 16). The Court agrees with Plaintiffs.

Here, the Court finds that the Settlement Class satisfies the ascertainability requirement. The class in this case is defined as "persons, entities, and corporations who are current U.S. brokerage customers of Schwab or any of its affiliates, including customers who previously held accounts at TD Ameritrade" (Dkt. #197-1 at p. 7). The class definition here is clear and definite. More specifically, the class includes an estimated twenty-five million identifiable persons, entities, or corporations who are "current U.S. brokerage customers of Schwab or any of its affiliates" as of a specified date set forth in the Settlement (Dkt. #197-1 at pp. 24–26 (defining the "Effective Date" of the Settlement)). Further, as current customers, the class members may be identified from Schwab's customer record database. *See Frey*, 602 F. App'x at 168 (finding that the class is sufficiently ascertainable where the class members "may be identified from account numbers and bank identification numbers associated with the ATM transaction" at issue). Thus, this is not the type of "amorphous" or "imprecise" class definition that Fifth Circuit has found to defeat ascertainability. *See DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970) (finding that a class made up of "residents of this State active in a peace movement does not constitute an adequately defined or clearly ascertainable class contemplated by Rule 23."); *see also Braidwood Mgmt., Inc.*, 70 4th at 935 (explaining that class definitions which depend on class members' state of mind or are impermissibly vague in practice are the types of classes courts find fail the ascertainability requirement). Indeed, the Settlement Class is sufficiently definite so that it is administratively

feasible for the Court to identify whether a particular individual is a member of the Settlement Class. Accordingly, the Court finds that the ascertainability requirement is satisfied.

## B. Rule 23(a) Requirements

Federal Rule of Civil Procedure 23(a) provides that "one or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all parties is impractical; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claim and defenses of the class; and (4) the representative parties will fairly and adequately protect the interest of the class." FED. R. CIV. P. 23(a)(1)–(4). Put simply, "the requirements of Rule 23(a) are: numerosity, commonality, typicality, and adequacy of representation." *Braidwood Mgmt., Inc.*, 70 F.4th at 933. The Court addresses each Rule 23(a) requirement in turn.

### 1. Numerosity

Rule 23(a)(1) of the Federal Rules of Civil Procedure provides that certification is only appropriate where "the class is so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). To satisfy the numerosity requirement, "a plaintiff must ordinarily demonstrate some evidence or reasonable estimate of the number of purported class members." *Ibe v. Jones*, 836 F.3d 516, 528 (5th Cir. 2016) (citation modified). The Fifth Circuit, however, has repeatedly recognized that "the number of members in a proposed class is not determinative of whether joinder is impracticable." *Id.*; *see also In re TWL Corp.*, 712 F.3d 886, 894 (5th Cir. 2013) (explaining that when analyzing the numerosity requirement, the Fifth Circuit has counseled that "courts must not focus on sheer numbers alone."). Rather, assessing numerosity also entails a consideration of "the geographical dispersion of the class, the ease with which class members may be identified, the

nature of the action, and the size of each plaintiff's claim." *In re TWL Corp.*, 712 F.3d at 894 (citation omitted).

Plaintiffs argue that the proposed Settlement Class satisfies the numerosity requirement (Dkt. #197 at p. 16). In support, Plaintiffs emphasize that the proposed Settlement Class consists of approximately twenty-five million members, which they claim, under Fifth Circuit law, is more than sufficient to satisfy the numerosity requirement (Dkt. #197 at p. 16–17). The Court agrees with Plaintiffs. However, as discussed below, Plaintiffs' basis—which relies exclusively on the sheer number of class members to establish that "the class is so numerous that joinder of all members is impracticable—conflicts with well-established Fifth Circuit precedent. *See Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999) (stating that "the number of members in a proposed class is *not determinative* of whether joinder is impracticable") (emphasis added). Nevertheless, the numerosity requirement is still satisfied in this case.

Here, the Court finds that the proposed Settlement Class satisfies the numerosity requirement for three reasons. First, the sheer size of the class, which consists of approximately twenty-five million members, will make joinder of all members impracticable. *See Mullen*, 186 F.3d at 624 ("the size of the class in this case—100 to 150 members—is within the range that generally satisfies the numerosity requirement."); *see also Martinez v. Anderson Cnty.*, 2023 WL 2672837, at *3 (E.D. Tex. Mar. 1, 2023) (holding that a class of 300 members satisfies the numerosity requirement because "[t]he Fifth Circuit has typically found the numerosity prerequisite is met when the class has 100–150 members.") (citation modified). Second, given that this class action is against one of the largest brokerage firms in the United States, Charles Schwab, the proposed Settlement Class will consist of members spread all throughout the nation, making joinder of all

members impracticable. *See Miller v. Grand Canyon Univ., Inc.*, 540 F. Supp. 625, 633 (N.D. Tex. 2021) (finding that a proposed class of tens of thousands of members spread throughout the nation makes joinder impracticable, thus satisfying the numerosity requirement). Third, the nature of this case—which involves complicated antitrust claims that are likely to continue for years, at significant costs to the parties—will likely render most of the class members individual claims unprofitable, thus making joinder impracticable.[6] *See Bywaters v. United States*, 196 F.R.D. 458, 466 (E.D. Tex. 2000) (finding that the numerosity requirement was satisfied where "the proposed class members would probably not pursue their claims individually due to disproportionate litigation expense in relation to the actual size of their takings claims."). Accordingly, the Court finds that the proposed class satisfies the requirements of numerosity under Rule 23(a)(1).

### 2. Commonality

Rule 23(a)(2) of the Federal Rules of Civil Procedure requires that there must be "questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). The Supreme Court has explained that "commonality requires more than a shared cause of action or common allegations of fact—it requires a common legal contention capable of class-wide resolution." *Flecha v. Medicredit, Inc.*, 946 F.3d 762, 767 (5th Cir. 2020) (citing *Wal-Mart Stores, Inc.*, 564 U.S. at 349–50 (2011)). "Dissimilarities among class members should be considered to determine whether a common question is truly presented." *Ibe*, 836 F.3d at 528 (citing *Wal-Mart Stores, Inc.*, 564 U.S. at 359).

---

[6] In addition, at the fairness hearing, counsel for both parties explained that there are a large number of members within the class that have very small damages claims—i.e., fraction of a penny, third of a cent, or fifth of a cent—making many of their individual claims unprofitable. On the other hand, the prospective relief offered to the class will automatically increase the amount of money in the pocket of the class members (*See* Dkt. #197 at p. 27 (explaining that the "compliance program could yield price improvement gains of approximately 1.8% to 2.4% translating to $10.7 million to $14.5 million in monthly savings—or roughly $128.4 million to $174 million annually—for Schwab's retail customers.")). The Court agrees. Here, the Court finds that it is not feasible for most of the proposed class members to bring individual actions since the significant cost of the litigation would outweigh any recovery they could receive.

However, "even a single common question of law or fact can suffice to establish commonality, so long as resolution of that question will resolve an issue that is central to the validity of each one of the class member's claims in one stroke." *Id.* at 528 (citing *Wal-Mart Stores, Inc.*, 564 U.S. at 350, 359) (citation modified).

Plaintiffs argue that the commonality requirement is satisfied since there are several questions of law and fact that are capable of class wide resolution, including: (1) whether the U.S. ROFM is a relevant antitrust market; (2) whether the effect of the Merger "may be to substantially lessen competition" in the ROFM under Section 7 of the Clayton Act; and (3) whether there is a "threatened" loss or damage from the Merger entitling Plaintiffs and the class members to injunctive relief under Section 16 of the Clayton Act (Dkt. #197 at p. 17). The Court agrees with Plaintiffs.

Here, the Court finds that the commonality requirement is satisfied because each of the three abovementioned common questions of law and fact, taken together or standing alone, satisfy the commonality requirement. *See Deepwater Horizon II*, 739 F.3d at 811–12 (finding that the commonality requirement is satisfied where there are numerous factual and legal issues central to the validity of all class members' claims because "even a single common question will do under *Wal-Mart*."). More specifically, the Settlement Class members claims all depend on the single common question of whether the Merger, which harmed all the class members in the form of reduced price improvement on trades, violated Section 7 of the Clayton Act. As a result, if any one of these three common questions of law and fact are answered in the affirmative, they would establish Defendant's liability. *See Illumina, Inc. v. FTC*, 88 F.4th 1016, 1047–48 (5th Cir. 2023) (explaining that to prove liability under Section 7 of the Clayton Act the plaintiff must "establish a

prima facie case that the merger is likely to substantially lessen competition in the relevant market.") (citing 15 U.S.C. § 18); *see also* 15 U.S.C. § 16 (providing that "any person, firm, corporation, or association shall be entitled to sue for and have injunctive relief . . . against *threatened loss or damage* by a violation of the antitrust laws, including sections 13, 14, 18, and 19.") (emphasis added). Because liability would be established, these common questions are apt to drive the litigation's resolution. *See Wal-Mart Stores, Inc.*, 564 U.S. at 350 (explaining that what matters for commonality is that common questions "generate common answers apt to drive the resolution of the litigation."); *see also Hirsch v. USHealth Advisors, LLC*, 337 F.R.D. 118, 129 (N.D. Tex. 2020) (finding that plaintiff's three common questions of law and fact failed the commonality requirement because "[e]ven if the questions are answered in the affirmative, they do not establish Defendants' liability."). Accordingly, the Court finds that the proposed class satisfies the requirements of commonality under Rule 23(a)(2).

### 3.      Typicality

Rule 23(a)(3) of the Federal Rules of Civil Procedure requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). To demonstrate typicality, "the parties seeking certification need not show a complete identity of claims." *Ward v. Hellerstedt*, 753 F. App'x 236, 246–47 (5th Cir. 2018). Rather, "the critical inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class." *Id.* at 247. The typicality inquiry, however, "is not concerned so much with the strengths of the named and unnamed plaintiff's cases as with the similarity of legal and remedial theories behind their claims." *Id.* (citation omitted). Thus, "if the claims of the named plaintiffs and putative class members arise from a similar course of conduct and share the same legal theory, typicality will not be defeated by factual differences." *Id.*

Plaintiffs argue that the typicality requirement is satisfied because the claims of Plaintiffs and the members of the proposed Settlement Class arise from the same course of conduct and are based on the same legal theory (Dkt. #197 at p. 18). Specifically, Plaintiffs contend that the Merger will substantially lessen competition in the ROFM, resulting in reduced price improvement on future trades for all or most Schwab brokerage customers (Dkt. #197 at p. 18). The Court agrees with Plaintiffs.

Here, the Court finds that Plaintiffs have satisfied the typicality requirement. Indeed, both Plaintiffs and the members of the proposed Settlement Class's claims arise from the same events and are based on the same legal theories. First, Plaintiffs and the members of the proposed Settlement Class complain of the exact same anticompetitive conduct by Defendant. That is, the Merger substantially lessened competition in an asserted ROFM (Dkt. #1 at ¶¶ 2, 35). Additionally, Plaintiffs and the proposed Settlement Class members also allege that Defendant's anticompetitive conduct caused each of them to suffer harm in the form of reduced price improvement on trades through their brokerage accounts (Dkt. #1 at ¶ 3). Second, the claims alleged by Plaintiffs, which would include the proposed Settlement Class, are based on the same legal theory—violation of Section 7 of the Clayton Act (Dkt. #1 at ¶¶ 482–88). Thus, there is no question that Plaintiffs and the Settlement Class members' claims "arise from a similar course of conduct and share the same legal theory." *See Ward*, 753 F. App'x at 247; *see also Corley v. Entergy Corp.*, 220 F.R.D. 478, 482 (E.D. Tex. Apr. 14, 2004) (finding typicality where "[p]laintiffs bring the same claims that absent class members would bring."). Accordingly, the Court finds that  the requirements of typicality under Rule 23(a)(3) are satisfied.

### 4. Adequacy of Representation

Rule 23(a)(4) of the Federal Rules of Civil Procedure requires that "the representatives parties will fairly and adequately protect the interest of the class." FED. R. CIV. P. 23(a)(4). The Fifth Circuit has created three factors for a court to consider when adjudging the adequacy of class representatives: "(1) the zeal and competence of the representatives' counsel; (2) the willingness and ability of the representatives to take an active role in and control the litigation and to protect the interests of absentees; and (3) the risks of conflicts of interests between the named plaintiffs and the class they seek to represent." *Angell v. GEICO Advantage Ins. Co.*, 67 F.4th 727, 737 (5th Cir. 2023) (citation modified); *see also Jones*, 865 F.3d at 294 (explaining that Rule 23(a)(4) involves an examination of both the representatives' counsel and the representatives themselves). In other words, adequacy "requires the class representative to possess a sufficient level of knowledge and understanding to be capable of controlling or prosecuting the litigation." *Ibe*, 836 F.3d at 529 (citation modified).

Plaintiffs argue that the three factors weigh in favor of finding that the adequacy requirement is satisfied. First, Plaintiffs contend that their proposed counsel is competent and well qualified to represent the Settlement Class (Dkt. #197 at p. 18). In support, Plaintiffs emphasize that their counsel each possesses significant experience prosecuting complex class actions, including antitrust class actions (Dkt. #197 at p. 18). Second, Plaintiffs contend that they are adequate class representatives for the Settlement Class (Dkt. #197 at p. 18). Plaintiffs argue that they have taken an active role in the litigation since the inception of this lawsuit including, among other things, cooperating in discovery and approving the terms of the Settlement (Dkt. #197 at p. 18). Additionally, Plaintiffs argue that no conflicts of interest exist between Plaintiffs and the Settlement Class because their interests are identical to those of the proposed class (Dkt. #197 at

p. 18). More specifically, as current Schwab customers, Plaintiffs have the same interest as the rest of the class in establishing Defendant's liability and will benefit from the proposed injunctive relief in the same way as the other class members (Dkt. #197 at p. 18).[7] The Court agrees with Plaintiffs.

Here, the Court finds that Plaintiffs have satisfied the adequacy requirement. The Court will start with the first consideration regarding adequacy: the zeal and competence of the proposed class counsel. Plaintiffs have put forth sufficient evidence that demonstrates that Plaintiffs' Counsel have extensive experience litigating complex class actions, including antitrust class actions (*See* Dkt. #197-3 at ¶¶ 24–34 (detailing the qualifications of Plaintiffs' Counsel—Yavar Bathaee and Christopher Burke—relating to their experience as lead or co-lead counsel in complex class action cases)). Thus, Plaintiffs' Counsel will fairly and adequately protect the interests of the Settlement Class. *See Mullen*, 186 F.3d at p. 625–26 (affirming the district court's finding that the representatives counsel is adequate under Rule 23(a)(4) where their attorneys "have extensive experience litigating class action and Jones Act cases."); *see also Bywaters v. United States*, 196 F.R.D. 458, 468 (E.D. Tex. 2000) (finding plaintiffs proposed counsel adequate where they "have years of experience litigating class actions in general, and class actions specifically concerning railroad right-of-way ownership issues."). The Court next turns to the second consideration regarding adequacy: the willingness and ability of the representatives to take an active role in and control the litigation and the risk of conflicts of interest between Plaintiffs and the Settlement Class. Based on the evidence presented, there is nothing that indicates that the Settlement Class members will be inadequately represented by Plaintiffs. Indeed, there is no possibility of any conflicts of

---

[7] Plaintiffs also assert that no conflict of interest is created by the fact that they will each receive $50 from Defendant in return for releasing their individual damages claims since any damages claims of the absent class members are not being released under the Settlement (Dkt. #197 at p. 18). Thus, there is no concern that Plaintiffs have sacrificed the right of the absent class members for their own benefit (Dkt. #197 at p. 18).

interest arising because, as current Schwab brokerage customers, Plaintiffs interests are identical to the members of the Settlement Class. *See Loc. 731 I.B. of T. Excavators & Pavers Pension Tr. Fund v. Diodes, Inc.*, 2023 WL 12334835, at *3 (E.D. Tex. June 14, 2013) (finding the class representatives adequate where their interests are aligned with the class because they have allegedly suffered from the same harm caused by the defendant); *see also Whittington v. United States*, 240 F.R.D. 344, 351 (S.D. Tex. 2006) (finding the class representative adequate where the court anticipates "no antagonism within the proposed class" since the class representatives' claims are typical of those belonging to the unnamed class). Thus, Plaintiffs will fairly and adequately protect the interest of the Settlement Class. Accordingly, the Court finds that the adequacy requirement under Rule 23(a)(4) is satisfied.

### C.    Rule 23(b)(2) Requirements

Having found that Plaintiffs satisfied the requirements of Rule 23(a), the Court must now determine whether the proposed Settlement Class satisfies at least one of the requirements listed in Rule 23(b). Plaintiffs seek certification of an injunctive-relief class under Rule 23(b)(2) of the Federal Rules of Civil Procedure (Dkt. #197 at p. 19). Rule 23(b)(2) provides that a class action may be maintained if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." FED. R. CIV. P. 23(b)(2). In contrast to the commonality requirement, which looks for common issues, "the Rule 23(b)(2) analysis requires common behavior by the defendant towards the class." *In re Rodriguez*, 695 F.3d 360, 365 (5th Cir. 2012) (citation omitted). The key to the (b)(2) class is "the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal-Mart Stores, Inc.*,

564 U.S. at 360. In other words, "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Id*. However, "it does not authorize class certification when each individual class member would be entitled to *different* injunction or declaratory judgement against the defendant." *Id*. Similarly, "it does not authorize class certification when each class member would be entitled to an individualized award of money damages." *Id*. at 360–61. Thus, Rule 23(b) certification is available if three requirements are satisfied: "(1) class members must have been harmed in essentially the same way; (2) injunctive relief must predominate over monetary damage claims; and (3) the injunctive relief sought must be specific." *Yates v. Collier*, 868 F.3d 354, 366 (5th Cir. 2017) (citation omitted). The specificity element "requires plaintiffs to give content to the injunctive relief they seek so that final injunctive relief may be crafted to describe in reasonable detail the acts required." *Id*. at 367.

Plaintiffs argue that certification under Rule 23(b)(2) is warranted because each of the Rule 23(b)(2) requirements is met (*See* Dkt. #197 at p. 19). The Court agrees with Plaintiffs. Here, the Court finds that the proposed Settlement Class easily meets the requirements for Rule 23(b)(2) certification. First, all members of the Settlement Class have been harmed in the exact same way. There is no question that Defendant has engaged in common behavior that "appl[ies] generally to the class." FED. R. CIV. P. 23(b)(2). More specifically, Plaintiffs allege that the Merger substantially lessened competition in an asserted ROFM, which harmed each class member (current Schwab brokerage customers) in the form of reduced price improvements on trades (Dkt. #1 at ¶ 35). Thus, the same action by Defendant is the source of any injury for the entire Settlement Class. *See Yates*, 868 F.3d at 368 (affirming the district courts class certification under 23(b)(2) where "the same action/inaction by Defendants is the source of any injury for the entire General Class and the

subclasses."); *see also Cone v. Vortens, Inc.*, 2019 WL 5390128, at *6 (E.D. Tex. Sept. 4, 2019) (finding that the class members have been harmed in "essentially the same way" where defendant's conduct that caused the injury to the proposed class was practically uniform). Second, the injunctive relief requested predominates over any monetary damage claim in this case. Indeed, the Court need not delve into whether the injunctive relief "predominates" over monetary damages claims where, as here, injunctive relief is the only relief sought. *See Maldonado v. Ochsner Clinic Found.*, 493 F.3d 521, 524 (5th Cir. 2007) (analyzing whether injunctive relief predominates over monetary damages only where plaintiffs seek an injunction in addition to monetary damages). Third, the injunctive relief sought is specific. The Settlement not only requests that the Court order the implementation of the antitrust compliance program—which in practice will enjoin Defendant from engaging in the anticompetitive behavior alleged herein—but also identifies specific relief in "reasonable detail" that meets the Rule 23(b)(2) specificity element. For example, the Settlement requires that the parties engage a specific consultant to design the antitrust compliance program (Dkt. #197-1 at ¶ 2.2(b)). Additionally, the Settlement also provides that the same consultant will examine specific policies of Defendant (and provide reports if necessary) to ensure that any anticompetitive conduct is remediated (*See* Dkt. #197-1 at ¶ 2.2(c)(i)–(iv)). Thus, this case is unlike *Maldonado*, where the requested injunctive relief—the provision that Defendants provide "mutually affordable health care"—lacked any meaningful content and provided no guidance. 493 F.3d at 524. Accordingly, the Court finds that certification of the Settlement Class under Rule 23(b)(2) is proper.

### III. Appointing Class Counsel

The Court now turns to whether it should appoint Yavar Bathaee of Dunne LLP and Christopher M. Burke of Burke LLP as co-lead class counsel. Rule 23(g) of the Federal Rules of

Civil Procedure requires that a court certifying a class appoint class counsel. *See* FED. R. CIV. P. 23(g)(1) ("Unless a statute provides otherwise, a court that certifies a class *must* appoint class counsel.") (emphasis added); *see also Martinez*, 2023 WL 2672837 at *2 (providing that "[a] court that certifies a class must . . . appoint class counsel under Rule 23(g).") (citation modified). In appointing class counsel, the Court must consider: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." FED. R. CIV. P. 23(g)(1)(A)(i)–(iv). In addition, the Court, in deciding whether to appoint the proposed class counsel, "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." *Id*. at 23(g)(1)(B).

Plaintiffs argue that the appointment of their proposed co-lead class counsel is proper under Rule 23(g)(1) (Dkt. #197 at p. 20). The Court agrees with Plaintiffs. Here, after weighing the relevant factors, the Court finds that the appointment of Yavar Bathaee and Christopher M. Burke as co-lead class counsel is proper under Rule 23(g)(1) for several reasons. First, Plaintiffs have submitted evidence detailing that both Yavar Bathaee and Christopher M. Burke have served as either lead counsel or co-lead counsel in many class action cases and, specifically, complex antitrust class actions (*See* Dkt. #197-2 at ¶¶ 26, 30 (listing 4 notable complex class action cases tried by Yavar Bathaee and 15 notable complex class action cases tried by Christopher M. Burke respectively)). Thus, their extensive experience in handling these types of cases weighs in favor of appointment. *See Marcus v. J.C. Penney Co., Inc.*, 2016 WL 8604331, at *11 (E.D. Tex. Aug. 29, 2016) (finding that the proposed class counsel should be appointed where he has "served as class

counsel in many securities class action cases."). Second, based on their substantial experience litigating and settling complex antitrust class actions, it is clear that they are well-versed in class action and antitrust law. *See e.g., Alaska Elec. Pension Fund v. Bank of Am. Corp.*, No. 1:14-cv-07126 (S.D.N.Y. 2020) (obtaining a $504.5 million settlement in a complex class action lawsuit); *Dahl v. Bain Cap. Partners, LLC*, No. 1:07-cv-12388 (D. Mass. 2015) (obtaining a $590.5 million settlement in a complex antitrust class action lawsuit); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 1:05-md-01720 (E.D.N.Y. 2019) (obtaining $5.6 billion settlement in a complex antitrust class action lawsuit). Third, the work that the proposed co-lead class counsels have performed to date in litigating and settling this case demonstrates their commitment to the Settlement Class's interests. More specifically, over the course of the last three years counsel has prepared a 103-page class action complaint (*See* Dkt. #1), successfully defeated Defendant's Motion to Dismiss (*See* Dkt. #40), meaningfully engaged in discovery, and worked to reach a favorable settlement on behalf of the Settlement Class (*See* Dkt. #154-1; Dkt. #197-1). *See Marcus*, 2016 WL 8604331 at *11 (finding that the proposed class counsel should be appointed where he, among other things, has "successfully opposed a motion to dismiss in this case . . . and filed this Motion for Class Certification."). Thus, there is no evidence that Yavar Bathaee and Christopher M. Burke would be inadequate counsel in this case. Accordingly, the Court finds that Yavar Bathaee of Bathaee Dunne LLP and Chrisopher M. Burke of Burke LLP should be appointed as co-lead class counsel pursuant to Rule 23(g)(1).

## IV.    Notice

Rule 23(e) of the Federal Rules of Civil Procedure provides that a court must "direct notice in a reasonable manner to all class member who would be bound by the proposal" before approving a class action settlement. FED. R. CIV. P. 23(e)(1)(B). Rule 23 requires that class members receive

"the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." FED. R. CIV. P. 23(c)(2)(B). Rule 23(e) provides "no standard by which a court is to consider the settlement of a class action." *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 207 (5th Cir. 1981). However, the Fifth Circuit has repeatedly recognized that "a settlement notice need only satisfy the broad reasonableness standards imposed by due process." *In re Katrina Canal Breaches Litig.*, 628 F.3d 185, 197 (5th Cir. 2010) (citation omitted). The minimum of due process, as interpreted by the Supreme Court, is that "deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Id.* (citing *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313 (1950)). Thus, in a mandatory class action settlement,[8] which will deprive class members of their claims, due process "requires that class members be given information *reasonably necessary* for them to make a decision whether to object to the settlement." *Id.* (emphasis added).

In evaluating the reasonableness of the notice, "courts look at the type of notice provided to the class and its content." *Welsh v. Navy Fed. Credit Union*, 2018 WL 7283639, at *8 (W.D. Tex. Aug. 20, 2018). The type of notice to which a member of a class is entitled "depends upon the information available to the parties about that person and the possible methods of identification."

---

[8]  Plaintiffs seek certification of an injunctive-relief class under Rule 23(b)(2) which is known as a "mandatory class action" under well-established Fifth Circuit law. *See Johnson v. Kan. City S. Ry. Co.*, 208 F. App'x 292, 296 (5th Cir. 2006) (explaining that "[t]here are essentially two separate types of class action suits, mandatory non-opt-out classes under 23(b)(1) or 23(b)(2) and discretionary opt-out classes under 23(b)(3)."). Rule 23(b)(2) certification is considered a "mandatory class action" because notice of an opt out right for members of the class is not required. *See Ayers v. Thompson*, 358 F.3d 356, 375 (5th Cir. 2004) (explaining that the Fifth Circuit has held that "a member of a class certified under rule 23(b)(2) has no absolute right to opt out of the class."); *see also Penson v. Terminal Transp. Co.*, 634 F.2d 989, 993 (5th Cir. 1981) ("Rule 23(d)(2), which applies to all Rule 23 class actions, is the only notice provision applicable to 23(b)(2) action. It provides only for discretionary notice, the content of which is to be determined by the district court.").

*In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1098 (5th Cir. 1997). The general rule is that "notice by publication is not enough with respect to a person whose name and address are known or very easily ascertainable and whose legally protected interest are directly affected by the proceeding in question." *Id.* at 1097 (citation omitted). In determining the reasonableness of the effort required, courts must look to the "anticipated results, costs, and amount involved." *Id.* at 1099.

Plaintiffs argue that the notice plan provided the "reasonable" notice required by Rule 23(e)(1)(B) (Dkt. #197 at pp. 21–23). Specifically, Plaintiffs contend the notice plan implemented satisfies Rule 23(e)(1)(B) for several reasons: (1) Ankura Consulting Group LLL ("Ankura") developed a plan that provided individual direct notice to all reasonably identifiable members of the Settlement Class via email or post card, along with a dedicated website, class helpline, and helpdesk support where the Settlement Class could learn more about their legal rights, the notices, and implications of the litigation; (2) Ankura obtained basic contact information from Defendant for class members and has been able to reach a total of 24,165,364 class members (97.0% of the class) via mail or email; (3) Ankura employed methods to maximize the number of Settlement Class members who received the notice including (but not limited to) an email cleansing and validation process, address verification process using a U.S. Postal Service program, and maintained a settlement website that provided an overview of the litigation, issued notices, and FAQs; and (4) the notices provided to the Settlement Class members were in plain terms and easy to understand language and included information about the nature of the action, definition of the Settlement Class, the settlement itself, the right of the Settlement Class members, and the date and location of the fairness hearing (Dkt. #197 at pp. 22–23). In sum, according to Plaintiffs, the notice plan

provided the "reasonable" notice to the Settlement class required under Rule 23(e)(1)(B) (Dkt. #197 at p. 23). The Court agrees with Plaintiffs.

Here, the Court finds that the notice given to the Settlement Class clearly satisfies the broad reasonableness standards imposed by due process and with the Rule 23 requirements. The notice was sent (and successfully delivered) to either the last known mailing address or email address of 24,165,364 class members in this case (Dkt. #197-7 at ¶ 36). The notice provides, among other things, that "this Notice is to inform you of the Settlement with Schwab in the above-captioned case" in which "Plaintiffs allege that the combination of Schwab and TD Ameritrade Holding Corporation, in October 2020, violated Section 7 of the Clayton Act" (Dkt. #197-1 at pp. 52–53). It further provides that the Settlement allows "both sides to avoid the risks and costs of lengthy litigation and the uncertainty of pre-trial proceedings, a trial, and appeals." (Dkt. #197-1 at p. 56). The notice explained that, "as part of the Settlement, Schwab has agreed to implement a comprehensive antitrust compliance program to prevent antitrust violations" (Dkt. #197-1 at p. 56). In defining the class, the notice states that, you are a Settlement Class member if you fit within the following definition: "All persons, entities, and corporations who are current U.S. brokerage customers of Schwab or any of its affiliates, including customers who previously held accounts at Ameritrade" (Dkt. #197-1 at p. 56). The notice also notified each member of the class that he or she had one of four options: (1) Do Nothing. You are automatically apart of the Settlement Class if you fit the Settlement Class description. You will be bound by past and any future Court rulings, including rulings on the Settlement, if approved, and releases; (2) Object to the Settlement. If you wish to object to the Settlement, Attorney's Fees and Expenses, or Services Awards, you must file a written objection with the Court by July 29, 2025; (3) Go to Settlement Hearing. You may ask the

Court for permission to speak at the Fairness Hearing (scheduled for August 28, 2025 at 9:00 a.m.) by including such a request in your written objections; and (4) Appear Through an Attorney. You may enter an appearance through your own counsel at your own expense (*See* Dkt. #197-1 at p. 53). Finally, the notice provided that "[i]f you are a Settlement Class Member, you may not exclude yourself from the Settlement Class. However, you may object to the Settlement by following the procedures in this Notice" (Dkt. #197-1 at p. 59). Thus, the Court finds that the notice complies with the notice requirements set forth in Rule 23(c)(2)(B).[9]

Having found that the notice complied with the Rule 23(c)(2)(B) requirements, the Court must now determine whether the notice satisfies the broad reasonableness standards imposed by due process as required by Rule 23(e). Here, the Court finds that it does. As to timing, the notice gave class members 136 days between the initial mailing of the notice on April 14, 2025, and the Fairness Hearing to submit objections to the Settlement, which was on August 28, 2025. Indeed, this amount of time has been found to be more than sufficient by other courts in this Circuit. *See Erica P. John Fund, Inc. v. Halliburton Co.*, 2018 WL 1942227, at *3 (N.D. Tex. Apr. 25, 2018) (finding gap of more than 75 days between when notice was first sent out and the fairness hearing was adequate); *Schwartz v. TXU Corp.*, 2005 WL 3148350, at *11 (N.D. Tex. Nov. 8, 2005) (finding that a gap of 62 days between the date of notice and the date of the fairness hearing was adequate); *Welsh*, 2018 WL 7283639 at *10 (finding that a gap of 115 days between the date of notice and the date of the fairness hearing supports a finding of reasonableness). Furthermore, out of the

---

[9]  Rule 23(c)(2)(B) requires that "[t]he notice must clearly and consciously state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." FED. R. CIV. P. 23(c)(2)(B)(i)–(vii).

25,539,532 members who were sent notice, a total of 24,165,364 (or 97% of the Settlement Class) received direct notice of the Settlement (Dkt. #197-1 at ¶ 36). Of those 24,165,364 class members, only approximately seventy (or 0.00028% of the Settlement Class) submitted objections to the Settlement. Thus, based on the number of class members who received direct notice of the Settlement and the small number of class members who submitted objections, the Court finds that the Settlement Class received "reasonable" notice of the Settlement. *See In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1041, 1061 (S.D. Tex. 2012) (finding Rule 23(e)(1)'s reasonableness requirement was satisfied where the notice reached 81.4 percent of the class members); *see also Welsh*, 2018 WL 7283639 at *11 (finding Rule 23(e)(1)'s reasonableness requirement satisfied where the notice reached 90 percent of the class members).

In short, the members of the Settlement Class received the best practicable notice, which was reasonably calculated to ensure that the "class members be given information reasonably necessary for them to make a decision whether to object to the settlement." *In re Katrina Canal Breaches Litig.*, 628 F.3d at 197. Accordingly, the Court finds that the notice requirement under Rule 23 is therefore satisfied in this case.

## V.     Final Approval of Settlement

Lastly, the Court must determine whether the proposed settlement in this case warrants final approval. To be approved, a proposed class action settlement must be "fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(2). In determining whether a settlement is fair, reasonable, and adequate at the final approval stage, a court must consider whether: "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the

class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (D) the proposal treats class members equitably relative to each other." Fᴇᴅ. R. Cɪᴠ. P. 23(e)(2)(A)–(D).

Prior to the 2018 amendment of Rule 23(e)(2), the Fifth Circuit used a six-factor test (the "*Reed* Test"), to determine the appropriateness of a proposed settlement: "(1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery contemplated; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members." *See C.C. & L.C. v. Baylor Scott & White Health*, 2022 WL 4477316, at *2 (E.D. Tex. Sept. 26, 2022) (citing *Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983)). However, the new Rule 23(e)(2) factors added by the 2018 amendment do not displace the *Reed* factors. *See Celeste Neely*, 2022 WL 17736350 at *3 n. 3 (explaining that the advisory committee has made clear that the Rule 23(e)(2) factors added by the 2018 amendment "do *not* displace any factor" sanctioned by the circuit courts) (emphasis added). Indeed, "the Rule 23(e)(2) requirements overlap significantly with the *Reed* factors." *Wilson v. Frontier Commc'n. Parent, Inc.*, 2025 WL 2421373, at *6 (N.D. Tex. June 20, 2025). Thus, the Court will consider the Rule 23(e)(2) requirements as informed by the *Reed* factors. *Id.*; *see also ODonnell v. Harris Cnty.*, 2019 WL 6219933, at *9 (S.D. Tex. Nov. 21, 2019) (noting that because the Rule 23(e)(2) and *Reed* factors overlap significantly "courts in [the Fifth Circuit] often combine them in analyzing class settlements.") (citation modified).

Plaintiffs argue that the proposed class action Settlement meets each of the Rule 23(e)(2) requirements and thus should be approved by the Court (*See* Dkt. #197 at pp. 25–37). The Court addresses each of Plaintiffs' arguments relating to the Rule 23(e) requirements in turn.

### A.      Plaintiff and Counsel Have Adequately Represented the Settlement Class

The Court must first determine whether the class representatives (Plaintiffs) and class counsel (Yavar Bathaee and Christopher M. Burke) have adequately represented the Settlement Class. As already discussed ad nauseam by this Court above, both Plaintiffs and Plaintiffs' Counsel have adequately represented the Settlement Class in this case. *See supra* Section II.B.4 and Section III. Since the inception of this case Plaintiffs have taken an active role in both the litigation and in reaching the Settlement (*See* Dkt. #197-3 ¶ 10; Dkt. #197-4 ¶ 10; Dkt. #197-5 ¶ 10 (stating that each Plaintiff has "actively participated in this suit by reviewing and authorizing the Complaint, keeping abreast of case and settlement developments, reviewing and collecting [their] own documents for production to Schwab, and periodically discussing case-related matters with counsel.")). More importantly, Plaintiffs do not have any conflicts of interest with the Settlement Class. Indeed, as current Schwab brokerage customers themselves, Plaintiffs' interests are identical to the members of the Settlement Class. Similarly, Plaintiffs' Counsel has adequately represented the Settlement Class. Both Yavar Bathaee and Christopher M. Burke have extensive experience in serving as lead counsel or co-lead counsel in complex class actions and, more specifically, antitrust class actions. Additionally, over the last three years, they have shown their commitment to the Settlement Class by actively pursuing the class's claims and also working to reach a settlement that will meaningfully benefit the members of the Settlement Class for years to come. Accordingly, the Court finds that this factor weighs in favor of final approval of the Settlement.

## B.    The Settlement Was Negotiated at Arm's Length

Rule 23(e)(2)(B) asks the Court to determine "whether the proposed settlement was negotiated at arm's length, thereby implicating the first *Reed* factor—the existence of fraud or collusion in the negotiation." *Kostka v. Dickey's Barbecue Rests., Inc.*, 2022 WL 16821685, at *10 (N.D. Tex. Oct. 14, 2022). Here, the Court finds that the Settlement was negotiated at arm's length and was not the product of any fraud or collusion between opposing counsel. In making this determination, the Court "may presume that no fraud or collusion occurred between opposing counsel in the absence of any evidence to the contrary." *C.C. & L.C.*, 2022 WL 4477316 at *3 (E.D. Tex. Sept. 26, 2022) (citation omitted). Such a presumption is warranted in this case. To date, no evidence has been submitted that would indicate that the Settlement was the product of fraud or collusion. Rather, the evidence makes clear that the Settlement was the product of hard-fought negotiations between the parties. In addition, the Settlement is the product of a mediation conducted before an experienced mediator and former United States District Court Judge Nancy F. Atlas (Dkt. #197-6). Indeed, Judge Nancy F. Atlas submitted a sworn affidavit to this Court stating that "[t]he negotiations were hard-fought but were conducted by both sides with civility and professionalism. There was no apparent collusion between the parties, and in my view the negotiations were conducted at arm's length" (Dkt. #197-6 at ¶ 7). Thus, the mediator's involvement makes it highly unlikely that the Settlement is the product of any fraud or collusion. *See Jones*, 865 F.3d at 295 (explaining that "[t]he involvement of an experienced well-known mediator is also a strong indicator of procedural fairness."). Accordingly, the Court finds that this factor weighs in favor of final approval of the Settlement.

## C.    The Relief Provided for the Settlement Class is Adequate

Rule 23(e)(2)(C) requires the relief granted by the Settlement to be adequate, taking into account four considerations: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-members claims; (iii) the terms of any proposed awards of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." FED. R. CIV. P. 23(e)(2)(C). The Court addresses each consideration in turn and, as discussed in more detail below, the Court finds that these considerations weigh in favor of finding that the Settlement is adequate.

### 1.    The costs, risks, and delay of trial and appeal

The first consideration—the costs, risks, and delay or trial and appeal—also "implicates four of the *Reed* factors: (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and amount of discovery completed; (4) plaintiffs' probability of success; and (5) the range of possible recovery." *Kostka*, 2022 WL 16821685 at *11 (citing *Reed*, 703 F.2d at 172). After considering the relevant *Reed* factors, the Court finds that the injunctive relief provided for in the Settlement is adequate.

First, the complexity, expense, and likely duration of the litigation support a finding that the Settlement is adequate. The Fifth Circuit has  repeatedly recognized that "settling avoids the risks and burdens of potentially protracted litigation." *Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004). Thus, when "the prospect of ongoing litigation threatens to impose high costs of time and money on the parties, the reasonableness of approving a mutually-agreeable settlement is strengthened." *C.C. & L.C.*, 2022 WL 4477316 at *3. Here, although Plaintiffs contend that they are confident they would prevail (Dkt. #197 at p. 28), the key legal issues in this case have not yet been adjudicated. For example, Plaintiffs would still need to establish (1) a viable claim under

Section 7 of the Clayton Act and (2) entitlement to injunctive relief under Section 16 of the Clayton Act (Dkt. #1 at pp. 101–02). As a result, there is an inherent risk in proceeding to trial. Indeed, the risk of proceeding to trial is amplified where, as here, the case involves a complex antitrust class action. *See In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 639 (E.D. Pa. 2003) (explaining that "[a]n antitrust class action is arguably the *most complex action* to prosecute [because] [t]he legal and factual issues involved are always numerous and uncertain in outcome.") (citation modified). The Settlement, however, not only eliminates this risk but also provides a clear process for undisputed prospective relief that is specifically tailored to remedy the anticompetitive harm pleaded by Plaintiffs and the Settlement Class in this case. Accordingly, the Court finds that this factor favors approving the Settlement.

Second, the stage of the proceedings and the amount of discovery completed weigh in favor of finding that the Settlement is adequate. The key issue under this factor is whether "the parties and the district court possess ample information with which to evaluate the merits of the competing positions." *Ayers*, 358 F.3d at 369. However, "a court can approve a settlement even if the parties have not conducted much formal discovery." *C.C. & L.C.*, 2022 WL 4477316 at *3; *see also Union Asset Mgmt. Holdings A.G. v. Dell, Inc.*, 669 F.3d 632, 639 (5th Cir. 2012) (agreeing that "formal discovery is not a prerequisite to approving a settlement as reasonable."). Thus, "a court should consider all information which has been available to the parties." *C.C. & L.C.*, 2022 WL 4477316 at *3 (citation omitted). Here, the Court finds that prior to the Settlement the parties engaged in meaningful discovery. This case settled only after the parties engaged in extensive discovery which included: (1) Plaintiffs deposing several of Defendant's executives (including a 30(b)(6) deposition of Defendant's corporate representative) most knowledgeable about the anticompetitive practices

at issue; (2) Defendant producing 218,319 documents (totaling more than 950,021 pages) of which Plaintiffs thoroughly reviewed; (3) Defendant producing 6.5 terabytes of financial data (including approximately 6.4 billion individual trades placed by customer between 2019-2023); and (4) Plaintiffs filing two motions to compel against Defendant seeking to compel disclosure of certain documents originally withheld (*See* Dkt. #197-2 at ¶¶ 9–11). Following this discovery, Plaintiffs' Counsel, with the help of a retained expert, drew on their prior experience in similar antitrust class action litigation and determined that the Settlement was in the best interest of the putative class. Indeed, other courts in this Circuit have found this to be more than sufficient to satisfy this factor. *See C.C. & L.C.*, 2022 WL 4477316 at *4 (finding this factor satisfied where the parties "settled only after *extensive* written document production" and "after Plaintiff took the Rule 30(b)(6) deposition of Defendants."); *see also DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 292 (finding this factor satisfied where defendant "produced tens of thousands of documents" and "voluminous electronic data" and plaintiffs "retained statistical experts who engage in extensive discrimination impact analysis."). Accordingly, the Court finds that this factor favors approving the Settlement.

Third, the probability of success on the merits weighs in favor of finding that the Settlement is adequate. The Fifth Circuit has made clear that "[a]bsent a showing of fraud or collusion, the probability of success on the merits is the most important *Reed* factor." *Smith v. Crystian*, 91 F. App'x 952, 955 n.3 (5th Cir. 2004) (citation modified). When examining the likelihood of success, a court "must compare the terms of the settlement with the rewards the class would have been likely to receive following a successful trial." *Reed*, 703 F.2d at 172. Here, although Plaintiffs survived Defendant's Motion to Dismiss and are likely to have a strong case on the merits, the Court finds that there still remains a substantial risk for all parties in proceeding to trial. As

mentioned above, Plaintiffs face significant factual and legal hurdles to prevail on their claims at trial, especially, where, as here, the case involves an antitrust class action. *See In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d at 639 (noting that "[a]n antitrust class action is arguably the most complex action to prosecute.") (citation modified). Additionally, as Plaintiffs mention, Defendant—a large corporation represented by three prestigious law firms—can be expected to push back at every stage of the litigation including, among other things, opposing class certification, moving to exclude Plaintiffs' retained experts, and moving for summary judgment (*See* Dkt. #197 at pp. 30–31). Thus, in light of these risks, settlement makes sense in this case. *See Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 654–56 (N.D. Tex. 2010) (finding this factor satisfied after considering, among other things, defendants' intent to vigorously challenge the merits of plaintiffs' claim, their intent to present *Daubert* challenges to class plaintiffs' medical evidence, and intent to appeal the courts partial denial of their motion for summary judgment). Accordingly, the Court finds that this factor favors approving the Settlement.

Fourth, the range of possible recovery in this case weighs in favor of finding that the Settlement is adequate. This factor requires courts to "establish the range of possible damages that could be recovered at trial, and, then, by evaluating the likelihood of prevailing at trial and other relevant factors, determine whether the settlement is pegged at a point in the range that is fair to the plaintiffs' settlors." *Maher v. Zapata Corp.*, 714 F.2d 436, 460 (5th Cir. 1983) (citation omitted). In considering this factor courts "can take into account the challenges to recovery at trial that could preclude the class from collecting altogether, or from only obtaining a small amount." *Klein*, 705 F. Supp. 2d at 656. Ultimately, "[t]he court must be assured that the settlement secures an adequate advantage for the class in return for the surrender of litigation rights against the defendants." *In re*

*Katrina Canal Breaches Litig.*, 628 F.3d at 195. Because the Settlement binds only an injunctive relief class under Rule 23(b)(2) and does not release individual damages claims, the relevant inquiry is the range of possible recovery were this case to proceed to trial as a Rule 23(b)(2) class action. Estimating the range of possible recovery is not difficult in this case. The lowest band is no recovery. The upper band of relief would be divestiture of Schwab and TD Ameritrade or segregation of the lines of business within the merged entity, to protect against future injury due to the Merger. *See Illumina, Inc.*, 88 F.4th at 1056 (providing that a court may order divestiture after a finding of liability under Section 7 of the Clayton Act). Here, the Court finds that comparing the recoveries in this case to those that could be recovered at trial supports the approval of the Settlement. Although not as extreme as divestiture, the antitrust compliance program provided for by the Settlement will likely have a similar impact. More specifically, the compliance program will ensure that going forward Schwab's policies, practices, and procedures promote competitive price improvement on trades for all members of the Settlement Class as well as *future* Schwab brokerage customers. *See Klein*, 705 F. Supp. 2d at 658 (finding this factor satisfied where the settlement will provide, among other things, relief even to "class members who have no apparent injury."). Additionally, Plaintiffs have submitted evidence demonstrating that the compliance program will provide a substantial monetary benefit to the Settlement Class (*See* Dkt. #196 at ¶¶ 84–85 (providing, in an expert report, that the compliance program will yield additional price improvement between $10.7 million and $14.5 million per month for Schwab brokerage customers)). Thus, the relief provided for in the Settlement is more than fair to the Settlement Class, especially when considering that proceeding to trial could leave the class members with no remedy at all. Accordingly, the Court finds that this factor favors approving the Settlement.

### 2. Proposed method of distributing relief to the Settlement Class

The second Rule 23(e)(2)(C) consideration—the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims—does not apply where, as here, the only relief proposed in the Settlement is injunctive relief which need not be distributed to the individual members of the Settlement Class. *See Poff v. PHH Mortgage Corp.*, 2023 WL 11983790, at *5 (S.D. Tex. Apr. 18, 2023) (applying this factor to a proposed class action settlement that calls for $1.3 million in relief to be distributed to class members but provides no sort of injunctive relief remedy for the class); *see also C.C. & L.C.*, 2022 WL 4477316 at *3–4 (approving the proposed settlement, which provides prospective relief to the class, without considering this factor).

### 3. Proposed award of attorney's fees

The third Rule 23(e)(2)(C) consideration—the terms of any proposed award of attorney's fees, including timing of payment—weighs in favor of finding that the Settlement is adequate. "An agreed upon award of attorneys' fees and expenses is proper in a class action settlement, so long as the amount of the fee is reasonable under the circumstances." *DeHoyos*, 240 F.R.D. at 322. In fact, courts, including the Fifth Circuit, have "encouraged litigants to resolve fee issues by agreement, if possible." *Id.* (collecting cases). As explained by the Supreme Court, "a request for attorneys fees should not result in a second major litigation." *Id.* (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)). Thus, "courts are authorized to award attorneys' fees and expenses where all parties have agreed to the amount subject to court approval, particularly where the amount is in addition and separate from the defendant's settlement with the class." *Id.* (citation omitted). However, before approving an attorney's fee award, "the court must carefully review a proposed fee award to ensure reasonableness." *C.C. & L.C.*, 2022 WL 4477316 at *5 (citing *Strong v. BellSouth Telecomms., Inc.*,

137 F.3d 844, 849 (5th Cir. 1998)). This scrutiny is necessary to guard "against the public perception that attorneys exploit the class action device to obtain large fees at the expense of the class." *In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d 220, 228 (5th Cir. 2008); *see also* 4 NEWBERG AND RUBENSTEIN ON CLASS ACTION § 13:54 (6th ed. 2024) (explaining that the court must consider the terms of a proposed fee award because "an inordinate fee may be a sign that counsel sold out the class's claim at a low value in return for a high fee.").

The Court finds that the terms of the proposed award of attorney fees are reasonable, and thus this factor weighs in favor of approving the Settlement.[10] During a subsequent meditation, which was entirely separate from the mediation where the Settlement was agreed to, counsel for the parties agreed to cap their attorney's fee application at $8,250,000 and expense application at $700,000 (Dkt. #197-2 at ¶ 19). The proposed award of attorney's fees in this case is similar to those that were at issue in the *DeHoyos* case. In *DeHoyos*, the court found that the agreed upon attorney's fee award was reasonable under Rule 23(e)(2)(C)(iii). 240 F.R.D. at 322. In reaching this conclusion, the court noted that there were several factors present that indicate a presumption of reasonableness in the parties' request for an award of attorney's fee. 240 F.R.D. at 322–23. The factors included: (1) the award of attorney's fees and expenses is separate and apart from the class settlement—which is not a monetary common fund—and will not in any way diminish the class settlement; and (2) the attorney's fees were not negotiated or discussed until after the agreement was reached between the parties on all other terms of the settlement. *Id.*

---

[10] In this section the Court is addressing the reasonableness of the attorney's fees for the limited purposes of deciding whether the Settlement warrants final approval under the Rule 23(e)(2)(C) considerations and relevant *Reed* factors. The Court's determination in this section of this Opinion has no bearing on whether the Court is approving Plaintiffs request for an award of attorney's fees, litigation expenses, and service awards. Indeed, as already discussed above, the Court will address this request by Plaintiffs in a separate order which will be docketed subsequently to this Order.

Here, the agreed upon attorney's fees award submitted by the parties in this case is exactly like the fee award that was found reasonable by the court in *DeHoyos*. First, the award of attorney's fees and expenses is separate and apart from the Settlement (Dkt. #197-1 at p. 55). Indeed, it is Defendant who is responsible for paying Plaintiffs' Counsel attorney's fees, not the members of the Settlement Class (*See* Dkt. #197-1 at p. 55 (providing that "class members are NOT individually responsible for attorney's fees or litigation expenses. Any award of attorney's fees and litigation expenses will be paid by Schwab.")). Thus, if the Court were to reduce the award of fees for Plaintiffs' Counsel, it would not confer a greater benefit upon the Settlement Class, but rather would only benefit Defendant. *See DeHoyos*, 240 F.R.D. at 322 (noting that because the attorney's fees were separate and apart from the class settlement, any reduction in fee would only benefit defendants and not the members of the class). Second, the amount of attorney's fees Plaintiffs' Counsel would seek were not negotiated or discussed until *after* the parties executed the Settlement (Dkt. #197-2 at ¶¶ 18–19 (providing that the parties executed the Settlement on December 12, 2024 but did not discuss the issue of the amount of attorney's fees Plaintiffs' Counsel would seek until the mediation before Judge Atlas on January 24, 2025)). Thus, these factors indicate a presumption of reasonableness in the request for an attorney's fee award. Accordingly, the Court finds that this factor weighs in favor of approving the Settlement.

### 4.     Agreements required to be identified under Rule 23(e)(3)

The fourth Rule 23(e)(2)(C) consideration—any agreement required to be identified under Rule 23(e)(3)—does not apply in this case since there are no other agreements between the parties beyond those which are set forth in the Settlement. *See Kostka*, 2022 WL 16821685 at *13 (finding that Rule 23(e)(3) is not applicable in this case, and thus weighs in favor of finding that the proposed

settlement is adequate, where no party has identified any such agreement). Accordingly, the Court finds that this factor favors approving the Settlement.

### D. The Settlement Treats Class Members Equitably Relative to Each Other

Rule 23(e)(2)(D) requires that the proposed settlement treat class members equitably. *See* FED. R. CIV. P. 23(e)(2)(D). Here, the Court finds that the equitable-treatment factor is easily met in this case. The Settlement provides that the requested injunctive relief—the antitrust compliance program—applies uniformly to all members of the Settlement Class (*See* Dkt. #197-1 at pp. 55–56 (providing that if you are a Settlement Class Member you are bound by the Settlement and entitled to the injunctive relief provided therein)). Thus, all members of the Settlement Class are entitled to the same relief. *See ODonnell*, 2019 WL 6219933 at *14 (finding this factor is satisfied where the settlement requires defendant to take "action that applies to all class members equally."); *see also C.C. & L.C.*, 2022 WL 4477316 at *5 (finding this factor supports approving the settlement where "each class member, save the Class representatives, will receive the same amount.") (citing *Hays v. Eaton Grp. Att'ys., LLC*, 2019 WL 427331, at *5 (M.D. La. Feb. 4, 2019)). The only differential in recovery among the members of the Settlement Class is that Defendant has agreed not to object to Plaintiffs motion for service awards of up to $5,000 each (Dkt. #197-1 at p. 21). However, these awards are not inconsistent with Rule 23(e)(2)(D)'s equitable-treatment requirement. *See Moses v. New York Times Co.*, 79 F.4th 235, 253 (2d Cir. 2023) (finding that Rule 23(e)(2)(D)'s mandate "is harmonious with, and promoted by, our clear precedent that permits district courts to approve fair and appropriate incentive awards to class representatives."). Additionally, an incentive award of $5,000 per Plaintiff is consistent with what other courts in the Fifth Circuit have awarded to class representatives. *See Duncan v. JPMorgan Chase Bank, N.A.*, 2016 WL 4419472, at *16 (W.D. Tex. May 24, 2016) (explaining that "[d]istrict courts in the Fifth Circuit *routinely award* $5,000-

$10,000 per named plaintiff.") (emphasis added) (citing *DeHoyos*, 240 F.R.D. at 339). Accordingly, the Court finds that this factor weighs in favor of approving the Settlement.

E.      **The Opinions of Class Counsel, Class Representatives, and Absent Class Members**

The final *Reed* factor—the opinions of the class counsel, class representatives, and absent class members—supports approval of the Settlement. The Fifth Circuit has repeatedly recognized that "a settlement can be approved despite opposition from class members, including named plaintiffs." *See Ayers*, 358 F.3d at 373 (collecting cases). In determining whether to approve a class action settlement, "the trial court is entitled to rely upon the judgment of experienced counsel for the parties." *Jones*, 865 F.3d at 300 (citation modified). Indeed, because class counsel tends to be the most familiar with the intricacies of the class action lawsuit and the settlement, "[s]ignificant weight is given to the opinion of class counsel concerning whether the settlement is in the best interest of the class and the court is not to substitute its own judgment for that of counsel." *Marcus*, 2017 WL 6590976 at *3 (citing *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1997)). Here, the Court finds that this factor weighs in favor of approving the Settlement for several reasons. First, this case has had the benefit of experienced attorneys on both sides, each of whom have litigated and negotiated settlements in other complex antitrust class actions (*See* Dkt. #197-2 at ¶¶ 26, 30). Second, Plaintiffs unanimously agree that the Settlement is a fair, reasonable, and adequate resolution of the dispute (*See* Dkt. #197-3 at ¶ 18; Dkt. #197-4 at ¶ 18; Dkt. #197-5 at ¶ 18). Third, only a very small number of objections have been received (approximately 70 out of over 25,000,000 Settlement Class members), several of which pertain only to the amount of attorney's fees and not the actual relief provided for in the Settlement. Thus, the opinion of the personnel who were actively involved in the reaching the Settlement has been overwhelmingly positive which

the Court considers to weigh heavily in favor of finding that the Settlement is a fair, reasonable, and adequate. *See Halleen v. Belk Inc.*, 2018 WL 6701278, at *3 (E.D. Tex. Dec. 20, 2018) (finding that this factor is satisfied where the settlement was negotiated by "experienced attorneys on both sides" and "the parties and their attorneys agree that the settlement is a fair and reasonable resolution of a *bona fide* dispute."); *see also Billitteri v. Sec. Am., Inc.*, 2011 WL 3586217, at *14 (N.D. Tex. Aug. 4, 2011) (finding that this factor is satisfied where, among other things, only "a few small number of objections had been received" several of which only pertain to "the amount of the attorneys' fees requested by counsel."). Accordingly, the Court finds that this factor weighs in favor of approving the Settlement.

## VI.    Objectors' Arguments

As discussed above, after notice was sent to each member of the Settlement Class, the Court received approximately seventy objections from certain class members regarding the proposed Settlement.[11] Before addressing the substance of the objections in more detail, the Court notes that the fact that the objectors only make up approximately 0.00028% of the entire Settlement Class is a fact, on its own, that weighs in favor of approving the Settlement. *See Vaughn*, 627 F. Supp. 2d at 748 (explaining that the fact that so few objections were filed—82 total—in light of the massive size of the class—more than 6 million class members—was particularly significant to the court's finding that the proposed class action settlement was fair, reasonable, and adequate). Nevertheless, none of the objections raised by the Objectors have merit and thus should be overruled by the Court.

---

[11] As of July 17, 2025, the Court had received approximately two dozen (24) objections from the class members regarding the proposed Settlement. However, as of August 14, 2025, two days before the scheduled fairness hearing, the Court had received approximately seventy (70) objections out of approximately 25 million class members properly noticed.

The Court will now consider the objections that were filed in response to the Settlement. Generally, the approximately seventy objections filed by the members of the Settlement Class focused on the following issues: (1) Plaintiffs lacked Article III standing to seek the injunctive relief provided for in the Settlement;[12] (2) the Settlement Class did not receive adequate notice of the Settlement;[13] (3) the Settlement provided no monetary benefit to the class;[14] and (4) the class counsel's attorney's fees are disproportionate to the class benefit.[15] The Court addresses each category of objection in turn. In short, the Court finds that none of the objections have merit and thus do not prevent the Court from approving the Settlement.

### A.    Article III Standing

Two of the Objectors—Theodore Frank and Shiyang Huang—argue that Plaintiffs lack Article III standing to seek the injunctive relief provided for in the Settlement (*See* Dkt. #215 at pp. 3–6; Dkt. #251 at pp. 5–6). Both objectors argue that Plaintiffs have failed to sufficiently allege an "imminent" injury sufficient to establish standing to seek the injunctive relief provided for in the Settlement (*See* Dkt. #215 at pp. 3–6; Dkt. #251 at pp. 5–6). More specifically, both objectors contend that Plaintiffs have only alleged harm for *past* injuries, which is insufficient to satisfy the injury in fact requirement for Article III standing (*See* Dkt. #215 at pp. 3–6; Dkt. #251 at pp. 5–6).

---

[12]  *See* Dkt. #251; Dkt. #278.

[13]  *See* Dkt. #219; Dkt. #235; Dkt. #242; Dkt. #245; Dkt. #256.

[14]  *See* Dkt. #160–61; Dkt. #163–68; Dkt. #171–73; Dkt. #176; Dkt. #179–81; Dkt. #187–88; Dkt. #192–94; Dkt. #201–02; Dkt. #206–08; Dkt. #210; Dkt. #213; Dkt. #217; Dkt. #220; Dkt. #224–27; Dkt. #233–34; Dkt. #236–37; Dkt. #240; Dkt. #245–46; Dkt. #248; Dkt. #251–53; Dkt. #255; Dkt. #257; Dkt. #259–60.

[15]  *See* Dkt. #161; Dkt. #165–69; Dkt. #171–73; Dkt. #176; Dkt. #179; Dkt. #181; Dkt. #187–88; Dkt. #192–94; Dkt. #208; Dkt. #210; Dkt. #217; Dkt. #220; Dkt. #223–27; Dkt. #234–38; Dkt. #240; Dkt. #242; Dkt. #245; Dkt. #246; Dkt. #248; Dkt #251–52; Dkt. #255–57.

The Court disagrees. As already discussed at length by the Court above, Plaintiffs have Article III standing to seek the injunctive relief provided for in the Settlement. *See supra* Section I.

Because the Objectors only contest the "imminent" requirement the Court need not address the other two Article III standing requirements—i.e., "fairly traceable to the challenged action" and "redressable by a favorable ruling." To demonstrate an "imminent" injury a plaintiff must show a "certainly impending" injury. *See Clapper*, 568 U.S. at 409. As explained by the Supreme Court in *Clapper*, the purpose of this requirement is to ensure that "the alleged injury is not too speculative for Article III purposes." *Id.* However, where, as here, Plaintiffs request forward-looking injunctive relief, the Supreme Court later clarified that they must face "a real and immediate threat of repeated injury." *Murthy v. Missouri*, 603 U.S. 43, 58 (2024) (citation omitted). Thus, "an allegation of future injury may suffice if the threatened injury is certainly impending *or* there is a substantial risk that the harm will occur." *Id.* (emphasis added) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)); *see also TransUnion LLC v. Ramirez*, 594 U.S. 413, 435 (2021) (providing that "a person exposed to a risk of *future harm* may pursue forward-looking, injunctive relief to prevent the harm from occurring, at least so long as the risk of harm is sufficiently imminent and substantial.") (emphasis added) (citation omitted).

Here, the Court finds that Plaintiffs have shown a sufficiently "imminent" injury to establish standing because the injunctive relief seeks to prevent a future harm from occurring. Plaintiffs' central theory in this case is that the Merger has substantially lessened competition in an asserted ROFM, which has harmed Schwab brokerage customers in the form of reduced price improvement on trades (Dkt. #1 at ¶ 35). The harm from the anticompetitive Merger at issue is ongoing and, thus, without implementing the injunctive relief requested in the Settlement, current

Schwab brokerage customers will continue to suffer harm. Indeed, each named Plaintiff has submitted a sworn affidavit to this Court attesting that they "intend to remain a retail brokerage customer of Schwab" and "intend to execute additional trades in the near future" (*See* Dkt. #197-3 at ¶ 4; Dkt. #197-4 at ¶ 4; Dkt. #197-5 at ¶ 4). As a result, Plaintiffs, like all other class members who are current Schwab brokerage customers, will continue to receive reduced price improvements on their trades due to the anticipative effects of the Merger. Thus, there can be no question that each named Plaintiff has standing to seek the injunctive relief requested in the Settlement. Accordingly, the two objections relating to the lack of Article III standing are **OVERRULED**.

### B.    Adequate Notice

The Court will now address the objections that the Settlement Class did not receive adequate notice. More specifically, several Objectors have complained about the timing of the class notice, contending that they were not given sufficient time to meaningfully object to the terms of the Settlement (*See* Dkt. #219 at pp. 1–2; Dkt. #235 at p. 1; Dkt. #242 at p. 2; Dkt. #245 at pp. 25–26; Dkt. #256 at p. 2). The Court disagrees. As already discussed at length by the Court above, the notice provided to the Settlement Class satisfies both the broad reasonableness standards imposed by due process and with the Rule 23 requirements. *See supra* Section IV.

In determining the reasonableness of the notice, "receipt of actual notice by all class members is required neither by Rule 23 nor the Constitution." *DeHoyos*, 240 F.R.D. at 296 (citation modified); *see also In re Prudential Ins. Co. of Am. Sales Pracs. Litig.*, 177 F.R.D. 216, 231 (D.N.J. 1997) ("Courts have consistently recognized that due process does not require that every class member receive actual notice so long as the court reasonably selected means likely to apprise interested parties."). Rather, the type of notice to which a member of a class is entitled "depends

upon the information available to the parties about that person and the possible methods of identification." *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d at 1098.

Here, the Court finds that the notice provided to the class members met, or exceeded, the broad reasonableness standards imposed by due process and with the requirements of Rule 23 for several reasons. First, the timing of the notices was more than reasonable. The first batch of initial notices were sent on April 14, 2025, to a total of 19,586,731 members of the Settlement Class (Dkt. #197-7 at ¶ 24). Of the 19,586,731 notices sent 18,333,070 were confirmed as successfully delivered to the members of the Settlement Class (Dkt. #197-7 at ¶ 24). Thus, a majority of the class members (73.6%) received direct notice of the Settlement at least 136 days before the Fairness Hearing. *See Erica P John Fund, Inc.*, 2018 WL 1942227 at *3 (finding a gap of more than 75 days between when notice was first sent out and the fairness hearing was adequate); *see also Welsh*, 2018 WL 7283639 at *10 (finding that a gap of 115 days between the date of notice and the date of the fairness hearing supports a finding of reasonableness). Second, the notices successfully reached more than a reasonable number of members from the Settlement Class. Indeed, by July 15, 2025 — six weeks before the Fairness Hearing — a total of 24,165,364 members (97.0% of the Settlement Class) received direct notice of the Settlement. *See In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d at 1061 (finding Rule 23(e)(1)'s reasonableness requirement was satisfied where the notice reached 81.4 percent of the class members); *see also Welsh*, 2018 WL 7283639 at *11 (finding Rule 23(e)(1)'s reasonableness requirement was satisfied where the notice reached 90 percent of the class members). Thus, based on the number of Settlement Class members who received direct notice of the Settlement and the small number of members who submitted objections, the Court finds that the Settlement Class received "reasonable" notice of

the Settlement. Accordingly, the objections relating to the adequacy of the notice are **OVERRULED**.

### C. Adequacy of the Relief Provided in the Settlement

The Court will now address the objections that the Settlement should not be approved since it provides no monetary benefit to the Settlement Class. Nearly all the objections received by the Court criticized the absence of monetary relief in the Settlement.[16] However, the Court disagrees with these objections. As already discussed at length by the Court above, the Settlement, and the relief provided therein, is fair, reasonable, and adequate. *See supra* Section V.

It is well-established that "a district court has discretion to approve a class-action settlement under Rule 23(e) if the settlement is fair, reasonable, and adequate." *Ayers*, 358 F.3d at 368. In making this determination, there are several considerations that the Rule imposes, including: "(1) adequate representation by the class representatives; (2) arm's length negotiations; (3) the relief takes into account the costs of litigation, the effectiveness of distributing relief, and how attorneys fees are distributed; and (4) that the proposal treats class members equitably relative to each other." *Garcia v. Matson*, 2022 WL 6935303, at *3 (5th Cir. Oct. 12, 2022) (citing FED. R. CIV. P. 23(e)(2)). Additionally, the Fifth Circuit had previously articulated a six-factor test, the *Reed* Test, "that district courts should consider in determining whether the settlement is adequate." *Id*.[17] Approval of a settlement under this standard is "not to be upset unless the [district] court *clearly*

---

[16] *See* Dkt. #160–61; Dkt. #163–68; Dkt. #171–73; Dkt. #176; Dkt. #179–81; Dkt. #187–88; Dkt. #192–94; Dkt. #201–02; Dkt. #206–08; Dkt. #210; Dkt. #213; Dkt. #217; Dkt. #220; Dkt. #224–27; Dkt. #233–34; Dkt. #236–37; Dkt. #240; Dkt. #245–46; Dkt. #248; Dkt. #251–53; Dkt. #255; Dkt. #257; Dkt. #259–60.

[17] The six-factors under the *Reed* Test include: "(1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members." *Reed*, 703 F.2d at 172.

*abused* its discretion." *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 207 (5th Cir. 1981) (citation modified).

Here, after closely weighing the relevant factors, the Court finds that the lack of monetary relief does not prevent final approval of the Settlement. *See Garcia*, 2022 WL 6935303 at *3 (affirming the district court's approval noting that "the standard of review is highly deferential" and where "the district court here thoroughly engaged with both the Rule 23(e)(2) and *Reed* factors."). As discussed above, although the Settlement does not provide immediate monetary relief, the prospective injunctive relief in the Settlement still provides meaningful relief to the entire Settlement Class by directly addressing the anticompetitive behavior at issue (*See* Dkt. #196 at ¶¶ 84–85 (providing, in an expert report, that the compliance program will yield additional price improvement between $10.7 million and $14.5 million per month for Schwab brokerage customers.)). Additionally, courts have routinely found class action settlements to be fair and reasonable where, as here, the injunctive-only Settlement does not force the Settlement Class to release their individual damages claims. *See In re Ring LLC Priv. Litig.*, 2024 WL 2845978, at *3 (C.D. Cal. May 28, 2024) (finding that the injunctive relief provided in the settlement is fair and reasonable where it does not force the settlement class to release such claims); *see also Campbell v. Facebook Inc.*, 951 F.3d 1106, 1123 (9th Cir. 2020) (affirming the district court's final approval of an injunctive-only settlement because "it provided a benefit – information about Facebook's monitoring practices – in return for a release of *non-monetary* claims.") (emphasis added). Accordingly, the objections relating to the adequacy of the relief provided in the Settlement are **OVERRULED**.

### D.     Attorney's Fees

The last category of objections raised by several of the Objectors—which is that the class counsel's attorney's fees and costs are disproportionate to the class benefit[18]—will be addressed by the Court in a separate memorandum opinion and order ruling on Plaintiffs' Counsels' Motion for an Award of Attorney's Fees, Litigation Expenses, and Service Awards (Dkt. #199). However, similar to each of the abovementioned objections, the Objectors' arguments relating to the requested fees are without merit and thus does not prevent the Court from approving Plaintiffs' Motion for Final Approval of Class Action Settlement (Dkt. #197).

### CONCLUSION

It is therefore **ORDERED** that Plaintiffs' Motion for Final Approval of Class Action Settlement (Dkt. #197) is hereby **GRANTED**.

The Court accordingly **ORDERS** that for the purposes of this Settlement only, the prerequisites for a class action under Rule 23(a) of the Federal Rules of Civil Procedure have been satisfied in that: (a) the number of Settlement Class members is so numerous that joinder of all members thereof is impracticable; (b) there are questions of law and fact common to the Settlement Class; (c) the claims of Plaintiffs are typical of the claims of the Settlement Class they seek to represent; and (d) Plaintiffs and Class Counsel have and will continue to fairly and adequately represent the interests of the Settlement Class.

It is further **ORDERED** that for the purposes of this Settlement only, the requirements of certification of a class action under Rule 23(b)(2) of the Federal Rules of Civil Procedure have been

---

[18] *See* Dkt. #161; Dkt. #165–69; Dkt. #171–73; Dkt. #176; Dkt. #179; Dkt. #181; Dkt. #187–88; Dkt. #192–94; Dkt. #208; Dkt. #210; Dkt. #217; Dkt. #220; Dkt. #223–27; Dkt. #234–38; Dkt. #240; Dkt. #242; Dkt. #245; Dkt. #246; Dkt. #248; Dkt #251–52; Dkt. #255–57.

satisfied in that the party opposing the class has acted or intends to act on grounds that apply generally to the Settlement Class, so that final injunctive relief is appropriate representing the class as a whole.

It is further **ORDERED** that pursuant to Rule 23 of the Federal Rules of Civil Procedure and for the purpose of this Settlement only, Plaintiffs Jonathan Corrente, Charles Shaw, and Leo Williams are appointed as Class Representatives of the Settlement Class.

It is further **ORDERED** that pursuant to Rule 23 of the Federal Rules of Civil Procedure and for the purposes of this Settlement only, Yavar Bathaee of Bathaee Dunne LLP and Christopher M. Burke of Burke LLP are appointed as Class Counsel for the Settlement Class.

It is further **ORDERED** that the Court gives its final approval to parties' Stipulation and Agreement of Settlement dated December 12, 2024 (the "Stipulation") (Dkt. #154-1) and directs the parties to consummate the Settlement in accordance with the terms and provisions contained therein.

It is further **ORDERED** that, without affecting the finality of this Order and Final Judgment in any way, this Court retains exclusive jurisdiction over all parties to this Action and the Settlement Class members for all matters relating to this action including, but not limited to, the administration, interpretation, effectuation, and enforcement of the Stipulation.

It is further **ORDERED** that if the Settlement is not consummated in accordance with the terms of the Stipulation, then the Stipulation and this Order and Final Judgment (including any amendment(s) thereof, and except as expressly provided in the Stipulation or order of this Court) shall be null and void, of no further force or effect, and without prejudice to any of the parties, and may not be introduced as evidence or used in any action or proceeding by any person against the

parties, and the parties shall be restored to their respective litigation positions as they existed as of October 1, 2024.

It is further **ORDERED** that this action is hereby **DISMISSED** with prejudice and all parties to this action shall bear their own costs, except as otherwise provided in the Stipulation.

**IT IS SO ORDERED.**

 **SIGNED this 24th day of November, 2025.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE