# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| JONATHAN CORRENTE, et al., | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | Civil Action No. 4:22-cv-470 |
| | § | Judge Mazzant |
| THE CHARLES SCHWAB | § | |
| CORPORATION, | § | |
| | § | |
| *Defendant.* | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before the Court is Plaintiffs' Counsel's Motion for an Award of Attorney's Fees, Litigation Expenses, and Service Awards (Dkt. #199). Having considered the Motion, the relevant pleadings, and the applicable law, the Court finds that the Motion should be **GRANTED**.

## BACKGROUND

The background of this lawsuit is more thoroughly set forth in the Court's Memorandum Opinion and Order on the Plaintiffs' Motion for Final Approval of Class Action Settlement (Dkt. #285). On June 2, 2022, Plaintiffs Jonathan Corrente, Charles Shaw, and Leo Williams (collectively, "Plaintiffs"), each individually and on behalf of approximately twenty-five million members, filed a class action lawsuit challenging the merger between Charles Schwab ("Schwab") and TD Ameritrade Holding Corporation ("TD Ameritrade") (the "Merger") under Section 7 of the Clayton Act, seeking monetary damages and injunctive relief (Dkt. #1). More specifically, Plaintiffs allege that the Merger substantially lessened competition in an asserted Retail Order Flow Market ("ROFM"), which harmed Schwab customers in the form of reduced price improvements on trades (Dkt. #1 at ¶ 35).

On December 12, 2024, after more than five months of negotiations in front of an experienced mediator, the Honorable Nancy F. Atlas, the parties notified the Court that they had executed a Stipulation and Agreement of Settlement (the "Settlement" or the "Settlement Agreement") which they would later submit to the Court for preliminary approval (Dkt. #149 at p. 2). On January 24, 2025, more than one month after the execution of the Settlement, the parties mediated the issue of attorney's fees and litigation expenses before Judge Atlas. As a result, the parties agreed to cap their attorney's fees and expense reimbursement application at an amount decided during the mediation and also agreed on a set service award amount to be paid to Plaintiffs pending the Court's final approval of the Settlement. On February 4, 2025, Plaintiff filed their Unopposed Motion for Preliminary Approval of Class Action Settlement (Dkt. #154). On February 19, 2025, the Court granted Plaintiffs' motion and preliminarily approved the Settlement and scheduled the fairness hearing for August 28, 2025 (Dkt. #157 at pp. 4–5). On August 28, 2025, the Court held the fairness hearing at which counsel for both parties appeared and argued in favor of final approval of the Settlement. On July 7, 2025, Plaintiffs filed their Motion for Final Approval of Class Action Settlement arguing that the Settlement meets the requirements under Rule 23(e) of the Federal Rules of Civil Procedure (*See* Dkt. #197). On November 24, 2025, the Court entered an order granting Plaintiffs' Motion for Final Approval of Class Action Settlement (Dkt. #285).

On July 17, 2025, Plaintiffs' counsel Bathaee Dunne LLP, Burke LLP, Korein Tillery PC, and Capshaw DeRieux LLP (collectively, "Plaintiffs' Counsel") filed this Unopposed Motion for an Award of Attorney's Fees, Litigation Expenses, and Service Awards (Dkt. #199). Plaintiffs' Counsel's motion requests that the Court approve an award of attorney's fees in the amount of $8,250,000, litigation expenses in the amount of $686,492.60, and service awards of $5,000 to

each of the three named Plaintiffs for their services as the Class Representatives in this case (Dkt. #199 at p. 7).

## LEGAL STANDARD

Federal Rule of Civil Procedure 23(h) provides that "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." FED. R. CIV. P. 23(h). Rule 23(h) "requires that claims for attorney-fee awards be made by motion under Rule 54(d)(2) and that notice of the motion must be served on all parties and, for motions by counsel, directed to class members in a reasonable manner." *Morrow v. Jones*, 140 F.4th 257, 261 (5th Cir. 2025) (citing FED. R. CIV. P. 23(h)(1)). This notice provision allows "a class member, or a party from whom payment is sought the opportunity to object to the motion." *Id.* (citation modified) (citing FED. R. CIV. P. 23(h)(2)).

In the Fifth Circuit, attorney's fees in class action suits are calculated using the lodestar method. *See Strong v. BellSouth Telecomms., Inc.*, 137 F.3d 844, 850 (5th Cir. 1998). The lodestar is calculated by multiplying "the number of hours reasonably expended by an appropriate hourly rate." *Cruz v. Maverick Cnty.*, 957 F.3d 563, 573 (5th Cir. 2020) (citation omitted). A reasonable hourly rate is the "prevailing market rates in the relevant community . . . for similar services by lawyers of reasonably comparable skills, experience, and reputation." *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381 (5th Cir. 2011) (citing *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). The relevant legal market is "the community where the district court sits." *Alvarez v. McCarthy*, 2022 WL 822178, at *3 (5th Cir. Mar. 18, 2022) (citing *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002)). The lodestar is presumptively reasonable. *See Combs v. City of Huntington*, 829 F.3d 388, 392 (5th Cir. 2016).

The party seeking attorney's fees "must present adequately documented time records to the court." *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993); *see also Fessler v. Porcelana Corona De Mex., S.A. DE C.V.*, 23 F.4th 408, 415–16 (5th Cir. 2022) (explaining that "[t]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates."). Using this time as a benchmark, "the court should exclude all time that is excessive, duplicative, or inadequately documented." *Id.* (citations omitted). The hours surviving this vetting process are "those reasonably expended under the litigation." *Id.*

After the lodestar is calculated, the Fifth Circuit then uses a twelve-factor test (the "Johnson Factors") to determine "whether the lodestar figure should be adjusted upward or downward depending on the circumstances of the case." *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998) (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)); *see also Cruz*, 957 F.3d at 574 ("After the lodestar method is applied, courts use a twelve-factor test to determine whether counsel's performance requires an upward or downward adjustment from the lodestar."). The *Johnson* Factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the issues in the case; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee charged fore those services in the relevant community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client of the circumstances; (8) the amount involved and results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases."

*Migis*, 135 F.3d at 1047 (citing *Johnson*, 488 F.2d at 717–19).

The most critical factor in determining reasonableness is the degree of success obtained. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). "Many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate and should not be

double-counted." *Jason D.W. v. Hous. Indep. Sch. Dist.*, 158 F.3d 205, 209 (5th Cir. 1998) (citation modified). Three of the *Johnson* factors—complexity of the issues, results obtained, and preclusion of other employment—are fully reflected in the lodestar amount. *See Heidtman v. City of El Paso*, 171 F.3d 1038, 1043 (5th Cir. 1999). "[T]he court should give special heed to the time and labor involved, the customary fee, the amount involved and the results obtained, and the experience, reputation and ability of counsel." *Migis*, 135 F.3d at 1047 (citation omitted).

## ANALYSIS

Plaintiffs, pursuant to Rule 23(h) of the Federal Rules of Civil Procedure, request that the Court enter an order granting: (1) an award of attorney's fees in the amount of $8,250,000; (2) payment of Plaintiffs' Counsel's litigation expenses in the amount of $686,492.60; and (3) service awards of $5,000 to class representatives Jonathan Corrente, Charles Shaw, and Leo William (the "Class Representatives") in connection with litigating the claims in this action on behalf of the Settlement Class (Dkt. #199 at p. 7). The Court addresses each request in turn.

## I.  Attorneys' Fees Under Lodestar Method

The Court must first determine what a reasonable attorney's fee award is in this case. To do this, the Court starts with the lodestar calculation which is "the number of hours reasonably expended multiplied by the prevailing hourly rate in the community of similar work." *Fessler*, 23 F.4th at 415 (citation omitted). In their Motion for Attorney's Fees, Plaintiffs' Counsel requests a fee award of $8,250,000, which accounts for the more than 14,000 hours of time (calculated conservatively) spent litigating this case since June 2, 2022, through the lodestar cutoff date of June 30, 2025 (Dkt. #199 at pp. 11, 14). Defendant does not object to the attorneys' fees requested by Plaintiffs' Counsel since it does not exceed the cap that the parties mutually agreed to during their mediation. Plaintiffs' Counsel calculated the requested attorney's fee award by adding up the total

number of hours spent on this case—which includes time reports from four different law firms—multiplied by each of the attorneys' respective hourly rates (*See* Dkt. #199-1 at p. 12; Dkt. #199-2 at p. 4; Dkt. #199-3 at p. 6; Dkt. #199-4 at p. 3 (providing a lodestar timekeeper report for Bathaee Dunne LLP, Burke LLP, Korein Tillery PC, and Capshaw DeRieux LLP)).[1] The fee breakdown is: (1) Bathaee Dunne LLP spent a total of 7,068.5 hours for a lodestar of $6,605,398.50 (Dkt. #199-1 at p. 12); (2) Burke LLP spent a total of 230.3 hours for a lodestar of $291,115 (Dkt. #199-2 at p. 4); (3) Korein Tillery LLC spent a total of 7,434.30 hours for a lodestar of $3,886,120.00 (Dkt. #199-3 at p. 6); and (4) Capshaw Derieux LLP spent a total of 41.4 hours for a lodestar of $21,330.00 (Dkt. #199-4 at p. 3).

Based upon the above calculation, Plaintiffs' Counsel requests $8,250,000 in attorney's fees. According to Plaintiffs' Counsel, the requested attorney's fees of $8,250,000 applies a 0.763 lodestar multiplier, which reduces Plaintiffs' Counsel's billed hours in this case by nearly 24% (*See* Dkt. #199 at p. 11; Dkt. #268 at p. 7). Plaintiffs' Counsel does not expressly request an upward adjustment to the lodestar amount (*See* Dkt. #199). Plaintiffs' Counsel did, however, still include an analysis of the *Johnson* factors in their Motion, which they argue would support their request for an award of the lodestar amount without the application of the 0.763 multiplier: $10,800,000 (Dkt. #199 at pp. 18–24).[2] Plaintiffs' Counsel's analysis did not address all twelve of the *Johnson* factors. Rather, Plaintiffs' Counsel only addresses the *Johnson* factors that they deemed relevant to their analysis (Dkt. #199 at p. 19). The relevant factors included a total of six *Johnson* factors: (1)

---

[1] The lodestar timekeeper reports for each of the firms includes work from partners, associates, of counsel, staff attorneys, legal analysts, and litigation support (*See* Dkt. #199-1 at p. 12; Dkt. #199-2 at p. 4; Dkt. #199-3 at p. 6; Dkt. #199-4 at p. 3).

[2] Plaintiffs' Counsel contends that without applying the 0.763 multiplier, which reduces the hours billed on this case by nearly twenty-four percent (24%), the lodestar amount would around $10,803,933.50 (*See* Dkt. #199 at p. 11).

the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal services properly and the experience, reputation, and ability of Plaintiffs' Counsel; (4) the customer fee and awards in similar cases; (5) the amount involved and the results obtained; and (6) the undesirability of the case (Dkt. #199 at pp. 19–24).

As discussed above, Defendant does not object to any of the fee awards requested by Plaintiffs' Counsel in this instant motion, since the fees do not exceed the cap that the parties mutually agreed to during their January 24, 2025 mediation. The Court did, however, receive objections about the requested fee awards from some of the members of the Settlement Class. Generally, the Objectors took issue with the following: (1) the value of the relief to the class in relation to the requested attorney's fees and costs;[3] (2) the fairness of the requested service award of $5,000 for each Class Representative;[4] (3) the hourly rates charged by Plaintiffs' Counsel;[5] and (4) the notice provided to the class of Plaintiffs' Counsel's request for attorney's fees.[6] The Court will address each of these objections in more detail later in this Order. In short, the Court finds that none of the objections prevent the Court from awarding the attorney's fees, litigation expenses, and service awards requested by Plaintiffs' Counsel.

---

[3] *See* Dkt. #161; Dkt. #165–69; Dkt. #171–73; Dkt. #176; Dkt. #179; Dkt. #181; Dkt. #187–88; Dkt. #192–94; Dkt. #208; Dkt. #210; Dkt. #217; Dkt. #220; Dkt. #223–27; Dkt. #234–38; Dkt. #240; Dkt. #242; Dkt. #245–46; Dkt. #248; Dkt. #251–52; Dkt. #255–57.

[4] *See* Dkt. #171; Dkt. #173; Dkt. #176; Dkt. #242; Dkt. #245; Dkt. #248.

[5] Only one Objector—the State of Iowa—objects to Plaintiffs' Counsel's lodestar calculation and the 0.763 multiplier requested in Plaintiffs' Counsel's fee application arguing that a 0.33 multiplier is more appropriate (*See* Dkt. #245 at pp. 24–25).

[6] Similarly, the State of Iowa is the sole Objector who argues that the members of the Settlement Class had insufficient time to object to Plaintiffs' Counsel's attorney's fee request (*See* Dkt. #245 at pp. 25–26).

## A.  Reasonableness of Plaintiffs' Counsel's Hours Billed

The first step in the lodestar calculation requires the Court to determine the "compensable hours listed in the attorney's time records." *Yin Invs. USA, LP v. Aspen Specialty Ins. Co.*, 2022 WL 2528244, at *2 (E.D. Tex. July 7, 2022) (citing *Shipes v. Trinity Indus.*, 987 F.2d 311, 319 (5th Cir. 1993)). The Fifth Circuit has made clear that the "documentation supporting a factual finding regarding the amount of attorney's fees must be sufficient for the court to verify that the applicant has met its burden of establishing an entitlement to a specific award." *Portillo v. Cunningham*, 872 F.3d 728, 741 (5th Cir. 2017). To facilitate this determination, courts ordinarily expect that the fee request submitted to the courts should include "contemporaneously created time records that specify, for each attorney, the date, the hours expended, and the nature of the work done." *Lewallen v. City of Beaumont*, 2009 WL 2175637, at *2 (E.D. Tex. July 20, 2009) (citation omitted). However, "the lack of records is *not* necessarily fatal to a fee request as long as the evidence produced is adequate to determine reasonable hours." *Portillo*, 872 F.3d at 742 (emphasis added).

Plaintiffs' Counsel argues that the hours they have expended in this case, which total more than 14,000 hours, are reasonable (Dkt. #199 at p. 13). In support of their lodestar calculation, Plaintiffs' Counsel provides the Court with the following documentation: (1) affidavits from each attorney providing, among other things, a detailed description of the work they have done on the case;[7] (2) timesheets which include the position, hours spent, and respective billing rate for each timekeeper involved in this case;[8] and (3) a declaration by Warren T. Burns, a disinterested attorney who practices in the Eastern District of Texas, attesting to the reasonableness of both the total

---

[7]  *See* Dkt. #199-1; Dkt. #199-2; Dkt. #199-3; Dkt. #199-4.

[8]  *See* Dkt. #199-1 at p. 12; Dkt. #199-2 at p. 4; Dkt. #199-3 at p. 6; Dkt. #199-4 at p. 3.

amount of hours spent litigating this case and the billing rates of Plaintiffs' Counsel. Moreover, Plaintiffs' Counsel also argues that the reasonableness of their hours is further supported by the following facts: the case was staffed leanly, lead counsel discussed and assigned tasks according to the needs of the case to prevent duplicative and redundant work, and tasks were efficiently allocated based on complexity (Dkt. #199 at p. 13).

Here, the Court finds that the evidence provided by Plaintiffs' Counsel supports a finding that the hours expended in this case are reasonable. Plaintiffs' Counsel's Declarations highlight the complexity and undesirability of this case, the extensive factual and legal investigation undertaken before Plaintiffs' Counsel even filed the Complaint, and the significant amount of work required to reach a settlement in this case (*See* Dkt. #199-1; Dkt. #199-2; Dkt. #199-3; Dkt. #199-4). This is a complex class action case involving a private challenge of the Merger between two of the largest brokerage firms in the United States. The case was litigated for more than three years before the parties were able to reach a meaningful settlement. The briefing involved complicated antitrust and securities issues including post-merger Section 7 challenges and challenges relating to Defendant's payment-for-order-flow practices.[9] Indeed, this case required Plaintiffs' Counsel to analyze and review voluminous amounts of complex financial information—which included more than 218,319 documents (totaling more than 950,021 pages) and 6.5 terabytes of electronic data—to prepare for trial. If the 282 docket entries and 103-page, 488 paragraph complaint are any indication, this Settlement was the result of litigious and hard-fought negotiations that required a considerable amount of work from all parties involved.

---

[9] In further support of their Attorney's fee award, Plaintiffs' Counsel contends that this lawsuit is one of only two successful post-merger Section 7 challenges this century and would also be the only successful challenge relating to payment-for-order-flow practices (Dkt. #199 at pp. 15–16).

Additionally, despite Plaintiffs' Counsel use of block billing[10] in the timesheets they submitted in support of their requested award, the Court does not believe that a reduction to the hours billed in this case is warranted. Generally, block billing is disfavored because "it prevents the court from accurately determining the time spent on any particular task, thus impairing the court's evaluation of whether the hours were reasonably expended." *Peterson*, 2021 WL 4956244 at *6. When the records contain block billing, a reduction to the hours billed may, although not required, be warranted "where the records presented are inadequate to determine reasonable hours." *Id.* However, the Fifth Circuit has recognized that the practical considerations of the practice of law today may prevent attorneys from avoiding the use of block billing in its entirety. *See La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 327 (5th Cir. 1995) ("[W]e are mindful that the practical consideration of the daily practice of law in this day and age preclude writing a book to describe in excruciating detail the professional services rendered for each hour or fraction of an hour."). Here, the Court finds that a reduction for block billing in this case is unnecessary because Plaintiffs' Counsel already reduced their total hours billed in this case by nearly 24% (*See* Dkt. #199 at p. 11; Dkt. #268 at p. 7). Indeed, this voluntary percentage reduction is consistent with the reduction routinely applied for block billing by both the Fifth Circuit and this Court. *See Peterson*, 2021 WL 4956244 at *6 ("When making a reduction because of block billing courts in the Fifth Circuit reduce a percentage of the hours or the lodestar figure, and this amount usually ranges from 10% to 30%.") (collecting cases). Accordingly, the more than 14,000 hours billed in this case were reasonable and necessary given the nature, length, and complexity of this case.

---

[10] "Block billing refers to a time-keeping method by which each lawyer and legal assistant enter the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." *Peterson v. Tenant Tracker, Inc.*, 2021 WL 4956244, at *6 (E.D. Tex. Sept. 30, 2021) (citation modified)

### B.  Reasonableness of Plaintiffs' Counsel's Hourly Rates

Having determined that the hours expended by Plaintiffs' Counsel in this case are reasonable, the Court turns to the hourly rates. There are several hourly rates at issue: (1) Bathaee Dunne LLP's rates range from $500 for staff attorneys, $650 for associates, $850 to $900 for of counsels, and $1,095 to $1,295 for partners and senior partners (Dkt. #199-1 at p. 12); (2) Burke LLP's rates range from $350 for legal analysts, $800 for of counsels, and $1,500 for partners and senior partners (Dkt. #199-2 at p. 4); (3) Korein Tillery LLC's rates range from $350 legal analysts, $400 for paralegals and staff attorneys, $800 to $850 for associates, and $900 to $1,700 for partners and senior partners (Dkt. #199-3 at p. 6); and (4) Capshaw Derieux LLP's rates range from $200 for paralegals and $700 for partners (Dkt. #199-4 at p. 3).[11]

Plaintiffs' Counsel argues their hourly rates charged in litigating this case are reasonable (Dkt. #199 at p. 14). In support of their rates, Plaintiffs' Counsel provided the Court with a Declaration from Warren T. Burns, a disinterested attorney from Burns Charest LLP who actively practices in the Dallas-Forth Worth area, including the Eastern District of Texas, who attests to the reasonableness of the hourly rates at issue (*See* Dkt. #199-5). Specifically, Mr. Burns states that his firm's rates—ranging from $1,100 to $1,500 for partners and $700 to $900 for associates—have been approved by numerous federal jurisdictions around the country (Dkt. #199-5 at ¶ 7).[12] In further support of the hourly rates at issue, Mr. Burns emphasizes that there are only a few firms in the Eastern District of Texas, Plaintiffs' Counsel being one of them, who are capable of handling

---

[11]  In general, the hourly rates Plaintiffs' Counsel charged in this case range from $400 for attorneys focused on document review to $1,500 for senior partners with the exception of a senior partner at Korein Tillery LLC who charges $1,750 per hour.

[12]  In addition, Mr. Burns also states that his firm applies the same rates without regard to jurisdiction (Dkt. #199-5 at ¶ 7).

complex, nationwide antitrust class actions (Dkt. #199-5 at ¶¶ 8–9). He also contends that the number of firms capable of handling this case is dwindled even further when the nature and risk of this litigation is taken into consideration—i.e., private enforcement of the Clayton Act to challenge the Merger of large financial institutions on a purely contingent basis (Dkt. #199-5 at ¶ 8).

The reasonable hourly rate is determined by the "prevailing market rates in the relevant community . . . for similar services by lawyers of reasonably comparable skill, experience and reputation." *McClain*, 649 F.3d at 381. The relevant legal market is "the community where the district court sits." *Alvarez*, 2022 WL 822178 at *3. This Court, however, has previously found that, despite falling within the Northern rather than the Eastern District, the "Dallas-Fort Worth legal market can be an appropriate guide for determining the reasonableness of rates." *Solferini v. Corradi USA, Inc.*, 2021 WL 5415293, at *5 (E.D. Tex. Nov. 19, 2021) (collecting cases). Typically, "the reasonable hourly rate for a particular community is established through affidavits of other attorneys practicing there." *Cunningham v. Concentrix Sols. Corp.*, 2023 WL 11946468, at *11 (E.D. Tex. Jan. 10, 2023) (citing *Tollet*, 285 F.3d at 368)). Importantly, "a party requesting attorneys' fees must do more than provide an affidavit from its own attorney to support the proposed hourly rate." *Id.* (citation omitted). However, "[t]he trial court itself is also considered an expert as to the reasonableness of the fees and therefore may exercise its own expertise and judgment in making an independent valuation of appropriate attorney fees." *Bevill v. City of Quitman*, 2025 WL 2470073, at *5 (E.D. Tex. Aug. 27, 2025) (citing *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004)).

Here, the Court finds that the hourly rates Plaintiffs' Counsel charged in litigating this case are reasonable. To begin, the fact that Defendant does not contest the reasonableness of the hourly

rates charged by Plaintiffs' Counsel is, on its own, significant. Indeed, where the reasonableness of the hourly rates are not contested by Defendant, they are considered *prima facie* reasonable. *See Imperium IP Holdings (Cayman), Ltd. v. Samsung Elecs. Co.*, 2018 WL 1602460, at *7 (E.D. Tex. Apr. 3, 2018) (citation omitted) (finding that plaintiff's rates are *prima facie* reasonable where defendants do not contest the reasonableness of plaintiff's rates); *Regions Equip. Fin. Corp. v. AT 2400 Off. No. 530775*, 2018 WL 4856776, at *3 (E.D. Tex. Sept. 18, 2018) (citation omitted) (finding that plaintiff's rates are presumptively reasonable where defendant did not respond at all, much less oppose plaintiff's hourly rates). Even if the Court does not treat the rates as *prima facie* reasonable, a finding of reasonableness of the hourly rates at issue is still warranted. Specifically, courts throughout this district—including this Court—have commonly held that rates similar to those charged by Plaintiffs' Counsel are reasonable. *See, e.g.*, *Tech Pharmacy Servs., LLC v. Alixa Rx LLC*, 298 F. Supp. 3d 892, 906–07 (E.D. Tex. 2017) (finding that a range from $450 to $860 per hour to be reasonable rates); *Imperium IP Holdings (Cayman), Ltd.*, 2018 WL 1602460 at *7–8 (approving rates as great as $1,100 per hour in a complex commercial litigation); *Cruson v. Jackson Nat'l Life Ins. Co.*, 2021 WL 3702483, at *3 (E.D. Tex. June 4, 2021) (awarding attorney's fees at rates of $823.94 and $951.22, respectively, for two McKool Smith attorneys in a complex commercial case). For the higher hourly rates that Plaintiffs' Counsel seeks to recover—ranging from $1,295 to $1,750—the Court has been unable to find any other similar complex cases in either the Eastern or Northern District of Texas that have awarded attorneys' fees at these higher billing rates (i.e., $1,295 to $1,750).[13] This does not, however, prevent the Court from awarding Plaintiffs' Counsel's

---

[13] The highest hourly rate that this Court could find in a complex commercial case was up to $1,100 an hour. *See Imperium IP Holdings (Cayman), Ltd.*, 2018 WL 1602460 at *7–8.

attorney's fees at those higher rates. Indeed, the district court "itself is also considered an expert as to the reasonableness of the fees and therefore may exercise its own expertise and judgment in making an independent valuation of appropriate attorney fees." *Bevill*, 2025 WL 2470073, at *5 (citation omitted). Here, the Court finds that the higher billing rates (ranging from $1,250 to $1,750 per hour) charged by Plaintiffs' Counsel in this case are reasonable considering the novelty and complexity of the issues in this case.[14] Indeed, according to Mr. Burns, an experienced litigator who focuses on complex class action cases, Plaintiffs' Counsel is one of the few, if not the only, firms that could handle this type of complex, nationwide antitrust class action litigation (*See* Dkt. #199-5 at ¶ 8).

### C.    The *Johnson* Factors

Typically, after determining the lodestar the Court would need to determine whether the lodestar value should be adjusted either upwards or downwards based on the twelve *Johnson* factors. *See Cruz*, 957 F.3d at 574 (citation modified) (explaining that "[a]fter the lodestar method is applied, courts use a twelve-factor test to determine whether counsel's performance requires an upward or downward adjustment from the lodestar."). However, neither Plaintiffs' Counsel nor Defendant argue for an adjustment to the lodestar in this case (*See* Dkt. #199 at pp. 18–19 (arguing that the Johnson factors *would* support a fee award in the amount of the lodestar without the multiplier they applied to their requested award, however, Plaintiffs' Counsel is not requesting an award for that amount)). Indeed, Plaintiffs' Counsel seeks an award for *less* than the lodestar amount in this case. *See Erica P. John Fund, Inc. v. Halliburton Co.*, 2018 WL 1942227, at *13 (N.D.

---

[14] *See* Dkt. #199-1 at ¶ 28 (proving that "[t]his suit is one of only two successful post-merger Section 7 challenges this century—and also appears to be the only antitrust class action with an outcome favorable to a plaintiff in the Fifth Circuit in the last twenty years, as well as the first successful class action challenging practices related to payment for order flow.").

Tex. Apr. 25, 2018) ("Because there is a strong presumption that the lodestar represents a reasonable fee . . . the fact that Class Counsel seeks an award less than the lodestar supports finding that the fee award is reasonable."). Accordingly, the Court finds that Plaintiffs' Counsel's requested fee of $8,250,000, which is 76.3% of their lodestar, is reasonable.

* * *

In sum, the Court finds that an award of Plaintiffs' Counsel's attorney's fees in the amount of $8,250,000 is warranted in this case. More specifically, both the total hours and the hourly rates charged by Plaintiffs' Counsel are more than reasonable given the complexity and novelty of the issues in this case. Moreover, the fact that Plaintiffs' Counsel's requested fee award is both unopposed by Defendant and less than their lodestar weighs heavily in favor of a finding of reasonableness. Accordingly, Plaintiffs' Counsel's request for an attorney's fees award of $8,250,000 is hereby **GRANTED**.

## II.    Litigation Expenses

The Court now  turns to Plaintiffs' Counsel's request for the litigation expenses they incurred in this case. Plaintiffs' Counsel requests an award of $686,492.60 for the costs incurred in connection with litigating this case (Dkt. #199 at p. 25). These expenses include the costs incurred for filing fees, e-discovery, expert witnesses and consultants, court reporting and videographers for depositions, and travel (*See* Dkt. #199-1; Dkt. #199-2; Dkt. #199-3; Dkt. #199-4). A significant amount—87% of the requested expenses, or $596,547.81—was spent on the fees for the expert services they retained for this case (Dkt. #199-4 at p. 8). Plaintiff's Counsel argues that their costs are reasonable and reflect the usual and customary charges for expenses that are part of the costs that would have been billed to the client if this case had been a non-contingency matter (Dkt. #199-3 at ¶ 10). Plaintiffs' Counsel emphasizes that their expert expenses, in particular, are

appropriate and modest given the complexity of the case, the volume of the data analyzed, and the difficulty inherent to financial markets (Dkt. #199 at p. 25). At the time of the Settlement, Plaintiffs' experts were working on a statistical analysis to the test their hypothesis that the Merger caused reduced price improvements on trades, which required a review of 6.5 terabytes of trade data (encompassing 6.4 billion trades) from 2019 to 2023 (Dkt. #199 at p. 25).

Rule 54 of the Federal Rules of Civil Procedure permits a prevailing party to collect the fees, other than attorney's fees, incurred by counsel in connection with prosecuting the case. *See* FED. R. CIV. P. 54(d)(1) ("Unless a federal statue, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party."). To determine which expenses are compensable, courts in the Fifth Circuit "adhere to the principle that reasonable out-of-pocket expenses that are part of the costs normally charged to a fee-paying client may be recovered as part of an attorney's fee award." *Copeland v. Alamo Billing Co.*, 2021 WL 7500786, *10 (E.D. Tex. Dec. 17, 2021) (citation omitted).

Here, the Court finds that Plaintiffs' Counsel are entitled to a reimbursement of $686,492.60 for the reasonable and necessary costs they incurred in prosecuting this case and achieving the Settlement. Each of the expenses that Plaintiffs' Counsel seeks to recover—which include the costs incurred for filing fees, e-discovery, expert witnesses and consultants, court reporting and videographers for depositions, and travel—have routinely been found to be reasonable out-of-pocket expenses incurred in connection with the prosecuting a case. *See Schwartz v. TXU Corp.*, 2005 WL 3148350, at *34 (N.D. Tex. Nov. 8, 2005) (awarding plaintiffs' counsel their reasonable expenses in the amount of $541,203.77 which included expenses for transportation, means and lodging, in-house and outsourced photocopying, computerized and on-

line research, court reporting fees and depositions transcripts, telephone and facsimile, overnight courier service, purchase of special materials, postage, and other services). Indeed, courts in this circuit have approved expense awards for significantly higher amounts than are at issue here. *See Erica P. John Fund, Inc.*, 2018 WL 1942227, at *14 (awarding plaintiff's counsel their reasonable expenses in the amount of $5,969,540.84 which included expenses for experts and consultants, document maintenance, legal research, and mediation fees). Accordingly, Plaintiffs' Counsel's request for an award of $686,492.60 in litigation expenses is hereby **GRANTED**.

## III.    Service Awards

Lastly, the Court turns to Plaintiffs' Counsel's final request which seeks a service award of $5,000 for each of the Class Representatives in connection with litigating the claims in this action on behalf of the Settlement Class (Dkt. #199 at p. 26). Plaintiffs' Counsel argues that the service awards the Class Representatives request are fair and reasonable in light of their efforts and diligence that they have expended over the last three years in litigating this case (Dkt. #199 at pp. 26–27). More specifically, the Class Representatives have meaningfully participated in discovery, including working with counsel to identify and produce detailed financial records from all retail brokerages where they had accounts over a multi-year period, responding to one set of interrogatories and requests for admissions, and preparing responses to a second set of interrogatories that ultimately were not served due to the case settling (Dkt. #199 at pp. 26–27). Additionally, the Class Representatives also reviewed pleadings, motions, and other documents and frequently communicated with Plaintiffs' Counsel concerning the status of the case, court documents, strategy, and the Settlement (Dkt. #199 at p. 27). Moreover, Plaintiffs' Counsel emphasizes that the amount requested is consistent with, or less than, awards granted in similar

cases including those where only injunctive relief was obtained by the class (Dkt. #199 at p. 27). The Court agrees with Plaintiffs' Counsel.

In class action lawsuits, "[c]ourts may approve service awards to named plaintiffs if the awards are fair and reasonable." *Roberts v. Baptist Healthcare Sys., LLC*, 2023 WL 5163374, at *7 (E.D. Tex. June 29, 2023) (citation modified). However, "service awards are not always merited." *Id.* (citation omitted). To decide whether a service award is warranted, courts consider: "(1) the actions the plaintiff has taken to protect the interests of the class; (2) the degree to which the class has benefitted from those actions; and (3) the amount of time and effort the plaintiff expended in pursuing the litigation." *Id.* (citation omitted). Courts may also look to the "percentage of the service award compared to the common fund or compare the amount to awards given in similar litigation." *Id.* (citation omitted).

Here, the Court finds that the requested service award of $5,000 to each of the Class Representatives in this case is fair and reasonable and thus warrants its approval. Over the last three years that this case has been litigated the Class Representatives have expended a considerable amount of time and effort to ensure that a meaningful result was achieved not only for themselves but also for each and every member of the Settlement Class. Their efforts have included, among other things, participating in discovery, reviewing important court documents, frequently communicating with counsel about the status of the case and the strategy relating to same, and making recommendations as to whether or not to accept a particular settlement offer (*See* Dkt. #197-3 at ¶¶ 9–10; Dkt. #197-4 at ¶¶ 9–10; Dkt. #197-5 at ¶¶ 9–10). *See Lee v. Metrocare Servs.*, 2015 WL 13729679, at *4 (N.D. Tex. July 1, 2015) ("Courts have awarded incentive payments to class representatives to compensate them for activities including participation in the settlement process,

oral and written discovery, depositions, and hearings."); *see also Purdie v. Ace Cash Express, Inc.*, 2003 WL 22976611, at *7 (N.D. Tex. Dec. 11, 2003) (approving incentive payments as compensation to lead plaintiffs for responding to discovery and evaluating settlement proposals among other things). Additionally, the Settlement Class has significantly benefited from the actions of the Class Representatives. Specifically, the antitrust compliance program provided for by the Settlement will result in a substantial monetary benefit to the Settlement Class (*See* Dkt. #196 at ¶¶ 84–85 (providing, in an expert report, that the compliance program will yield additional price improvements between $10.7 million and $14.5 million per month for Schwab brokerage customers)). Moreover, the amount requested ($5,000 for each Class Representative) is consistent with award amounts routinely approved by district courts in the Fifth Circuit. *See Duncan v. JPMorgan Chase Bank, N.A.*, 2016 WL 4419472, at *16 (W.D. Tex. May 24, 2016) (citation modified) (finding that "[d]istrict courts in the Fifth Circuit routinely award $5,000-$10,000 per named plaintiff" to compensate named plaintiffs for the services they provide). Accordingly, Plaintiffs' Counsel's request for a service award of $5,000 to each Class Representative is hereby **GRANTED**.

## IV.    Objectors' Arguments

As discussed above, Defendant does not object to any of the fee awards requested by Plaintiffs' Counsel in this instant motion. The Court did, however, receive objections about the requested fee awards from some members of the Settlement Class. Generally, the Objectors took issue with the following: (1) the value of the relief to the class in relation to the requested attorney's fees and costs; (2) the fairness of the requested service award of $5,000 for each Class Representative; (3) the hourly rates charged by Plaintiffs' Counsel and (4) the notice provided to the class of Plaintiffs' Counsel's request for attorneys' fees. The Court addresses each category of

objection in turn. Ultimately, the Court finds that none of the objections have merit and thus does not prevent the Court from approving Plaintiffs' Counsel's request fees.

A.  **The Value of the Relief to the Class in Relation to the Requested Attorney's Fees and Costs**

Most of the fee-related objections, in some form or another, take issue with the value of the relief to the class in relation to the requested attorney's fees and costs.[15] Some of the objections are couched in boilerplate language (*See e.g.*, Dkt. #166 at p. 1; Dkt. #181 at p. 1; Dkt. #187 at p. 1; Dkt. #188 at p. 1; Dkt. #192 at p. 1; Dkt. #210 at p. 1; Dkt. #234 at p. 1; Dkt. #261 at p. 1 ("While I understand attorneys are entitled to compensation, the amount requested appears grossly disproportionate to the actual, practical benefit delivered to the class members.")). Other objections, including those submitted by Gavin Rossi[16] and the State of Iowa[17], are more fully developed. Regardless of the wording, it appears that each of these objections relate to the eighth *Johnson* factor: "[t]he amount involved and the results obtained." *Johnson*, 488 F.2d at 718 (citation modified). Put simply, the Objectors argue that Plaintiffs' Counsel's requested fee award is unfair given the lack of a tangible monetary benefit to the class members under the Settlement.

The Court finds that the objections relating to the value of the relief provided to the class in relation to the requested attorney's fees and costs are without merit and thus does not prevent the Court from approving Plaintiffs' Counsel's requested fees. Where, as here, the class action

---

[15]  *See* Dkt. #161; Dkt. #165–69; Dkt. #171–73; Dkt. #176; Dkt. #179; Dkt. #181; Dkt. #187–88; Dkt. #192–94; Dkt. #208; Dkt. #210; Dkt. #217; Dkt. #220; Dkt. #223–27; Dkt. #234–38; Dkt. #240; Dkt. #242; Dkt. #245–46; Dkt. #248; Dkt. #251–52; Dkt. #255–57.

[16]  Arguing that "[t]he request for $8.25 million in Attorney's fees and $700,000 in expenses is not tethered to any tangible, monetary, or measurable benefit for the class" (Dkt. #176 at pp. 8–9).

[17]  Arguing that "Plaintiffs achieved none of the goals they set forth in their complaint, yet Plaintiffs' counsel seeks $8,250,000 in fees at a rate of more than $731 per hour" (Dkt. #245 at p. 15).

settlement contains injunctive only relief, making it difficult to value the monetary benefit provided to the class, the requested fee award cannot be justified (or undermined) based upon a comparison of the speculative dollar value of the injunctive relief provided by the settlement. *See DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 337 (W.D. Tex. 2009) (citation omitted); *Stiner v. Brookdale Senior Living*, 2025 WL 1676276, at *5 (N.D. Cal. June 13, 2025) (citing *Kim v. Allison*, 8 F.4th 1170, 1181 (9th Cir. 2021)) ("Because injunctive relief is inherently difficult to monetize . . . courts tend to use the lodestar method in injunctive relief class actions."). Instead, to determine the appropriate attorney's fee award in a case with injunctive only relief, courts use the lodestar method, which compensates the attorneys based on their reasonable time and rates. *DeHoyos*, 240 F.R.D. at 337. As already discussed at length by the Court above, Plaintiffs' Counsel's properly justified their requested fee award using the lodestar method, which the Court found adequately reflected their reasonable hours and rates in this case. *See supra* Section I. Thus, the Objectors attempt to undermine the requested fee award by comparing it to the speculative value of the injunctive relief provided by the Settlement is not a proper basis to object. *See id.* at 336–37 (overruling the objections to the requested attorneys' fees that were based on a comparison between the requested fees and the value of the injunctive only relief provided in the class action settlement). Nevertheless, even if Plaintiffs' Counsel had to justify their attorney's fee award based on the value of the injunctive relief provided by the Settlement, the Court finds that Plaintiffs' Counsel has easily done so in this case (*See* Dkt. #196 at ¶¶ 84–85 (providing, in an expert report, that the compliance program will yield additional price improvements between $10.7 million and $14.5 million per month for Schwab brokerage customers)). Accordingly, the objections to the requested attorney's fees based on the value of the relief provided to the class are **OVERRULED**.

### B. The Fairness of the Requested Service Award of $5,000 to Each Class Representative

The Court will now address the objections relating to the requested service award of $5,000 to each of the Class Representatives.[18] Most of the objections (5 out of the 6 objections) oppose the requested service awards on the grounds of fairness, not reasonableness. Generally, these Objectors argue that a service award of $5,000 to each Class Representative is unfair considering that the remaining class members receive no direct financial benefit from the Settlement (*See* Dkt. #171 at p. 1; Dkt. #173 at p. 1; Dkt. #176 at pp. 9–10; Dkt. #242 at pp. 1–2; Dkt. #245 at pp. 8–9). One objector, David Simon, however, objects to the reasonableness of the requested service award at issue. More specifically, Simon argues that "[t]he proposed service awards lack clear documentation or rationale. Without evidence of substantial time and effort invested by the named plaintiffs, awarding such bonuses is unjustified, particularly when other class members receive little to no compensation" (Dkt. #248 at p. 1). The Court addresses each of these service award objections in turn.

Turning first to the objections relating to the fairness of the requested service fee award in this case, the Court finds that the Objectors' fairness objections are without merit. Specifically, these Objectors fail to consider, address, or rebut that the service award requested in this case is consistent with the award amounts that are routinely approved by the district courts in the Fifth Circuit. *See Duncan*, 2016 WL 4419472, at *16 (citation modified) (finding that "[d]istrict courts in the Fifth Circuit routinely award $5,000-$10,000 per named plaintiff."). Nor do these Objectors provide any argument as to why the Court should depart from the service awards granted in cases

---

[18] *See* Dkt. #171; Dkt. #173; Dkt. #176; Dkt. #242; Dkt. #245; Dkt. #248.

similar to this one (*See* Dkt. #199 at p. 27 (citing cases approving service awards of $5,000, $15,000, $9,900, $40,000, and $80,000 in injunctive-only class action settlements)). *See Roberts*, 2023 WL 5163374, at *7 (citation omitted) (explaining that to determine whether a service award is warranted to the representative plaintiffs, courts consider, among other things, the amount to awards given in similar litigation). Accordingly, the objections relating to the requested service award of $5,000 for each Class Representative are **OVERRULED**.

Next, the Court addresses Simon's objection that the requested service awards "lack clear documentation or rationale" (Dkt. #248 at p. 1). Here, the Court similarly finds that this objection is without merit. As discussed in more detail above, the Class Representatives have submitted affidavits demonstrating that they have spent a considerable amount of time and effort in litigating this case. Indeed, these affidavits describe, in detail, the work they have done on this case over the last three years (*See* Dkt. #197-3 at ¶¶ 9–10; Dkt. #197-4 at ¶¶ 9–10; Dkt. #197-5 at ¶¶ 9–10 (providing that the Class Representatives have participated in extensive discovery, reviewed important court documents, frequently communicated with counsel about the status of the case and strategy relating to same, and made recommendations as to whether to accept a particular settlement or not)). *See Lee*, 2015 WL 13729679, at *4 ("Courts have awarded incentive payments to class representatives to compensate them for activities including participation in the settlement process, oral and written discovery, depositions, and hearings."). Additionally, the Class Representatives' Declarations include an estimate of the total hours they have each spent working on this case (*See* Dkt. #266-5 at ¶ 5; Dkt. #266-6 at ¶ 5; Dkt. #266-7 at ¶ 5 (providing that the Class Representative estimate they have spent a total of 30–40 hours of time working on this case with

counsel from its inception to present)). Accordingly, the objection relating to the requested service award of $5,000 for each Class Representative is **OVERRULED**.

## C. Reasonableness of Plaintiffs' Counsel's Hourly Rate

The State of Iowa is the only Objector to challenge the calculation of Plaintiffs' Counsel's lodestar provided in Plaintiffs' Counsel's fee application (*See* Dkt. #245 at pp. 22–25). Specifically, this objection attacks the reasonableness of the hourly rates, the number of hours submitted, and the 0.763 multiplier applied by Plaintiffs' Counsel. The State of Iowa starts by arguing that Plaintiffs' Counsel's hourly rates in this case—ranging from $400 for attorneys focused on document review to $1,500 for senior partners (a blended rate of $731 per professional)—are "far out of range for the market in the Eastern District of Texas" (Dkt. #245 at p. 23). To support its argument, the State of Iowa relies solely on Judge Gilstrap's opinion in *Morrow v. City of Tenaha Deputy City Marshal Barry Washington*, 2020 WL 5534486 (E.D. Tex. Sept. 15, 2020) (*See* Dkt. #245 at pp. 22–24). According to the State of Iowa, the court in *Morrow* found that rates of $500 per hour are excessive for a partner in a complex class action civil rights case (Dkt. #245 at pp. 22–23). Thus, the State of Iowa argues that Plaintiffs' Counsel's blended rate of more than $731 per professional in this case is unreasonable and should be reduced (*See* Dkt. #245 at pp. 22–25).[19] Next, the State of Iowa argues, without providing any support, that the total "hours [worked by Plaintiffs' Counsel] are unreasonable" (Dkt. #245 at p. 24). Lastly, the State of Iowa argues that "given that most generously Plaintiffs achieved one of the three goals they pleaded in their complaint (no

---

[19] The State of Iowa contends that Plaintiffs' Counsel fee award should be $1,492,104.90 instead of their requested fee award of $8,250,000 (Dkt. #245 at pp. 23–25).

damages, no divestment or segregation) a lode-star adjustment multiplier of 0.33" is more appropriate in this case (Dkt. #245 at p. 25).

The Court finds that the State of Iowa's objection that Plaintiffs' Counsel's hourly rates in this case are unreasonable is without merit and thus does not prevent the Court from approving the requested fees. The State of Iowa's reliance on *Morrow* is misplaced for several reasons. First, the State of Iowa ignores the other, more recent, decisions in the Eastern District of Texas approving hourly rates similar to those rates at issue in this case. *See Cruson*, 2021 WL 3702483, at *3 (awarding attorneys fees at rates of $823.94 and $951.22 per hour in a complex commercial case after finding that "they are within the range of prevailing market rates for similar lawyers for similar services."). Second, the facts in *Morrow* are distinguishable from the facts in this case. In *Morrow*, the court held that rates of $500 per hour were excessive only after finding that the complexity of the case in more recent years has diminished with the attorney's bills being "currently for much less complex tasks that must be performed under the Consent Decree [which] do not require the skill—or billing rates—of a highly accomplished complex class action litigator." 2020 WL 5534486, at *4 (citation modified). This is not the case here. Plaintiffs' Counsel made sure to efficiently allocate the tasks so that the skilled complex class action litigators with the higher rates worked only on the complex tasks (i.e., key briefing and analysis) with the lower billing rate attorneys handling the less complex tasks (i.e., preliminary stage discovery and document review) (*See* Dkt. #199 at p. 13; Dkt. #199-1 at ¶ 31). Moreover, the lodestar calculation has a cutoff date of June 30, 2025, which means that unlike the attorney's bills in *Morrow*, Plaintiffs' Counsel's bills will not include fees for the less complex tasks that must be performed under the Settlement (*See* Dkt. #199-1 at ¶ 30 (providing that Plaintiffs' Counsel will not be seeking compensation for work performed after the

cut off date or for any future work in this matter including, but not limited to, assisting the Settlement Class and overseeing the design and implementation of Defendant's antitrust compliance program)). Accordingly, the State of Iowa's objection relating to the reasonableness of Plaintiffs' Counsel's hourly rates is **OVERRULED**.

The Court also finds that the State of Iowa's objections relating to the reasonableness of Plaintiffs' Counsels hours worked on this case (over 14,000 hours) and their requested 0.763 loadstar multiplier are similarly without merit and thus do not prevent the Court from approving the requested fees. The State of Iowa's objection to the reasonableness of the hours that Plaintiffs' Counsel have expended in this case seems to ignore several key facts: (i) the case has been litigated for over three years, which excludes a 15 month pre-suit investigation;[20] (ii) the complexity and novelty of the issues involved in this case;[21] and (iii) the extensive discovery conducted, which included approximately 218,319 documents (950,021 pages) and 6.5 terabytes of electronic data containing complex financial information.[22] Indeed, other courts in this Circuit have found significantly higher total hours billed in other complex class actions to be reasonable. *See Erica P. John Fund, Inc.*, 2018 WL 1942227, at *13 (approving 67,721.5 hours billed by class counsel in a complex class action case). Thus, there is no question that the time spent by Plaintiffs' Counsel on

---

[20] *See* Dkt. #199-1 at ¶¶ 3–4 (providing that Plaintiffs' Counsel conducted an extensive pre-suit investigating, lasting approximately fifteen months, before filing the complaint in this case on June 2, 2022).

[21] *See* Dkt. #199-1 at ¶ 28 (proving that "[t]his suit is one of only two successful post-merger Section 7 challenges this century—and also appears to be the only antitrust class action with an outcome favorable to a plaintiff in the Fifth Circuit in the last twenty years, as well as the first successful class action challenging practices related to payment for order flow.").

[22] *See* Dkt. #199-1 at ¶¶ 8, 10 (providing that Defendant produced "approximately 218,319 documents comprising 950,021 pages, of which Plaintiffs have conducted a thorough review" and Defendant also produced "6.5 terabytes of financial data comprising approximate 6.4 trillion individual trades placed by Schwab and Ameritrade customers between 2019 and 2023."); Dkt. #199-1 at ¶ 13 (providing that Plaintiffs' Counsel "reviewed and analyzed nearly one million pages of discovery produced by Schwab, as well as public filings and reports lodged with the United States Securities Exchange Commission.").

this case (totaling more than 14,000 hours) is reasonable. The State of Iowa also objects to Plaintiffs' Counsel's requested 0.763 lodestar multiplier arguing that it should be reduced to a 0.33 lodestar multiplier (a reduction of more than half), because Plaintiffs' Counsel only achieved one of the three goals pleaded in the Complaint: no damages, no divestment, and no segregation (Dkt. #245 at p. 25). The Court disagrees. Although the Settlement does not achieve all three of the goals pleaded in the Complaint, Plaintiffs' Counsel have been able to reach a Settlement that provides a substantial monetary benefit to the class members going forward and, more importantly, prevents Defendant from engaging in the anticipative conduct that necessitated this lawsuit. Accordingly, the State of Iowa's objections relating to the reasonableness of Plaintiffs' Counsel's hours worked on this case (over 14,000 hours) and their requested 0.763 lodestar multiplier are **OVERRULED**.

### D. Notice of the Plaintiffs' Counsel's Request for Attorney's Fees

Similarly, the State of Iowa is the sole objector to argue that the Settlement Class did not receive reasonable notice of Plaintiffs' Counsel's request for attorney's fees (*See* Dkt. #245 at pp. 25–26). Specifically, the State of Iowa argues that the Objectors did not have reasonable notice of the attorney's fees, nor did they have reasonable time to object to those fees because Plaintiffs' Counsel failed to post their attorney's fees motion on the Settlement website by the July 29th objection deadline (Dkt. #245 at pp. 25–26).[23] The Court disagrees.

Here, the Court finds that the State of Iowa's objection relating to notice of Plaintiffs' Counsel's request for attorney's fees is without merit and thus does not prevent the Court from approving Plaintiffs' Counsel's requested fees. Indeed, since March 5, 2025, the settlement website

---

[23] Indeed, the State of Iowa also contends that Plaintiffs' Counsel promised to post their Attorney's fee request on the settlement website by July 17 but failed to do so (Dkt. #248 at p. 25).

had a copy of the Notice of Proposed Class Action Settlement, which clearly stated that Plaintiffs' Counsel would "move for an award of up to $8,250,000 in attorney's fees, plus payment of no more than $700,000 for litigation expenses" (Dkt. #268-9 at ¶¶ 15–16). The settlement website also informed all class members that Plaintiffs' Counsel would be filing their attorney's fee motion by July 17, 2025, which, once published, would become part of the public record available to any and all persons (including non-class members) for review (Dkt. #268-9 at ¶ 15). However, even if the Court assumes that this did not provide the class members with reasonable notice of Plaintiffs' Counsel's request for attorney's fees, Plaintiffs' Counsel has agreed to treat all objections filed by August 13, 2025, as timely—which is an additional two weeks after the July 29th deadline (Dkt. #268 at p. 19). Thus, there is no question that the notice of Plaintiffs' Counsel's attorney's fee motion satisfied the broad reasonableness standards imposed by Rule 23 of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 23(h)(1) (providing that in a certified class action, the notice of a party's motion for attorney's fees must be "directed to class members in a reasonable manner."). Accordingly, the State of Iowa's objection relating to receiving reasonable notice of Plaintiffs' Counsel's request for attorney's fees is **OVERRULED**.

## CONCLUSION

It is therefore **ORDERED** that Plaintiffs' Counsel's Motion for an Award of Attorney's Fees, Litigation Expenses, and Service Awards (Dkt. #199) is hereby **GRANTED**. Accordingly, the Court **ORDERS** that Plaintiffs' Counsel's request for an award of attorney's fees in the amount of $8,250,000 is hereby **GRANTED**. It is further **ORDERED** that Plaintiffs' Counsel's request for an award of litigation expenses in the amount of $686,492.60 is hereby **GRANTED**. It is further **ORDERED** that Plaintiffs' Counsel's request for service awards of $5,000 to each of

the Class Representatives in connection with litigating the clams in this action on behalf of the Settlement Class is hereby **GRANTED**.

**IT IS SO ORDERED.**

**SIGNED this 24th day of November, 2025.**


_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE